# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

## WRIT OF SUMMONS
(248)

Case No: **483809-V**

TO:

**JACK R SMITH
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITIES AS MEMBER OF THE MONTGOMERY
COUNTY BOARD OF EDUCATION AND MONTGOMERY
COUNTY SUPERINTENDENT OF SCHOOLS
850 HUNGERFORD DRIVE
ROCKVILLE MD 20850**

(Service Address)
(Same as addressee)

**RECEIVED**

NOV - 5 2020

Office of the
Superintendent of Schools

You are hereby summoned to file a <u>written</u> response by pleading or motion in this court to the attached complaint filed by:

**JOHN AND JANE PARENTS 1**

within **30** days after service of this summons upon you.

Witness, the Honorable Chief Judge of the Sixth Judicial Circuit of Maryland.

TO THE PERSON SUMMONED:

1. Failure to respond within the time allowed may result in a default judgment or the granting of the relief sought against you.

2. If you have been served with a Scheduling Order, your appearance is required pursuant to the Scheduling Order, regardless of the date your response is due.

3. If you have questions, you should see an attorney immediately. If you need help finding an attorney, you may contact the Bar Association of Montgomery County's Lawyer Referral Service online at <u>www.barmont.org</u> or by calling (301) 279-9100.

Date Issued: **10/22/2020**



Barbara H. Meiklejohn
CLERK of the Circuit Court
Montgomery County, Maryland
50 Maryland Avenue
Rockville, MD 20850-2393

NOTE:

1. This summons is effective for service only if served within 60 days after the date it is issued.
2. Proof of service shall set out the name of the person served, the date, and the particular place and manner of service. If service is not made, please state the reason(s).
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

## RETURN

[ ] Served _____ on _____ at _____
　　　　　　(Whom)　　　　　　　　　　　　　(Date)　　　　　　　(City/State/Country)

[ ] Summons and [ ] Show Cause Order and [ ] Complaint/Petition/Motion Served

[ ] Unserved _____  _____
　　　　　　　　(Date)　　　　　　　　(Reason)

_____ [ ] Sheriff
(Signature)

SUM1KRF 20150219　　　　　　　　　　　　　　　　　　　　　　　　　　　　SUM1KRF  10/22/2020 08:10:58

# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

## WRIT OF SUMMONS
(248)

Case No: **483809-V**

TO:

(Service Address)
**(Same as addressee)**

**JACK R SMITH**
**INDIVIDUALLY AND IN HIS OFFICIAL**
**CAPACITIES AS MEMBER OF THE MONTGOMERY**
**COUNTY BOARD OF EDUCATION AND MONTGOMERY**
**COUNTY SUPERINTENDENT OF SCHOOLS**
**850 HUNGERFORD DRIVE**
**ROCKVILLE MD 20850**

You are hereby summoned to file a <u>written</u> response by pleading or motion in this court to the attached complaint filed by:

**JOHN AND JANE PARENTS 1**

within **30** days after service of this summons upon you.

Witness, the Honorable Chief Judge of the Sixth Judicial Circuit of Maryland.

TO THE PERSON SUMMONED:

1. Failure to respond within the time allowed may result in a default judgment or the granting of the relief sought against you.
2. If you have been served with a Scheduling Order, your appearance is required pursuant to the Scheduling Order, regardless of the date your response is due.
3. If you have questions, you should see an attorney immediately.  If you need help finding an attorney, you may contact the Bar Association of Montgomery County's Lawyer Referral Service online at <u>www.barmont.org</u> or by calling (301) 279-9100.

Date Issued: **10/22/2020**



Barbara H. Meiklejohn
CLERK of the Circuit Court
Montgomery County, Maryland
50 Maryland Avenue
Rockville, MD 20850-2393

NOTE:

1. This summons is effective for service only if served within 60 days after the date it is issued.
2. Proof of service shall set out the name of the person served, the date, and the particular place and manner of service.  If service is not made, please state the reason(s).
3. Return of served or unserved process shall be made promptly and in accordance with Rule 2-126.
4. If this summons is served by private process, process server shall file a separate affidavit as required by Rule 2-126(a).

### RETURN

[ ] Served _____ on _____ at _____
(Whom)                              (Date)       (City/State/Country)

[ ] Summons and [ ] Show Cause Order and [ ] Complaint/Petition/Motion Served

[ ] Unserved _____ _____
(Date)              (Reason)

_____  [ ] Sheriff
(Signature)



**Barbara H. Meiklejohn**
**Clerk of the Circuit Court for Montgomery County, Maryland**
50 Maryland Avenue
Rockville, Maryland 20850-2397
October 22, 2020

RE:  Notice of New Case Number for
JOHN AND JANE PARENTS 1, ET AL vs MONTOMERY COUNTY BOARD OF EDUCATIO
Reference Case#: N/A
Case Type: VIOLATION
(836)

Dear Sir/Madam:

Please be advised that the above referenced case was received on October 20, 2020, in the office of the Clerk for Montgomery County. This matter has been assigned case number <u>483809-V</u>.  Please include this case number on all future papers to be filed in this case.

Sincerely,

Clerk of the Circuit Court
for Montgomery County,
Maryland

JACK R SMITH
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITIES AS MEMBER OF THE MONTGOMERY
COUNTY BOARD OF EDUCATION AND MONTGOMERY
COUNTY SUPERINTENDENT OF SCHOOLS
850 HUNGERFORD DRIVE
ROCKVILLE MD 20850

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| **JOHN AND JANE PARENTS 1, ET AL** | : |
| Plaintiff | : |
| | : |
| v. | :    Case No. **483809-V** |
| | : |
| **MONTOMERY COUNTY BOARD OF EDUCATION, ET AL** | |
| Defendant | : |

### Scheduling Order - Track II
(181)
COMPLAINT FILED ON: 10/20/2020

THIS ORDER IS YOUR OFFICIAL NOTICE OF CASE DEADLINES AND HEARINGS REQUIRING APPEARANCES.  FAILURE TO APPEAR AT HEARINGS OR COMPLY WITH ALL REQUIREMENTS MAY RESULT IN DISMISSAL, DEFAULT JUDGMENT, EXCLUSION OF WITNESSES AND/OR EXHIBITS, ASSESSMENTS OF COSTS AND EXPENSES, INCLUDING ATTORNEY FEES, OR OTHER SANCTIONS.

| EVENT:    [ATTENDANCE REQUIRED AT EVENTS] | DEADLINE: |
|---|---|
| *DEADLINE: MOTION FOR ALTERNATIVE SERVICE FILED* | *02/17/2021* |
| *DEADLINE: DISCOVERY COMPLETED* | *03/11/2021* |
| *DEADLINE: PRETRIAL STATEMENT DUE* | *03/22/2021* |
| *DEADLINE: DISPOSITIVE MOTIONS FILED* | *03/26/2021* |

**STATUS/PRETRIAL HEARING, 03/26/2021 10:30 AM ATTENDANCE REQUIRED**
     *DEADLINE: PLEADING AMENDMENT TO BE DETERMINED AT PRETRIAL.*

**TRIAL COUNSEL SHALL APPEAR** AT THE STATUS/PRETRIAL HEARING, ACCOMPANIED BY OR WITH TELEPHONE ACCESS TO THE INDIVIDUAL(S) WITH AUTHORITY TO SETTLE THE CASE. TRIAL COUNSEL SHALL SUBMIT A WRITTEN PRETRIAL STATEMENT THAT 1) DESCRIBES THE NATURE OF THE CASE; 2) SETS FORTH CLAIMS AND/OR DEFENSES; 3) DETAILS STIPULATIONS; AND 4) IDENTIFIES WITNESSES AND EXHIBITS.  MOTIONS FILED IN TRACK II ACTIONS SHALL NOT EXCEED 15 PAGES INCLUDING ANY MEMORANDUM OF LAW AND OPPOSITION/REPLY MOTIONS SHALL NOT EXCEED 10 PAGES WITHOUT LEAVE OF THE COURT.

 THE TRIAL DATE SHALL BE SET AT THE STATUS/PRETRIAL HEARING BETWEEN THE DATES NOTED BELOW. COUNSEL ARE ENCOURAGED TO CLEAR DATES WITH ONE ANOTHER AND THE ASSIGNMENT OFFICE PRIOR TO THE CASE BEING CALLED. **[TRIAL DATE BETWEEN: 04/26/2021 AND 07/18/2021.]**

**ANY MODIFICATIONS OF THIS SCHEDULING ORDER MUST BE REQUESTED BY WRITTEN MOTION FILED IN ADVANCE OF THE DEADLINES OR HEARING DATES SOUGHT TO BE MODIFIED, PROVIDING GOOD CAUSE TO JUSTIFY ANY MODIFICATION THEREOF.**

Possession and use of cell phones, computers, other electronic devices, and cameras may be limited or prohibited in designated areas of the court facility.  The use of any camera, cell phone, or any electronic device for taking, recording, or transmitting photographs, videos, or other visual images is prohibited in the court facility at all times, unless the court expressly grants permission in a specific instance.

*Robert A. Greenberg*
Robert A. Greenberg
Circuit Administrative Judge

IF TRACK INFORMATION DOES NOT CORRESPOND TO ASSIGNED TRACK, COUNSEL FOR THE DEFENDANT SHALL NOTIFY THE DCM COORDINATOR AT (240) 777-9358. **QUESTIONS?** Please see the Court's GUIDE TO DCM ORDERS and www.montgomerycountymd.gov/circuitcourtDCM.

JACK R SMITH
INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITIES AS MEMBER OF THE MONTGOMERY
COUNTY BOARD OF EDUCATION AND MONTGOMERY
COUNTY SUPERINTENDENT OF SCHOOLS
850 HUNGERFORD DRIVE
ROCKVILLE MD 20850

CIVSCHD2 10/22/2020 08:30:44

# Circuit Court for Montgomery County, Maryland

50 Maryland Avenue
Rockville, Maryland 20850

### ADMINISTRATIVE NOTICE

You have received the attached notice and/or Order of the Court from the Circuit Court for Montgomery County.

Due to the COVID-19 pandemic, many court proceedings are being held remotely. This means it is possible that your court appearance may be by telephone or videoconference.

If you are represented by an attorney, please contact him or her to determine whether you need to personally appear in court.

If you are not represented by an attorney, please contact the Montgomery County Circuit Court Assignment Office at 240-777-9000 to determine whether your personal appearance is required at the courthouse on the day(s) in question. Please be sure the Court is provided with an email address and/or telephone number where you can be reached.

Robert A. Greenberg,
County Administrative Judge

IN THE CIRCUIT COURT FOR................................................................................
<span style="font-size:small">(City or County)</span>

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff*: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant*: You must file an Information Report as required by Rule 2-323(h).

***THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING***

FORM FILED BY: ☐PLAINTIFF  ☐DEFENDANT    CASE NUMBER....................................
<span style="font-size:small">(Clerk to insert)</span>

CASE NAME:................................................ vs. ........................................
               Plaintiff                     Defendant

PARTY'S NAME:.................................... PHONE:....................

PARTY'S ADDRESS:.......................................................................

PARTY'S E-MAIL:.........................................................................

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME:.......................... PHONE:....................

PARTY'S ATTORNEY'S ADDRESS:................................................

PARTY'S ATTORNEY'S E-MAIL:...................................................

JURY DEMAND? ☐Yes ☐No

RELATED CASE PENDING? ☐Yes ☐No  If yes, Case #(s), if known:....................

ANTICIPATED LENGTH OF TRIAL?: .......... hours .......... days

### PLEADING TYPE

New Case: ☐Original    ☐ Administrative Appeal  ☐ Appeal

Existing Case: ☐Post-Judgment  ☐Amendment

*If filing in an existing case, skip Case Category/ Subcategory section - go to Relief section.*

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint - DOB of Youngest Plt:
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Workers' Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. - Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☐ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

CC-DCM-002 (Rev. 04/2017)                    Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

☐ Abatement
☐ Administrative Action
☐ Appointment of Receiver
☐ Arbitration
☐ Asset Determination
☐ Attachment b/f Judgment
☐ Cease & Desist Order
☐ Condemn Bldg
☐ Contempt
☐ Court Costs/Fees
☐ Damages-Compensatory
☐ Damages-Punitive

☐ Earnings Withholding
☐ Enrollment
☐ Expungement
☐ Findings of Fact
☐ Foreclosure
☐ Injunction
☐ Judgment-Affidavit
☐ Judgment-Attorney Fees
☐ Judgment-Confessed
☐ Judgment-Consent
☐ Judgment-Declaratory
☐ Judgment-Default

☐ Judgment-Interest
☐ Judgment-Summary
☐ Liability
☐ Oral Examination
☐ Order
☐ Ownership of Property
☐ Partition of Property
☐ Peace Order
☐ Possession
☐ Production of Records
☐ Quarantine/Isolation Order
☐ Reinstatement of Employment

☐ Return of Property
☐ Sale of Property
☐ Specific Performance
☐ Writ-Error Coram Nobis
☐ Writ-Execution
☐ Writ-Garnish Property
☐ Writ-Garnish Wages
☐ Writ-Habeas Corpus
☐ Writ-Mandamus
☐ Writ-Possession

*If you indicated **Liability** above*, mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.

☐ Liability is conceded. ☐ Liability is not conceded, but is not seriously in dispute. ☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☐ Under $10,000    ☐ $10,000 - $30,000    ☐ $30,000 - $100,000    ☐ Over $100,000

☐ Medical Bills $_____    ☐ Wage Loss $_____    ☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation     ☐ Yes  ☐ No          C. Settlement Conference  ☐ Yes  ☐ No
B. Arbitration   ☐ Yes  ☐ No          D. Neutral Evaluation      ☐ Yes  ☐ No

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL**.* ***(Case will be tracked accordingly)***

☐ 1/2 day of trial or less          ☐ 3 days of trial time
☐ 1 day of trial time               ☐ More than 3 days of trial time
☐ 2 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited**- Trial within 7 months of          ☐ **Standard** - Trial within 18 months of
Defendant's response                                Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response      ☐ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☐ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff.............................. . |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

...........................................
Date

...........................................
Address

...........................................
City      State    Zip Code

...........................................
Signature of Counsel / Party

...........................................
Printed Name

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

| | |
|---|---|
| JOHN and JANE PARENTS 1, JOHN PARENT 2,[1] | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 483809-V |
| | ) |
| MONTGOMERY COUNTY BOARD OF | ) |
| EDUCATION | ) |
| | ) |
| Serve:  Hon. Brian E. Frosh | ) |
|        Attorney General of Maryland | ) |
|        200 St. Paul Place | ) |
|        Baltimore, Md. 21202 | ) |
| | ) |
| SHEBRA L. EVANS, BRENDA WOLFF, | ) |
| JEANETTE E. DIXON, JUDITH DOCCA, | ) |
| PATRICIA B. O'NEILL, KARLA SILVESTRE, | ) |
| and REBECCA SMONDROWSKI, individually and | ) |
| in their official capacities as Members of the | ) |
| Montgomery County Board of Education | ) |
| | ) |
| Serve all at: 850 Hungerford Drive, | ) |
|          Rockville, Md. 20850 | ) |
| | ) |
| JACK R. SMITH, individually and | ) |
| in his official capacities as a | ) |
| member of the Montgomery County Board of | ) |
| Education and Montgomery County Superintendent | ) |
| of Schools | ) |
| | ) |
| Serve at:    850 Hungerford Drive, | ) |
|          Rockville, Md. 20850 | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |

RECEIVED

OCT 2 0 2020

Clerk of the Circuit Court
Montgomery County, Md.

COMPLAINT

Plaintiffs John and Jane Parents 1 and John Parent 2[1] (collectively, "Plaintiff Parents") allege as their complaint as follows:

Nature of the Case

1.      Plaintiff Parents have brought this action to enforce their rights to access certain information generated and retained about their minor children by the defendants and their agents, to whom the Plaintiff Parents have entrusted their children for their education, and to enforce their right to provide consent on behalf of their minor children.  These rights are founded on Maryland statutory and regulatory provisions, as well as the State and Federal Constitutions and federal laws, which recognize the fundamental right of parents to direct the upbringing of their children, to be primarily responsible for their children's health and safety, and to decide what is in their minor children's best interests.

2.      The Montgomery County Board of Education ("MCBE") has violated these rights by adopting a Policy (defined below) expressly designed to circumvent parental involvement in a pivotal decision affecting the Plaintiffs Parents' minor children's care, health, education, and future. The Policy enables MCBE personnel to evaluate minor children about sexual matters and allows minor children, of any age, to transition socially to a different gender identity at school without parental notice or consent.  The Policy further requires school personnel to enable this transition, including by using pronouns other than those consistent with the child's birth gender.  The Policy then prohibits personnel from communicating with parents

---

[1]   Plaintiff Parents file this case anonymously, using pseudonyms, as other plaintiffs have done in similar by sensitive cases. Shortly after this Court assigns a case number, Plaintiff Parents will file a motion to proceed using pseudonyms.

about this potentially life-altering and dangerous choice, unless the minor child consents to parental disclosure.  MCBE in its guidelines and corresponding intake form even goes so far as to direct its teachers and staff to deceive parents by reverting to the child's birth name and corresponding pronouns whenever the child's parents are present and to keep information about the child's gender transformation out of the school files to which the parents have access under Maryland regulations and the federal Family Educational Rights and Privacy Act ("FERPA").

Parties

3.      Plaintiffs John and Jane Parents 1 are residents of Montgomery County, Maryland.  They are the parents of several minor children, the two eldest of which attend a high school in the Montgomery County Public School ("MCPS") system.  Plaintiffs John and Jane Parents 1 intend to enroll their remaining children in MCPS schools at some time during their elementary and secondary education.  Plaintiffs John and Jane Parents 1 are adult parents of minors as described in § 1-103 of the General Provisions and § 5-203 of the Family Article of the Code of Maryland; in Chapter 13a.08.02.03 of the Maryland Code of Regulations; in FERPA, 20 U.S.C. § 1232g; and in the Protection of Pupil Rights Act, 20 U.S.C. § 1232h.  All their children are unemancipated, minor children as defined in these provisions.  Plaintiffs John and Jane Parents 1 are not mental health or child care practitioners.

4.      Plaintiff John Parent 2 is a resident of Montgomery County, Maryland.  He is the parent of several minor children, the eldest of which attends a high school in the MCPS system.  Plaintiff John Parent 2 intends to enroll his remaining children in MCPS schools at some time during their elementary and secondary education.  Plaintiff John Parent 2 is an adult parent of minors as described in § 1-103 of the General Provisions and § 5-203 of the Family Article of the Code of Maryland; in Chapter 13a.08.02.03 of the Maryland Code of Regulations; and in

FERPA, 20 U.S.C. § 1232g; and in the Protection of Pupil Rights Act, 20 U.S.C. § 1232h.  All

his children are unemancipated, minor children as defined in these provisions.  Plaintiff John

Parent 2 is not a mental health or child care practitioners.

5.      Plaintiff Parents are using pseudonyms to protect their privacy and the privacy

of their minor children and to prevent retaliation against them and their children for raising

this issue.  The identities of Plaintiff Parents and their children are not relevant to the legal

issues in this case, so anonymity will not prejudice the defendants in any way.

6.      Defendant MCBE is a public entity that, pursuant to § 4-101 of the Education

Article of the Code of Maryland, controls educational matters that affect Montgomery

County.  Pursuant to § 4-108(3) of the Education Article, MCBE is authorized to adopt

educational policies for MCPS, but not if those rules and regulations are inconsistent with

State law.  Pursuant to § 4-108(4) of the Education Article, MCBE is authorized to adopt rules

and regulations for the conduct and management of MCPS, but not if those rules and

regulations are inconsistent with State law.  MCBE's principal place of business is located at

850 Hungerford Drive, Rockville, Maryland.

7.      MCPS is a "local school system" and "educational institution" as each is

defined in Chapter 13a.08.02.03 of the Code of Maryland Regulations.  MCPS is an

"educational agency or institution" as defined in FERPA, 20 U.S.C. § 1232g, and is also

subject to the Protection of Pupil Rights Act ("PPRA"), 20 U.S.C. § 1232h.

8.      MCPS, as directed by MCBE, has adopted and put into effect the MCPS Policy

challenged in this case and is training its personnel to conform to the MCPS Policy.  MCPS's

offices and principal place of business are located at 850 Hungerford Drive, Rockville,

Maryland 20850.

9.      Defendants Sherbra L. Evans, Branda Wolff, Jeanette E. Dixon, Judith Docca, Patricia B O'Neill, Karla Silvestre, Rebecca Smondrowski, and Jack R. Smith (collectively, "MCBE Members") are members of the Montgomery County Board of Education.  They are all sued in both their official and individual capacities.  They either approved, adopted, or put into effect the MCPS Policy challenged in this case and directed that MCPS train its personnel to conform to the MCPS Policy or they have retained the challenged MCPS Policy and have continued to direct that MCPS train its personnel to conform to the MCPS Policy.

10.     Defendant Jack R. Smith is the Montgomery County Superintendent of Schools.  He is sued in both his official and individual capacities.  Pursuant to § 4-102 of the Education Article of the Code of Maryland, Defendant Smith is the executive officer, secretary, and treasurer of MCBE.  At all times relevant to this complaint, Defendant Smith was responsible for implementing and enforcing policies, rules, and regulations adopted by MCBE, including the MCPS Policy challenged in this case.

Jurisdiction and Venue

11.     This is an action for monetary, injunctive, and declaratory relief. This Court has jurisdiction pursuant to §§ 1-501, 3-402, 3-403, and 3-409 of the Courts and Judicial Proceedings Article of the Code of Maryland.  Plaintiff Parents seek relief, *inter alia*, under the Maryland Uniform Declaratory Judgments Act and §§ 1983 and 1988 of title 42 of the United States Code.

12.     Venue in this Court is proper pursuant to § 6-201 of the Courts and Judicial Proceedings Article, as the defendants reside and carry on regular business in Montgomery County.

Statement of the Facts

Background on Gender Dysphoria in Minor Children

13.     The American Psychological Association ("APA") defines *transgender* as "an umbrella term for persons whose gender identity, gender expression or behavior does not conform to that typically associated with the sex to which they were assigned at birth. *Gender identity* refers to a person's internal sense of being male, female or something else; gender expression refers to the way a person communicates gender identity to others through behavior, clothing, hairstyles, voice or body characteristics." *See* APA, *Transgender People, Gender Identity and Gender Expression: What Does Transgender Mean?*, available at https://www.apa.org/topics/lgbt/transgender.

14.     The World Professional Association for Transgender Health ("WPATH"), a transgender advocacy organization that has produced a set of guidelines for transgender care, has defined "gender dysphoria" as the psychological distress often associated with the mismatch between a person's biological sex and his or her perceived gender identity. *See* WPATH, *Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People* at 2 (version 7, 2012), available at https://www.wpath.org/media/cms/Documents/ SOC%20v7/Standards%20of%20Care_V7%20Full%20Book_English.pdf (hereinafter, "WPATH Guidelines").

15.     Those "transitioning" to the gender other than their birth sex have demonstrated significantly higher rates of suicide ideation, suicide attempts, and suicide, both with respect to the average population and to those of a homosexual sexual orientation.  A study published in the September 2018 issue of *Pediatrics* presented these findings:  Nearly 14% of all adolescents reported a previous suicide attempt, 50.8% of female to male transgender adolescents did so,

41.8% of adolescents who identified as not exclusively male or female did so, and 29.9% of male to female transgender adolescents did so. Https://pediatrics.aappublications.org/content/142/4/e20174218?sso=1&sso_redirect_count=2&nfstatus=401&nftoken=00000000-0000-0000-0000-000000000000&nfstatusdescription=ERROR%3A%20No%20local%20token.

16.     Multiple studies have found that the vast majority of children (roughly 80-90%) who experience gender dysphoria ultimately find comfort with their biological sex and cease experiencing gender dysphoria as they mature (assuming they do not transition).  *See* WPATH Guidelines at 11 (listing studies).

17.     WPATH notes that there is insufficient evidence at this point "to predict the long-term outcomes of completing a gender role transition during early childhood."  WPATH Guidelines at 17.

18.     There is significant consensus that children with gender dysphoria and their parents can substantially benefit from professional assistance and counseling "as they work through the options and implications."  *See* WPATH Guidelines at 13-17.

The MCBE Transgender Policy

19.     Prior to the 2020-2021 school year, MCBE through the MCBE Members adopted for MCPS the "2020-2021 Guidelines for Gender Identity for Montgomery County Public Schools."  ("MCPS Guidelines," a true and accurate copy of which is attached as Exhibit 1.)  The MCPS Guidelines, together with MCPS Form 560-80 (discussed below) and related training regarding gender identity transformation by students reflect the official policy of Defendants ( "Policy" and "MCPS Policy").

20.     The MCPS Guidelines provide the following definitions:

GENDER IDENTITY A person's deeply held internalized sense or psychological knowledge of the person's own gender. One's gender identity may be the same as or different from the sex assigned at birth. Most people have a gender identity that matches their sex assigned at birth. For some, however, their gender identity is different from their sex assigned at birth. All people have gender identity, not just persons who are transgender or gender nonconforming people. For the purposes of this guidance, a student's gender identity is that which is consistently asserted at school.

. . . .

SEX ASSIGNED AT BIRTH The sex designation recorded on an infant's birth certificate, should such a record be provided at birth.

. . . .

TRANSGENDER An adjective describing a person whose gender identity or expression is different from that traditionally associated with the person's sex assigned at birth. Other terms that can have similar meanings are "transsexual" and "trans."

21.    With respect to privacy and disclosure of information and the use of names/pronouns for transgender students, the MCPS Guidelines provide as follows:

PRIVACY AND DISCLOSURE OF INFORMATION

All students have a right to privacy. This includes the right to keep private one's transgender status or gender nonconforming presentation at school.

Information about a student's transgender status, legal name, or sex assigned at birth may constitute confidential medical information. Disclosing this information to other students, their parents/guardians, or third parties may violate privacy laws, such as the federal Family Educational Rights and Privacy Act (FERPA).

Schools will ensure that all medical information, including that relating to transgender students, is kept confidential in accordance with applicable state, local, and federal privacy laws.

Please note that medical diagnosis, treatment, and/or other documentation are not required for a school to accommodate requests regarding gender presentation, identity, and diversity.

Transgender and gender nonconforming students have the right to discuss and demonstrate their gender identity and expression openly and decide when, with whom, and how much to share private information. The fact

that students choose to disclose their status to staff members or other students does not authorize school staff members to disclose students' status to others, including parents/guardians and other school staff members, unless legally required to do so or unless students have authorized such disclosure. It is inappropriate to ask transgender or gender nonconforming students more questions than are necessary to support them at school.

STAFF COMMUNICATION

. . . .

Unless the student or parent/guardian has specified otherwise, when contacting the parent/guardian of a transgender student, MCPS school staff members should use the student's legal name and pronoun that correspond to the student's sex assigned at birth.

22.     The MCPS Guidelines and MCPS Policy apply to all students of all ages in the MCPS system.  It is not limited to secondary school students.

23.     As quoted above, the MCPS Guidelines contain specific provisions that interfere with the rights of parents to be fully informed and involved in addressing issues relating to gender transformation with their minor children and that are designed to hinder parents from deciding what is in their minor children's best interests.  The MCPS Guidelines contain provisions that require school officials to withhold information from parents about their minor child's professed transgender status if the child does not consent to disclosure.

24.     The MCPS Guidelines suggest that providing information "about a student's transgender status" to "their parents/guardians . . . may violate privacy laws, such as the federal Family Educational Rights and Privacy Act (FERPA)."  This is incorrect.  Withholding such information from parents violates both state law and FERPA.

25.     MCPS has generated a MCPS Form 560-80, updated June 2020, entitled "Intake Form: Supporting Student Gender Identity," to facilitate the MCPS Guidelines.  Form 560-80

- 9 -

contains the following instructions:

> **Instructions:** The school administrator, counselor, or psychologist should complete this form with the student. Parents/guardians may be involved if the student states that they are aware of and supportive of the student's gender identity. This form should be kept in a secure, confidential location. See distribution information on Page 2. **This form is not to be kept in the student's cumulative or confidential folders.** All plans should be evaluated on an ongoing basis and revised as needed.

The distribution stated for the form is as follows:

> Copy 1/School Confidential folder (in principal's office)
> Copy 2/ Student Welfare and Compliance Unit, via scan to COS-StudentWelfare@mcpsmd.org, or via pony to CESC, Room 162, in a [sic] envelope marked confidential

(A true and accurate copy of MCPS Form 560-80 is attached as Exhibit 2.)

26.     Form 560-80 requires an evaluation of minor students by MCPS personnel, and, among other things requests a "yes" or "no" response by the minor students to, "Is parent/guardian aware of your gender identity?" Form 560-80 then requires minor students exhibiting transgender inclinations or actions to identify a "Support Level" they believe would be provided by their parents, to be ranked from "(None) 1" to "10 (High)." It does not specify the score needed for a parent to be considered "supportive" as stated in the instructions. However, it does continue, "If [parental] support level is low, what considerations must be accounted for in implementing this plan?," leaving a space to be filled in. Upon information and belief, such "considerations" would include withholding information from parents about their minor children and using pronouns when speaking to the parents about their children that conform to the children's birth gender, even though other pronouns are used at school.

27.     Upon information and belief, the limited distribution of MCPS Form 560-80 as specified by the form is designed, in part, to withhold review of the form by the parents of the minor child if the child does not consent to its disclosure to the parents. Upon information and

- 10 -

belief, MCBE has instructed MCPS personnel not to make completed MCPS Forms 560-80 available to the parents of minor children concerning whom the forms have been filled out unless the minor child consents to its disclosure to the parents.

28.     The evaluation by MCPS personnel of minor students as required by the MCPS Policy and Form 560-80 is deliberately not performed with prior parental consent.

29.     Upon information and belief, MCPS personnel have been trained in the MCPS Policy and have conformed their behavior and practices with the MCPS Policy, including by withholding information from parents about their child's transgender election at school if the child has not desired that information to be transmitted to the parents and by keeping such information out of the school records to which parents are given access.

30.     Upon information and belief, without the relief requested from this Court, MCPS personnel will continue to conform their behavior and practices with the MCPS Policy, including by withholding information from parents about their child's transgender election at school if the child has not desired that information to be transmitted to the parents and by keeping such information out of the school records to which parents are given access.

31.     Upon information and belief, the large majority of MCPS personnel acting pursuant to the Policy and interacting with students who experience gender dysphoria are not professionally trained, certified, or licensed in the diagnosis or treatment of gender dysphoria.

Irreparable Harm

32.     Plaintiff Parents bring this action as both a facial and as-applied challenge to the MCPS Policy.  There is no set of facts by which the MCPS's Policy of withholding information

from the parents about their minor children's transsexual inclinations or behaviors is lawful.

33.     Pursuant to the MCPS Policy, MCPS will withhold information from the Plaintiff Parents about their children's gender dysphoria, even if the Plaintiff Parents specifically request such information.  Plaintiff Parents cannot wait to challenge the MCPS Policy until they learn that one of their children experiences gender dysphoria.  By the time Plaintiff Parents learn the truth, MCBE personnel, acting pursuant to the MCPS Policy, may have already enabled their child(ren) to go through the process of transitioning socially to a different gender identity without Plaintiff Parents being able to counsel and advise their child(ren) and without allowing the child(ren) to take advantage of professional assistance the Plaintiff Parents may believe it in their child(ren)'s best interest to provide, to their minor child(ren)'s immediate and permanent injury.

34.     Pursuant to the MCPS Policy, MCPS is taking over the rightful position of the Plaintiff Parents and intentionally hindering them from counseling their own minor children concerning an important decision that will have lifelong repercussions and from providing additional professional assistance to their children that the parents may deem appropriate.  This decision directly relates to the Plaintiff Parents' primary responsibilities to determine what is in their minor children's best interests with respect to their support, care, nurture, welfare, safety, and education.

35.     Pursuant to the MCPS Policy, MCPS is determining that minor children have a "right" to withhold information from their parents in all situations relating to transgender relations, even though the minor has informed unrelated third parties of the information, and that MCPS will honor that "right" by withholding information from the minor's parents.

36.     Because of the secretive nature of the MCPS Policy, Plaintiff Parents and their

minor children could be irreparably harmed before Plaintiff Parents are aware of the injuries of which they have right to complain. The explicit purpose of the challenged MCPS Policy is to secrete from parents information related to their minor children, such that parents will have no occasion timely to be informed or complain of such actions and inactions of the Defendants.

37.     By hiding from parents that their children may be dealing with gender dysphoria, the MCPS Policy interferes with Plaintiff Parents' ability to provide acceptance, support, understanding, and professional assistance to their children.

38.     By hiding from parents that their children may be dealing with gender dysphoria, the MCPS Policy interferes with Plaintiff Parents' ability to facilitate their children's coping, social support, and identity exploration and development of their sexual orientation.

39.     By hiding from parents that their children may be dealing with gender dysphoria, the MCPS Policy interferes with Plaintiff Parents' ability to provide neutral interventions to prevent or address unlawful conduct or unsafe sexual practices to which transgender youth show greater susceptibility.

40.     By hiding from parents that their children may be dealing with gender dysphoria, the MCPS Policy interferes with Plaintiff Parents' ability to provide expert professional assistance their children may need.

41.     Issues regarding whether and how children perform a gender transformation are of fundamental importance, and their improper handling could have long-lasting, negative ramifications for a child's physical, mental, and spiritual well-being.

42.     Professionals have concluded that many children with gender dysphoria can benefit by assistance that only their parents can provide. *See* WPATH Guidelines at 16-17.

43.     The public interest supports the grant of relief in this action.


Causes of Action

Count I

Violation of Maryland Family Law

44.     Plaintiff Parents incorporate by reference all other allegations in this Complaint.

45.     Section 5-203 of the Family Article of the Maryland Code provides in relevant

part as follows:

> (a) (1)     The parents are the joint natural guardians of their minor child.
>
> . . . .
>
> (b)     The parents of a minor child, as defined in § 1-103 of the General Provisions Article:
>
>> (1)     are jointly and severally responsible for the child's support, care, nurture, welfare, and education; and
>>
>> (2)     have the same powers and duties in relation to the child.

46.     Section 1-103(b) of the General Provisions Article of the Maryland Code

provides as follows:

> Except as provided in §  1-401(b) of this title, as it pertains to legal age and capacity, "minor" means an individual under the age of 18 years.

47.     Section 1-401 of the General Provisions Article of the Maryland Code provides

in relevant part as follows:

> (b)     An individual who has attained the age of 18 years and who is enrolled in secondary school has the right to receive support and maintenance from both of the individual's parents until the first to occur of the following events:
>
>> (i)     The individual dies;

      (ii)    The individual marries;

      (iii)    The individual is emancipated;

      (iv)    The individual graduates from or is no longer enrolled in secondary school; or

      (v)    The individual attains the age of 19 years.

48.    Plaintiff Parents are "parents" of "minor children" as defined in the Maryland Code. They continue to provide for their children's support, care, nurture, welfare, and education. None of their children are married or emancipated, and none has attained the age of 19 years.

49.    MCBE and the MCBE Members by promulgation of, and putting into effect, the MCPS Policy of withholding information from parents directly related to their minor children's support, care, nurture, welfare, and education have violated § 5-203 of the Family Article and have directly hindered Plaintiff Parents from carrying out their statutory duties under that section.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

### Count II

### Violation of Maryland Code of Regulations

50.    Plaintiff Parents incorporate by reference all other allegations in this Complaint.

51.    Chapter 13a.08.02 of the Maryland Code of Regulations provides in relevant part as follows:

Sec. 13a.08.02.03. Definitions

A. In this chapter, the following terms have the meanings indicated.

B. Terms Defined.

. . . .

(5) "Eligible student" means a student who is 18 years old or older or is attending an institution of postsecondary education.
. . . .

(10) Parent.

    (a) "Parent" means a parent of a student.

    (b) "Parent" includes:

        (i) A natural parent;

        (ii) A guardian; or

        (iii) An individual acting as a parent in the absence of a parent or guardian.

. . . .

C. Student Records.

(1) "Student records" means those records that are:

    (a) Directly related to a student; and

    (b) Maintained by an educational agency or institution or by a party acting for the agency or institution.

(2) "Student records" includes, but is not limited to:

    (a) Records concerning disciplinary actions taken against students; and

    (b) Records relating to an individual in attendance at the agency or institution who is employed as a result of the individual's status as a student and not excepted under §C(3)(c) of this regulation.

(3) "Student records" does not include:

(a) Records that are kept in the sole possession of the maker, are used only as a personal memory aid, and are not accessible or revealed to any other person except a temporary substitute for the maker of the record;

(b) Records maintained by a law enforcement unit of the educational agency or institution that were created by that law enforcement unit for the purpose of law enforcement;

. . . .

(d) Records on a student who is 18 years old or older, or is attending an institution of postsecondary education, that are:

(i) Made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's professional capacity or assisting in a paraprofessional capacity,

(ii) Made, maintained, or used only in connection with treatment of the student, and

(iii) Disclosed only to individuals providing the treatment; or

(e) Records that only contain information about an individual after the individual is no longer a student at that agency or institution.

Sec. 13a.08.02.04. General Provisions

. . . .

C. Access of Records. Records of a student maintained under the provisions of this title, including confidential records, shall be available to that student's parent or parents . . . or legal guardians in conference with appropriate school personnel. For purposes of this regulation, the term "records" does not include an education department employee's personal notes which are not made available to any other person.

. . . .

Sec. 13a.08.02.13. Right to Review and Inspect Educational Records

A. Except as limited under Regulation .12 of this chapter [relating to waiver], a parent, guardian, or eligible student shall be given the opportunity to inspect and review the student records. This applies to:

(1) Any local school system or educational institution; and

(2) A State educational agency and its components.

B. The local school system or educational agency or institution shall comply with a request for access to student records not more than 45 calendar days after the request has been made. For purposes of this section, a State educational agency and its components:

(1) Constitute an educational agency or institution; and

(2) Are subject to this section if the State educational agency maintains student records on students who are or have been in attendance at any school of a local school system, an educational agency, or educational institution subject to the Act and this chapter.

C. The local school system or educational institution shall respond to reasonable requests for explanations and interpretations of the student records.

D. If circumstances effectively prevent the parent, guardian, or eligible student from exercising the right to inspect and review the student records, the local school system or educational institution, or State educational agency or its component, shall:

(1) Provide the parent, guardian, or eligible student with a copy of the student records requested; or

(2) Make other arrangements for the parent, guardian, or eligible student to inspect and review the requested student records.


Sec. 13a.08.02.29. Rights of Parents to Examine Records

. . . .

B. A local school system or educational institution may presume that either parent or legal guardian of the student has authority to inspect and review the student records unless the local school system or educational institution has been provided with a copy of a court order or legally binding instrument such as a separation agreement, or the relevant parts of

the document, which provides that the noncustodial parent may not have access to the student records.

52.     Plaintiff Parents are "parents" as defined in § 13a.08.02.03, and none of their children is an "eligible student" as defined in that section.

53.     MCPS Form 560-80 and other written information about student gender identity are a "student record" as defined in § 13a.18.02.03.

54.     Chapter 13a.08.02 of the Maryland Code of Regulations has the force and effect of law.

55.     MCBE and the MCBE Members by promulgation of, and by putting into effect, the MCPS Policy of withholding information from parents directly related to their minor children's support, care, nurture, welfare, and education have violated Chapter 13a.08.02 of the Maryland Code of Regulations and have directly hindered Plaintiff Parents from gaining access to their children's student records and from exercising their rights under that chapter.

56.     Upon information and belief, MCBE and the MCBE Members by promulgating and putting into effect MCPS Form 560-80 and by distributing the form have specifically intended to avoid complying with the provisions of Chapter 13a.18.02 of the Maryland Code of Regulation.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

### Count III

### Violation of the Maryland Constitution–Parental Rights

57.     Plaintiff Parents incorporate by reference all other allegations in this Complaint.

58.     Article 2 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "The Constitution of the United States . . . [is] and shall be the Supreme Law of

the State . . . ."

59.     Article 5(a)(1) of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "That the Inhabitants of Maryland are entitled to the Common Law of England . . . ."

60.     Article 19 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "That every man, for any injury done to him in his person or property, ought to have remedy by the course of the law of the Land . . . ."

61.     Article 24 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "That no man ought to be taken or . . . disseized of his freehold, liberties or privileges, . . . or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

62.     Maryland, through the provisions quoted above and otherwise in its Constitution, protects parents' fundamental rights to direct the care, custody, education, welfare, safety, and control of their minor children.  These fundamental rights include, but are not limited to, the rights of parents to counsel their children on important decisions regarding their health and safety and to decide what is in the best interests of their minor children.  These fundamental rights of parents are based both in the Common Law of England and in the United States Constitution's Privileges and Immunities, Due Process, and Equal Protection Clauses.

63.     MCBE and the MCBE Members, by promulgation and putting into effect the MCPS Policy of withholding information from parents directly related to their minor children's support, care, nurture, welfare, safety, and education, have violated and have directly hindered Plaintiff Parents from carrying out their fundamental rights protected under the Maryland Constitution.

64.     The State may not abridge or hinder parents in the exercise of their fundamental rights with respect to their minor children unless there are compelling reasons and the remedy is narrowly tailored to the circumstances.

65.     MCBE and the MCBE Members have no compelling interest in withholding information from Plaintiff Parents with respect to their children's desire to consider becoming transsexual or that their children have taken actions in that regard.

66.     The MCPS Policy in withholding information from Plaintiff Parents with respect to their children's desire to consider becoming transsexual or that their children have taken actions in that regard, even if MCBE and the MCBE Members had a compelling interest to do so, is not narrowly tailored to the circumstances.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

Count IV

Violation of FERPA as Incorporated by Maryland Law

67.     Plaintiff Parents incorporate by reference all other allegations in the Complaint.

68.     Article 2 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "The . . . Laws made, or which shall be made, . . . under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby . . . ."

69.     FERPA, 20 U.S.C. § 1232g, is a law made under the authority of the United States and is incorporated as part of the law of Maryland.  The substantive provisions of FERPA are also codified in Chapter 13a.18.02 of the Maryland Code of Regulations.

70.     FERPA provides, in relevant part, as follows:

(a)   (1) (A) No funds shall be made available under any applicable program to any educational agency or institution which has a policy of denying, or which effectively prevents, the parents of students who are or have been in attendance at a school of such agency or at such institution, as the case may be, the right to inspect and review the education records of their children. . . .

(2) No funds shall be made available under any applicable program to any educational agency or institution unless the parents of students who are or have been in attendance at a school of such agency or at such institution are provided an opportunity for a hearing by such agency or institution, in accordance with regulations of the Secretary, to challenge the content of such student's education records, in order to insure that the records are not inaccurate, misleading, or otherwise in violation of the privacy rights of students, and to provide an opportunity for the correction or deletion of any such inaccurate, misleading or otherwise inappropriate data contained therein and to insert into such records a written explanation of the parents respecting the content of such records.

(3) For the purposes of this section the term "educational agency or institution" means any public or private agency or institution which is the recipient of funds under any applicable program.

(4) (A) For the purposes of this section, the term "education records" means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which—

(i) contain information directly related to a student; and

(ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.

71.    MCBE and MCPS are each an "educational agency or institution" as that term is defined in FERPA.

72.    Records referring to a change or proposed change in gender identity by minor children attending MCPS schools, including but not limited to MCPS Form 560-80, are "education records" as that term is defined in FERPA.

73.    The MCPS Policy in withholding records from Plaintiff Parents with respect to their children's desire to consider becoming transsexual or that their children have taken actions

in that regard is in violation of FERPA and Maryland law that implements FERPA.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

Count V

Violation of PPRA as Incorporated by Maryland Law

74.     Plaintiff Parents incorporate by reference all other allegations in the Complaint.

75.     Article 2 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "The . . . Laws made, or which shall be made, . . . under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby . . . ."

76.     The Protection of Pupil Rights Act, 20 U.S.C § 1232h, is a law made under the authority of the United States and is incorporated as part of the law of Maryland.  The federal regulations implementing PPRA, found in 34 C.F.R. § 98.4, are also law made under the authority of the United States and incorporated as part of the law of Maryland.

77.     PPRA provides in relevant part as follows:

> (b) Limits on survey, analysis, or evaluations. No student shall be required, as part of any applicable program, to submit to a survey, analysis, or evaluation that reveals information concerning—
>
> . . .
>
> (3) sex behavior or attitudes;
>
> . . .

without the prior consent of the student (if the student is an adult or emancipated minor), or in the case of an unemancipated minor, without the prior written consent of the parent.

. . . .

(6) Definitions.  As used in this subsection:

    . . .

    (D) Parent.  The term "parent" includes a legal guardian or other person standing in loco parentis (such as a grandparent or stepparent with whom the child lives, or a person who is legally responsible for the welfare of the child).
    . . .

    (F) Student.  The term "student" means any elementary school or secondary school student.

    (G) Survey.  The term "survey" includes an evaluation.

78.      PPRA is implemented by regulations of the Department of Education, which, as provided in 34 CFR § 98.4, in relevant part provides as follows:

(a) No student shall be required . . . to submit without prior consent to psychiatric examination, testing, or treatment, or psychological examination, testing, or treatment, in which the primary purpose is to reveal information concerning one or more of the following:

    . . .

    (3) Sex behavior and attitudes;

    . . . .

(b) As used in paragraph (a) of this section, prior consent means:

    (1) Prior consent of the student, if the student is an adult or emancipated minor; or

    (2) Prior written consent of the parent or guardian, if the student is an unemancipated minor.

(c) As used in paragraph (a) of this section:

(1) Psychiatric or psychological examination or test means a method of obtaining information, including a group activity, that is not directly related to academic instruction and that is designed to elicit information about attitudes, habits, traits, opinions, beliefs or feelings; and

(2) Psychiatric or psychological treatment means an activity involving the planned, systematic use of methods or techniques that are not directly related to academic instruction and that is designed to affect behavioral, emotional, or attitudinal characteristics of an individual or group.

79.     Questioning a student about gender identity and filling out Form 560-80 and other actions taken with a student as part of the MCPS Policy relate to a student's "sex behavior and attitudes" as specified in PPRA and its implementing regulations.

80.     Questioning a student about gender identity and filling out Form 560-80 and other actions taken with a student as part of the MCPS Policy are a "survey" as that term is used in PPRA.

81.     Questioning a student about gender identity and filling out Form 560-80 and other actions taken with a student as part of the MCPS Policy are a "psychiatric or psychological examination or test" as that term is used in the PPRA regulations, 34 C.F.R. § 98.4(c)(1).

82.     Questioning a student about gender identity and filling out Form 560-80 and other actions taken with a student as part of the MCPS Policy are a "psychiatric or psychological treatment" as that term is used in the PPRA regulations, 34 C.F.R. § 98.4(c)(2).

83.     Questioning a student about gender identity and filling out Form 560-80 and other actions taken with a student as part of the MCPS Policy are done without the "consent" of the "parents," as those terms are defined in PPRA and its implementing regulations.

84.     By requiring the questioning of a student about gender identity and the filling out of Form 560-80 and other actions taken with a student as part of the MCPS Policy without consent as provided for by PPRA and its implementing regulations, the MCPS Policy is in contravention of the PPRA and its implementing regulations and Maryland law by its incorporation through Article 2 of the Declaration of Rights.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

Count VI

Violation of the United States Constitution – Parental Rights

85.     Plaintiff Parents incorporate by reference all other allegations in this Complaint.

86.     Section 1 of the Fourteenth Amendment to the United States Constitution provides, in relevant part, as follows:  "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

87.     The fundamental rights of parents to direct the care, custody, education, and control of their minor children are protected under the Fourteenth Amendment.  These fundamental rights include, but are not limited to, the right of parents to counsel their children on important decisions related to their health and safety and to determine what is in the best interests of their minor children.

88.     Maryland may not abridge or hinder parents in the exercise of their fundamental rights with respect to their minor children that are protected under the United States Constitution unless there are compelling reasons and the remedy is narrowly tailored to the

circumstances.

89.     MCBE and the MCBE Members have no compelling interest in withholding

information from Plaintiff Parents with respect to their children's desire to consider becoming

transsexual or that their children have taken actions in that regard.

90.     The MCPS Policy in withholding information from Plaintiff Parents with respect

to their children's desire to consider becoming transsexual or that their children have taken

actions in that regard, even if MCBE and the MCBE Members had a compelling interest to do

so, is not narrowly tailored to the circumstances.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief

requested in their Requests for Relief.

Count VII

Violation of 42 U.S.C. § 1983

91.     Plaintiff Parents incorporate by reference all other allegations of this Complaint.

92.     Section 1983 of Title 42 of the United States Code is incorporated by reference

into the laws of Maryland by Article 2 of the Declaration of Rights of the Maryland

Constitution.

93.     Section 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to be
> subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity, or other proper proceeding
> for redress . . . .

94.     MCBE and the MCBE Members have, under color of law, deprived Plaintiff

Parents of their rights, privileges, or immunities secured by the United States and Maryland

- 27 -

Constitutions and federal and state laws and regulations by execution, adoption, enforcement, and application of the MCPS Policy with respect to withholding and secreting from Plaintiff Parents information concerning transgender inclinations and behavior of their minor children.

95.   MCBE and the MCBE Members violated clearly established law when depriving Plaintiff Parents of their rights, privileges, or immunities secured by the United States and Maryland Constitutions and federal and state laws and regulations by execution, adoption, enforcement, and application of the MCPS Policy with respect to withholding and secreting from Plaintiff Parents information concerning transgender inclinations and behavior of their minor children.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

<u>Requests for Relief</u>

Plaintiff Parents request the following relief:

1.   a declaration that the MCPS Policy with respect to withholding from parents knowledge of and information about their minor children's transgender inclinations and behaviors and all records thereof violates § 5-203 of the Family Article of the Maryland Code;

2.   a declaration that the MCPS Policy with respect to withholding from parents knowledge of and information about their minor children's transgender inclinations and behaviors and all records thereof violates Chapter 13a.08.02 of the Maryland Code of Regulations;

3.   a declaration that the MCPS Policy with respect to withholding from parents knowledge of and information about their minor children's transgender inclinations and

- 28 -

behaviors and all records thereof violates the Maryland Constitution and its incorporation of the fundamental rights of parents to direct the care, custody, education, safety, and control of their minor children;

4.      a declaration that the MCPS Policy with respect to withholding from parents records about their minor children's transgender inclinations and behaviors violates FERPA as incorporated in Maryland law;

5.      a declaration that the MCPS Policy with respect to performing surveys and evaluations, without parental consent, of minor children's transgender inclinations and behaviors violates PPRA as incorporated in Maryland law;

6.      a declaration that the MCPS Policy with respect to withholding from parents knowledge of and information about their minor children's transgender inclinations and behaviors and all records thereof violates the fundamental rights of parents to direct the care, custody, education, safety, and control of their minor children as guaranteed by the United States Constitution;

7.      a declaration that the MCPS Policy with respect to withholding from parents knowledge of and information about their minor children's transgender inclinations and behaviors and all records thereof violates § 1983 of Title 42 of the United States Code;

8.      a declaration that the MCPS Policy violates Maryland law and regulation and both the Maryland and United States Constitutions to the extent that it (a) enables minor children to change gender identity at school by selecting new names and pronouns without parental consent; (b) prohibits MCPS personnel from communicating with parents about their minor children's gender dysphoria, including any desired change in name and pronouns, without

first obtaining the child's consent; (c) instructs MCPS personnel to deceive parents by, among other ways, using different names and pronouns around parents than in school; and (d) instructs MCPS personnel to survey and evaluate minors regarding their sex behavior and attitudes without prior parental consent;

9.     a declaration that, notwithstanding the MCPS Policy, MCPS personnel (a) may not evaluate or facilitate a child's social transition to a different gender identity at school without prior parental consent; and (b) may not attempt to deceive parents by, among other things, using different names and pronouns when communicating with parents than they use for the parents' child in school;

10.     an injunction prohibiting MCBE and the individual defendants from evaluating and then enabling children to transition socially to a different gender identity at school by selecting new names and pronouns without prior parental notice and consent;

11.     an injunction prohibiting MCBE and the individual defendants from preventing its personnel, without first obtaining the child's consent, from communicating with parents that their child may be dealing with gender dysphoria or that their child has or wants to change gender identity and from training its personnel to follow such a policy;

12.     an injunction prohibiting MCBE and the individual defendants and its personnel from actively deceiving parents by, among other things, using different names for their child(ren) around parents than they do in the school setting;

13.     an injunction requiring MCBE and the individual defendants to retrain MCPS personnel in accordance with this Court's holding in this case;

14.     an award of nominal damages in the amount of $1.00;

15.     an award of attorney's fees and the expenses of this litigation; and

16.     such other relief as this Court deems proper.


Respectfully submitted,

David A. Bruce (CPFN: 7905010014)

205 Vierling Dr.
Silver Spring, Md. 20904
301-704-2918
dabruce76@gmail.com

Attorney for Plaintiffs


Of Counsel

Frederick W. Claybrook, Jr. (DC 935593)[2]
Claybrook LLC
700 Sixth St., NW, Ste. 430
Washington, D.C. 20001
(202) 250-3833
Rick@Claybrooklaw.com

Steven W. Fitschen (VA Bar #44063)[3]
James A. Davids (VA Bar # 69997)[4]
National Legal Foundation
524 Johnstown Road
Chesapeake, Va. 23322
(757) 463-6133
sfitschen@nationallegalfoundation.org
jimdavids@gmail.com

October 20, 2020

---

[2] Active member of the D.C. Bar who will be filing a motion for admission *pro hac vice*.
[3] Active member of Virginia Bar who will be filing a motion for admission *pro hac vice*.
[4] Active member of Virginia Bar who will be filing a motion for admission *pro hac vice*.

English



# 2020–2021

## Guidelines for Student

# GENDER IDENTITY

## in Montgomery County Public Schools

## www.montgomeryschoolsmd.org

Maryland's Largest School District

**MONTGOMERY COUNTY PUBLIC SCHOOLS**



## VISION

*We inspire learning by providing the greatest public education to each and every student.*

## MISSION

*Every student will have the academic, creative problem solving, and social emotional skills to be successful in college and career.*

## CORE PURPOSE

*Prepare all students to thrive in their future.*

## CORE VALUES

*Learning*
*Relationships*
*Respect*
*Excellence*
*Equity*

**Board of Education**

Mrs. Shebra L. Evans
*President*

Ms. Brenda Wolff
*Vice President*

Ms. Jeanette E. Dixon

Dr. Judith R. Docca

Mrs. Patricia B. O'Neill

Ms. Karla Silvestre

Mrs. Rebecca K. Smondrowski

Mr. Nicholas W. Asante
*Student Member*

**Montgomery County
Public Schools (MCPS)
Administration**

Jack R. Smith, Ph.D.
*Superintendent of Schools*

Monifa B. McKnight, Ed.D.
*Deputy Superintendent*

Henry R. Johnson, Jr., Ed.D.
*Chief of Staff*

Derek G. Turner
*Chief of Engagement, Innovation, and Operations*

Janet S. Wilson, Ph.D.
*Chief of Teaching, Learning, and Schools*

850 Hungerford Drive
Rockville, Maryland 20850
www.montgomeryschoolsmd.org

Montgomery County Public Schools (MCPS) is committed to a safe, welcoming school environment where students are engaged in learning and are active participants in the school community because they feel accepted and valued. To this end, all students should feel comfortable expressing their gender identity, including students who identify as transgender or gender nonconforming.[1] It is critical that all MCPS staff members recognize and respect matters of gender identity; make all reasonable accommodations in response to student requests regarding gender identity; and protect student privacy and confidentiality. To assist in these efforts, MCPS has developed the following guidelines for student gender identity that are aligned with the Montgomery County Board of Education's core values, guidance from the Maryland State Department of Education[2], and the Montgomery County Board of Education Policy ACA, *Nondiscrimination, Equity, and Cultural Proficiency*, which prohibits discrimination, stigmatization, and bullying based on gender identity, as well as sex, gender, gender expression, and sexual orientation, among other personal characteristics. These guidelines cannot anticipate every situation which might occur. Consequently, the needs of each student must be assessed on a case-by-case basis.

## GOALS

- Support students so they may participate in school life consistent with their asserted gender identity;

- Respect the right of students to keep their gender identity or transgender status private and confidential;

- Reduce stigmatization and marginalization of transgender and gender nonconforming students;

- Foster social integration and cultural inclusiveness of transgender and gender nonconforming students; and

- Provide support for MCPS staff members to enable them to appropriately and consistently address matters of student gender identity and expression.

## DEFINITIONS

The definitions provided here are not intended to label students but rather to assist in understanding transgender and gender nonconforming students. Students might or might not use these terms to describe themselves.[3,4]

**AGENDER**   Without a gender (also "nongendered" or "genderless").

**CISGENDER**   A person whose gender identity and gender expression align with the person's sex assigned at birth; a person who is not transgender or gender nonconforming.

**GENDER EXPRESSION**   The manner with which a person represents or expresses gender to others, often through behavior, clothing, hairstyles, activities, voice, speech and word choices, or mannerisms.

**GENDER FLUID**   A person whose gender identity or gender expression is not fixed and shifts over time, depending on the situation.

**GENDER IDENTITY**   A person's deeply held internalized sense or psychological knowledge of the person's own gender. One's gender identity may be the same as or different from the sex assigned at birth. Most people have a gender identity that matches their sex assigned at birth. For some, however, their gender identity is different from their sex assigned at birth. All people have gender identity, not just persons who are transgender or gender nonconforming people. For the purposes of this guidance, a student's gender identity is that which is consistently asserted at school.

**GENDER NONCONFORMING**   A term for individuals whose gender expression differs from conventional or stereotypical expectations, such as "feminine" boys, "masculine" girls, and those whose gender expression may be androgynous. This includes people who identify outside traditional gender categories or identify as two or more genders. Other terms that can have similar meanings include "gender diverse" or "gender expansive."

**INTERSEX**   A range of conditions associated with the development of physical sex characteristics that do not fit the typical definition of male or female.

**LGBTQ**   An acronym for the Lesbian, Gay, Bisexual, Transgender, Queer, and Questioning community. This acronym often is written as LGBTQ+ in an effort to be more inclusive. It is also stated as LGBTA to include people who are asexual, or LGBTI, with the I representing intersex, or LGBTQIA to represent all of the above.

**NON-BINARY**   A person who transcends commonly held concepts of gender through their own expression and identity (e.g., gender expansive, gender creative, or gender queer). Some non-binary people are also transgender.

---

[1] Related Montgomery County Board of Education Policies and MCPS Regulations: ACA, ACF, JHF, JHF-RA, ACA-RA, ACF-RA, COA, COA-RA

[2] For more information and lists of additional resources, see: *Maryland State Department of Education, Providing Safe Spaces for Transgender and Gender Non-Conforming Youth: Guidelines for Gender Identity Non-Discrimination* (October 2015), available at marylandpublicschools.org/about/Documents/DSFSS/SSSP/ProvidingSafeSpacesTransgenderNonConformingYouth012016.pdf.

[3] Terminology used in these guidelines is intended to be as inclusive as possible; however, it is understood that terms and language are evolving and may become outdated quickly.

[4] Definitions were informed by the following sources: American Civil Liberties Union; American Psychological Association; Baltimore City Schools; California School Boards Association; Chicago Public Schools; District of Columbia Public Schools; Gay, Lesbian, and Straight Education Network; Howard County Public Schools; Human Rights Campaign; Lambda Legal; Maryland State Department of Education; Maryland Public Secondary Schools Athletic Association; Massachusetts Department of Elementary and Secondary Education; National Collegiate Athletic Association; National School Boards Association; New York City Department of Education; PFLAG; and Trevor Project.

SEX ASSIGNED AT BIRTH   The sex designation recorded on an infant's birth certificate, should such a record be provided at birth.

SEXUAL ORIENTATION   Describes a person's emotional, romantic, or sexual attraction to other people. Some examples of sexual orientation are gay, lesbian, bisexual, asexual or pansexual.

TRANSGENDER   An adjective describing a person whose gender identity or expression is different from that traditionally associated with the person's sex assigned at birth. Other terms that can have similar meanings are "transsexual" and "trans."

TRANSITION   The process by which a person decides to live as the gender with which the person identifies, rather than the gender assigned at birth. In order to openly express their gender identity to other people, transgender people may take a variety of steps (e.g., using a nickname or legally changing their names and/or their sex designation on legal documents; choosing clothes and hairstyles that reflect their gender identity; and generally living, and presenting themselves to others consistently with their gender identity). Some, but not all, transgender people take hormones or undergo surgical procedures to change their bodies to align with their gender identity. Although transitioning includes the public representation on one's gender expression, transitioning is a personal process and individuals transitioning have the right to privacy.

X MARKER   Gender marker option for a person who does not identify with the binary categories of "M" for male or "F"

## PROACTIVELY WORKING WITH TRANSGENDER AND GENDER NONCONFORMING STUDENTS

### GENDER SUPPORT PLAN

The principal (or designee), in collaboration with the student and the student's family (if the family is supportive of the student), should develop a plan to ensure that the student has equal access and equal opportunity to participate in all programs and activities at school and is otherwise protected from gender-based discrimination at school. The principal, designee, or school-based mental health professional (e.g., school psychologist or school counselor) should use MCPS Form 560-80, *Intake Form: Supporting Students, Gender Identity* to support this process and assist the student in participating in school. The completed form must be maintained in a secure location and may not be placed in the student's cumulative or confidential files. While the plan should be consistently implemented by all school staff, the form itself is not intended to be used or accessed by other school staff members.

- Each student's needs should be evaluated on a case-by-case basis, and all plans should be evaluated on an ongoing basis and revised as needed. As a part of the plan, schools should identify staff member(s) who will be the key contact(s) for the student. The plan should delineate how support will be provided and how and to whom information will be disseminated. In addition, each plan should address identified name; pronouns; athletics; extracurricular activities; locker rooms; bathrooms; safe spaces, safe zones, and other safety supports; and formal events such as graduation.

### COMMUNICATION WITH FAMILIES

Prior to contacting a student's parent/guardian, the principal or identified staff member should speak with the student to ascertain the level of support the student either receives or anticipates receiving from home. In some cases, transgender and gender nonconforming students may not openly express their gender identity at home because of safety concerns or lack of acceptance. Matters of gender identity can be complex and may involve familial conflict. If this is the case, and support is required, the Office of School Support and Improvement or the Office of Student and Family Support and Engagement (OSFSE) should be contacted. In such cases, staff will support the development of a student-led plan that works toward inclusion of the family, if possible, taking safety concerns into consideration, as well as student privacy, and recognizing that providing support for a student is critical, even when the family is nonsupportive.

## PRIVACY AND DISCLOSURE OF INFORMATION

- All students have a right to privacy. This includes the right to keep private one's transgender status or gender nonconforming presentation at school.

- Information about a student's transgender status, legal name, or sex assigned at birth may constitute confidential medical information. Disclosing this information to other students, their parents/guardians, or third parties may violate privacy laws, such as the federal *Family Educational Rights and Privacy Act* (FERPA).

- Schools will ensure that all medical information, including that relating to transgender students, is kept confidential in accordance with applicable state, local, and federal privacy laws.

- Please note that medical diagnosis, treatment, and/or other documentation are not required for a school to accommodate requests regarding gender presentation, identity, and diversity.

- Transgender and gender nonconforming students have the right to discuss and demonstrate their gender identity and expression openly and decide when, with whom, and how much to share private information. The fact that students choose to disclose their status to staff members or other students does not authorize school staff members to disclose a student's status to others, including parents/guardians and other school staff members, unless legally required to do so or unless students have authorized such disclosure. It is inappropriate to ask transgender or gender nonconforming students more questions than are necessary to support them at school.

## NAMES/PRONOUNS

- All students have the right to be referred to by their identified name and/or pronoun. School staff members should address students by the name and pronoun corresponding to the gender identity that is consistently asserted at school. Students are not required to obtain a court-ordered name

and/or sex designation change or to change their student records as a prerequisite to being addressed by the name and pronoun that corresponds to their identified name. To the extent possible, and consistent with these guidelines, school personnel will make efforts to maintain the confidentiality of the student's transgender status.

## STAFF COMMUNICATION

Whenever schools are not legally required to use a student's legal name or sex assigned at birth on school records and other documents, the school should use the name and gender identified by the student on documents such as classroom rosters, identification badges, announcements, certificates, newspapers, newsletters, and yearbooks. To avoid harmful misgendering or misnaming, schools should be especially mindful that all information shared with substitute teachers should be in alignment with the student's identified name and gender.

- Schools should seek to minimize the use of permission slips and other school-specific forms that require disclosure of a student's gender or use gendered terminology such as boys/girls (instead of students) or mother/father (instead of parent/guardian).

- Unless the student or parent/guardian has specified otherwise, when contacting the parent/guardian of a transgender student, MCPS school staff members should use the student's legal name and pronoun that correspond to the student's sex assigned at birth.

- Asking about a person's pronouns makes spaces more inclusive and welcoming of transgender, gender nonconforming, and non-binary people.

## OFFICIAL SCHOOL RECORDS

Schools are required to maintain a permanent student record for each student, which includes the legal name and gender of the student. In situations where schools are required to use the legal name and gender from a student's permanent record, such as for standardized tests or reports to the Maryland State Department of Education (MSDE), school staff members and administrators shall adopt practices to avoid the inadvertent disclosure of the student's legal name and gender when it differs from the student's identified name and gender.

- In accordance with guidance from the Maryland State Department of Education, a student's records may identify the student as male, female, or gender X.

- A student's permanent record will be changed to reflect a change in the student's legal name or gender upon receipt of documentation that such legal name and/or gender have been changed. Any of the following documents is evidence of a legal name and/or gender change:

  - Court order;
  - New birth certificate;
  - State- or federal-issue identification; or
  - Documentation from a licensed healthcare practitioner.

- If a student and/or the student's parent/guardian requests a change to the student's permanent record, absent such documentation, the school should contact OSFSE.

- The school must protect the student's previous identity once a change to a student's legal name and/or gender has occurred. Please refer to the Student Record Keeper Manual, Office of Shared Accountability (OSA), or OSFSE for additional information.

- When a name and/or gender change has been made to official school records, the school must notify OSA so that appropriate notice to MSDE can be made.

- When a name and/or gender change has been made to official school records, school administrators should advise families that they must provide updated copies of any records provided to the school that were generated by external sources (e.g., immunization records, doctor's orders, or other records from medical providers).

- Similarly, a former student's permanent record should be changed to reflect a change in the former student's legal name or gender, upon receipt of documentation that such legal name and/or gender have been changed pursuant to a court order, new birth certificate, state- or federal-issue identification, or with documentation from a licensed healthcare practitioner. These changes are processed by Central Records.

## DRESS CODE

- Transgender and gender nonconforming students have the right to dress in a manner consistent with their gender identity or gender expression, so long as it complies with the MCPS dress code. School staff members shall not enforce a school's dress code more strictly for transgender or gender nonconforming students than for other students.

- Schools should consider gender-neutral dress codes for class or yearbook photos, honor society ceremonies, graduation ceremonies, or dances. In addition, in circumstances where gendered clothing is worn (e.g., in shows and performances), students should be allowed to wear the garments associated with their gender identity.

## GENDER-BASED ACTIVITIES

- Schools should evaluate all gender-based policies, rules, and practices, and maintain only those that have a clear and sound pedagogical purpose. For example, if music and performance groups arrange students into sections, they should seek to group them by voice type/qualities, rather than by gender.

- Whenever students are separated by gender in school activities or are subject to an otherwise lawful gender-specific rule, policy, or practice, students must be permitted to participate consistent with their gender identity.

## GENDER-SEPARATED AREAS

- Where facilities are designated by gender, students **must** be provided access to gender-specific facilities (e.g., bathrooms, locker rooms, and changing rooms) in alignment with their consistently asserted gender identity.

- Any student who is uncomfortable using a shared facility because of safety, privacy, or any other reason, should, upon request, be provided with a safe and nonstigmatizing alternative arrangement such as a single bathroom or, with respect to locker rooms, a privacy partition or curtain in changing areas, use of a nearby private restroom or office, or a separate changing schedule. The student should be provided access in a manner that safeguards confidentiality.

- Students who are entitled to use a facility consistent with their gender identity cannot be required to use an alternative arrangement. Alternative arrangements should be used only at the request of a student and in a manner that keeps the student's transgender status confidential.

- Some students may feel uncomfortable with a transgender student using the same sex-specific facility. This discomfort is not a reason to deny access to the transgender student. School administrators and counseling staff members should work with students to address their discomfort to foster understanding of gender identity and to create a school culture that respects and values all students.

## NEW CONSTRUCTION/RENOVATION

- If existing facilities do not meet the requirements of school administration to provide a gender-neutral facility for students, schools should work with the Department of Facilities Management to develop facility plans that could include renovation of existing facilities.

- Bearing in mind student safety considerations, the Department of Facilities Management should work to design gender-neutral bathroom facilities that are for student/public use.

- To the extent feasible, MCPS should build at least one gender-neutral restroom on each floor and in high-traffic areas.

- To the extent feasible, MCPS should incorporate at least one gender-neutral changing facility into the design of new schools and school renovations, allowing for safety and confidentiality considerations in the design and location of the gender-neutral facility.

## PHYSICAL EDUCATION CLASSES AND INTRAMURAL SPORTS

- Whenever the school provides gender-segregated physical education classes and intramural sports, students must be allowed to participate in a manner consistent with their gender identity.

## INTERSCHOLASTIC ATHLETICS

- Transgender and gender nonconforming student participation in interscholastic athletics is determined in accordance with Maryland Public Secondary Schools Athletic Association (MPSSAA) policies and guidelines (available online at www. mpssaa.org/assets/1/6/MPSSAA_Transgender_Guidance_ revised_8.16.pdf).

- Per MPSSAA guidance and to ensure competitive fairness, the integrity of women's sports, and equal opportunities to participate without discrimination, transgender and gender nonconforming students in MCPS shall be permitted to participate on the interscholastic athletics team of:

  - the student's sex assigned at birth; or

  - the gender to which the student has transitioned; or

  - the student's asserted gender identity.

- Schools should refer any appeals regarding eligibility to participate in interscholastic athletics to the MCPS Athletics Unit.

- Competition at other schools: Accommodations provided at the home school should be made available at other facilities with the consent of the student and as part of the student's plan. The coach or home school should notify the school to be visited about any necessary accommodations, keeping the identity of the student confidential.

## CLUBS

- Many MCPS middle and high schools have student-led clubs that connect and support the interests of LGBTQ+ and gender nonconforming students, such as Gender and Sexuality Alliance (GSA) clubs. These clubs should run like any other club with clearly defined purposes.

## OUTDOOR EDUCATION/OVERNIGHT FIELD TRIPS

- Students must be allowed to participate consistent with their asserted gender identity.

- Sleeping arrangements should be discussed with the student and family (if the family is supportive of the student). Upon request, the student should be provided with a safe and non-stigmatizing alternative arrangement, such as a private sleeping area, if practicable.

- Schools should try to accommodate any student who may desire greater privacy, if practicable, without isolating other students.

- A student's transgender status is confidential information and school staff members may not disclose or require disclosure of a student's transgender status to other students or their parents/guardians, as it relates to a field trip, without the consent of the student and/or the student's parent/guardian.

# BULLYING, HARASSMENT, OR INTIMIDATION AND THREAT ASSESSMENT

- LGBTQ+ students have a higher incidence of being bullied and harassed, as well as a higher rate of suicide contemplation, and are more than five times as likely as non-LGBTQ+ students to attempt suicide.

- Board Policy JHF, *Bullying, harassment, or Intimidation*, sets forth the Board's commitment to an environment that is free of bullying, harassment, or intimidation so that schools are a safe place in which to learn; and MCPS Regulation JHF-RA, *Student Bullying, Harassment, or Intimidation*, provides procedures that address the prohibition of bullying in schools. These are available on the MCPS website at *https://www.montgomeryschoolsmd.org/departments/policy/pdf/jhf.pdf* and *https://www.montgomeryschoolsmd.org/departments/policy/pdf/jhfra.pdf*.

- Board Policy COA, *Student Well-being and School Safety*, establishes and maintains a behavior threat assessment process, based on an appraisal of behaviors, and provides appropriate preventive or corrective measures to maintain safe and secure school environments and workplaces. All children deserve a safe and nurturing school environment that supports their physical, social, and psychological well-being. In alignment with Board Policy ACA, *Nondiscrimination, Equity, and Cultural Proficiency*, school safety measures should not reinforce biases against, or rely on the profiling of, students based on their actual or perceived personal characteristics. MCPS Regulation COA-RA, *Behavior Threat Assessment*, requires that staff responsible for implementing behavior threat assessment procedures at the school level are trained to understand implicit bias, promote diversity awareness, and consider the risk of self-harm or the presence of suicidal ideation. Board of Education Policy COA, *Student Well-being and School Safety*, and MCPS Regulation COA-RA, *Behavior Threat Assessment*, are available on the MCPS web at *www.montgomeryschoolsmd.org/departments/policy/pdf/coa.pdf* and *www.montgomeryschoolsmd.org/departments/policy/pdf/coara.pdf*

- Bullying and harassment include conduct that is directed at a student based on a student's actual or perceived gender identity or expression, and includes conduct that targets a student because of a characteristic of a friend, family member, or other person or group with whom a student associates.

- Complaints alleging discrimination or harassment directed at a student based on a student's actual or perceived gender identity or expression should be handled in the same manner as other discrimination or harassment complaints. Schools should be vigilant about bullying and harassment and address it promptly.

- School staff members should take all reasonable steps to ensure safety and access for transgender and gender nonconforming students at their school and support students' rights to assert their gender identity and expression.

- Students shall not be disciplined based on their actual or perceived gender identity or expression.

- Schools are encouraged to have age-appropriate student organizations develop and lead programs to address issues of bullying prevention for all students, with emphasis on LGBTQ+ students.

## SAFE SPACES

- **Hallway or "Flash" Pass:** If needed, schools will allow a transgender or gender nonconforming student to go to a safe space (e.g., main office, counselor's office) at any time the student encounters a situation that feels unsafe or uncomfortable.

- **Safe Zones:** Schools will designate certain teachers' classrooms, specific offices, or a location in a school that is deemed a safe zone where any student, for whatever reason, may go to be free from judgment and to feel comfortable and safe. Schools also should ensure that staff members who have safe zone stickers on their doors have received appropriate training regarding providing inclusive, affirming environments.

## STAFF SUPPORT

- Board of Education Policy ACA, *Nondiscrimination, Equity, and Cultural Proficiency* protects all MCPS employees from any form of discrimination, including actions that are motivated by an invidious intent to target individuals based on their actual or perceived personal characteristics as well as acts of hate, violence, insensitivity, disrespect, or retaliation—such as verbal abuse, harassment, bullying, slurs, threats, physical violence, vandalism, or destruction of property—that impede or affect the learning or work environment, and encompassing racism, sexism, issues of gender identity, and other forms of institutional prejudice in all their manifestations. Staff seeking guidance and supports involving issues of gender identity are encouraged to contact the coordinator in the Office of Employee Engagement and Labor Relations (OEELR) at 240-740-2888.

## CONTACTS

- For more information please contact the MCPS OSFSE at 240-314-4824, or the MCPS Office of the Chief of Staff, Student Welfare and Compliance, at 240-740-3215.

# MCPS NONDISCRIMINATION STATEMENT

Montgomery County Public Schools (MCPS) prohibits illegal discrimination based on race, ethnicity, color, ancestry, national origin, religion, immigration status, sex, gender, gender identity, gender expression, sexual orientation, family/parental status, marital status, age, physical or mental disability, poverty and socioeconomic status, language, or other legally or constitutionally protected attributes or affiliations. Discrimination undermines our community's long-standing efforts to create, foster, and promote equity, inclusion, and acceptance for all. Some examples of discrimination include acts of hate, violence, insensitivity, harassment, bullying, disrespect, or retaliation. For more information, please review Montgomery County Board of Education Policy ACA, *Nondiscrimination, Equity, and Cultural Proficiency*. This Policy affirms the Board's belief that each and every student matters, and in particular, that educational outcomes should never be predictable by any individual's actual or perceived personal characteristics. The Policy also recognizes that equity requires proactive steps to identify and redress implicit biases, practices that have an unjustified disparate impact, and structural and institutional barriers that impede equality of educational or employment opportunities.

| For inquiries or complaints about discrimination against MCPS staff * | For inquiries or complaints about discrimination against MCPS students * |
|---|---|
| Office of Employee Engagement and Labor Relations Department of Compliance and Investigations 850 Hungerford Drive, Room 55, Rockville, MD 20850 240-740-2888 OEELR-EmployeeEngagement@mcpsmd.org | Office of the Chief of Staff Student Welfare and Compliance 850 Hungerford Drive, Room 162, Rockville, MD 20850 240-740-3215 COS-StudentWelfare@mcpsmd.org |
| **For inquiries or complaints about sex discrimination under Title IX, including sexual harassment, against students or staff*** | |
| Title IX Coordinator Office of the Chief of Staff Student Welfare and Compliance 850 Hungerford Drive, Room 162, Rockville, MD 20850 240-740-3215 COS-TitleIX@mcpsmd.org | |

*Inquiries, complaints, or requests for accommodations for students with disabilities also may be directed to the supervisor of the Office of Special Education, Resolution and Compliance Unit, at 240-740-3230. Inquiries regarding accommodations or modifications for staff may be directed to the Office of Employee Engagement and Labor Relations, Department of Compliance and Investigations, at 240-740-2888. In addition, discrimination complaints may be filed with other agencies, such as: the U.S. Equal Employment Opportunity Commission, Baltimore Field Office, City Crescent Bldg., 10 S. Howard Street, Third Floor, Baltimore, MD 21201, 1-800-669-4000, 1-800-669-6820 (TTY); or U.S. Department of Education, Office for Civil Rights, Lyndon Baines Johnson Dept. of Education Bldg., 400 Maryland Avenue, SW, Washington, DC 20202-1100, 1-800-421-3481, 1-800-877-8339 (TDD), OCR@ed.gov, or www2.ed.gov/about/offices/list/ocr/complaintintro.html.*

This document is available, upon request, in languages other than English and in an alternate format under the *Americans with Disabilities Act*, by contacting the MCPS Office of Communications at 240-740-2837, 1-800-735-2258 (Maryland Relay), or PIO@mcpsmd.org. Individuals who need sign language interpretation or cued speech transliteration may contact the MCPS Office of Interpreting Services at 240-740-1800, 301-637-2958 (VP) or MCPSInterpretingServices@mcpsmd.org. MCPS also provides equal access to the Boy/Girl Scouts and other designated youth groups.

Maryland's Largest School District

## MONTGOMERY COUNTY PUBLIC SCHOOLS

Published by the Department of Materials Management for the Office of Student and Family Support and Engagement

1237.20ct • Editorial, Graphics & Publishing Services • 7/20    

EXHIBIT 2

MCPS Form 560-80
June 2020
Page 1 of 2

Maryland's Largest School District

# MONTGOMERY COUNTY PUBLIC SCHOOLS

---

# Intake Form: Supporting Student Gender Identity

Office of Student and Family Support and Engagement
MONTGOMERY COUNTY PUBLIC SCHOOLS
Rockville, Maryland 20850
See MCPS *Guidelines for Student Gender Identity*

---

**Instructions:** The school administrator, counselor, or psychologist should complete this form with the student. Parents/guardians may be involved if the student states that they are aware of and supportive of the student's gender identity. This form should be kept in a secure, confidential location. See distribution information on Page 2. **This form is not to be kept in the student's cumulative or confidential folders.** All plans should be evaluated on an ongoing basis and revised as needed.

## STUDENT INFORMATION

Student Name in MCPS Student Information System (Last, First, MI): _____

School -- Choose One -- _____   Grade _____

What is your identified name?* _____   MCPS ID # _____

What is your identified gender?** ☐ Male  ☐ Female  ☐ X (unspecified/non-binary)  ☐ Other _____

What pronouns do you use to identify yourself in school? _____

## SUPPORT/SAFETY FOR STUDENT

Is parent/guardian aware of your gender identity? ☐ Yes  ☐ No

Support Level: (None) ☐ 1  ☐ 2  ☐ 3  ☐ 4  ☐ 5  ☐ 6  ☐ 7  ☐ 8  ☐ 9  ☐ 10 (High)

If support level is low, what considerations must be accounted for in implementing this plan?

## PRIVACY, CONFIDENTIALITY, AND DISCLOSURE

Plan for bathroom/locker use:

Plan for sports/extracurricular activities:

Other issues to be considered/addressed:

Who will be the student's "go to adult" on campus?

---

\* Consistent with *MCPS Guidelines for Student Gender Identity*, the school administrator/counselor/psychologist can request that the school record keeper add the identified name in the MCPS Student Information System.

\*\* Student's indication of identified gender on this form is for confidential notification to the school ONLY. If the student requests that their gender be changed on MCPS official records, the school must follow the procedures outlined in the *MCPS Student Record Keeper Manual*.

## PRIVACY, CONFIDENTIALITY, AND DISCLOSURE (continued)

If this person is not available, what should student do?

What, if any, will be the process for periodically checking in with the student and/or family?

What are expectations in the event the student is feeling unsafe and how will the student signal their need for help?

## OTHER SCHOOL ACTIVITIES

Are there lessons, units, content or other school activities during the school year to consider (health curriculum, swim unit, social justice units, name projects, dance instruction, Pride events, school dances, promotion/graduation ceremonies, etc.)?

## COMMUNICATION PLAN

Identify staff to whom this information may be disclosed:

How public or private will information about this student's gender be?

## SUPPORT PLAN REVIEW AND REVISION

How will this plan be monitored over time?

Form completed by (print name) _____ Date ____/____/_____

Distribution: Copy 1/School Confidential folder (in principal's office)
   Copy 2/Student Welfare and Compliance Unit, via scan to COS-StudentWelfare@mcpsmd.org,
   or via pony to CESC, Room 162, in a envelope marked confidential

IN THE CIRCUIT COURT FOR **Montgomery County**
_(City or County)_

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff:* This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant:* You must file an Information Report as required by Rule 2-323(h).

**THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING**

**FORM FILED BY:** ☒PLAINTIFF   ☐DEFENDANT   CASE NUMBER

**CASE NAME:** John and Jane Parent #1, et al. vs. Montgomery Cnty Bd of Educ., et al.
_(Plaintiff)_ _(Clerk to Insert)_ _(Defendant)_

**PARTY'S NAME:** Anonymous / Confidential

**PARTY'S ADDRESS:** Anonymous / Confidential   PHONE: Anon./Confid.

**PARTY'S E-MAIL:** Anonymous / Confidential

**If represented by an attorney:**

**PARTY'S ATTORNEY'S NAME:** David A. Bruce

**PARTY'S ATTORNEY'S ADDRESS:** 205 Vierling Drive; Silver Spring, MD 20904   PHONE: 301-704-2918

**PARTY'S ATTORNEY'S E-MAIL:** dabruce76@gmail.com

**JURY DEMAND?** ☐Yes ☒No

**RELATED CASE PENDING?** ☐Yes ☒No  If yes, Case #(s), if known:

**ANTICIPATED LENGTH OF TRIAL?:** _____ hours _____ days

### PLEADING TYPE

**New Case:** ☒Original   ☐Administrative Appeal   ☐Appeal

**Existing Case:** ☐Post-Judgment   ☐Amendment

*If filing in an existing case, skip Case Category/ Subcategory section - go to Relief section.*

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint - DOB of Youngest Plt:_____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Workers' Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. - Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☒ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

**CC-DCM-002** (Rev. 04/2017)   Page 1 of 3

IN THE CIRCUIT COURT FOR __Montgomery County__

(City or County)

## CIVIL - NON-DOMESTIC CASE INFORMATION REPORT

### DIRECTIONS

*Plaintiff*: This Information Report must be completed and attached to the complaint filed with the Clerk of Court unless your case is exempted from the requirement by the Chief Judge of the Court of Appeals pursuant to Rule 2-111(a).

*Defendant*: You must file an Information Report as required by Rule 2-323(h).

*THIS INFORMATION REPORT CANNOT BE ACCEPTED AS A PLEADING*

FORM FILED BY: ☒PLAINTIFF  ☐DEFENDANT   CASE NUMBER _____
(Clerk to insert)

CASE NAME: John and Jane Parent #1, et al.   vs.   Montgomery Cnty Bd of Educ., et al.

PARTY'S NAME: Anonymous / Confidential   PHONE: Anon./Confid.
Plaintiff / Defendant

PARTY'S ADDRESS: Anonymous / Confidential

PARTY'S E-MAIL: Anonymous / Confidential

**If represented by an attorney:**

PARTY'S ATTORNEY'S NAME: David A. Bruce   PHONE: 301-704-2918

PARTY'S ATTORNEY'S ADDRESS: 205 Vierling Drive; Silver Spring, MD  20904

PARTY'S ATTORNEY'S E-MAIL: dabruce76@gmail.com

JURY DEMAND? ☐Yes ☒No

RELATED CASE PENDING? ☐Yes ☒No  If yes, Case #(s), if known: _____

ANTICIPATED LENGTH OF TRIAL?: _____ hours _____ days

### PLEADING TYPE

**New Case:** ☒Original  ☐Administrative Appeal  ☐Appeal

**Existing Case:** ☐Post-Judgment  ☐Amendment

*If filing in an existing case, skip Case Category/ Subcategory section - go to Relief section.*

### IF NEW CASE: CASE CATEGORY/SUBCATEGORY (*Check one box.*)

**TORTS**
- ☐ Asbestos
- ☐ Assault and Battery
- ☐ Business and Commercial
- ☐ Conspiracy
- ☐ Conversion
- ☐ Defamation
- ☐ False Arrest/Imprisonment
- ☐ Fraud
- ☐ Lead Paint - DOB of Youngest Plt: _____
- ☐ Loss of Consortium
- ☐ Malicious Prosecution
- ☐ Malpractice-Medical
- ☐ Malpractice-Professional
- ☐ Misrepresentation
- ☐ Motor Tort
- ☐ Negligence
- ☐ Nuisance
- ☐ Premises Liability
- ☐ Product Liability
- ☐ Specific Performance
- ☐ Toxic Tort
- ☐ Trespass
- ☐ Wrongful Death

**CONTRACT**
- ☐ Asbestos
- ☐ Breach
- ☐ Business and Commercial
- ☐ Confessed Judgment (Cont'd)
- ☐ Construction
- ☐ Debt
- ☐ Fraud

- ☐ Government
- ☐ Insurance
- ☐ Product Liability

**PROPERTY**
- ☐ Adverse Possession
- ☐ Breach of Lease
- ☐ Detinue
- ☐ Distress/Distrain
- ☐ Ejectment
- ☐ Forcible Entry/Detainer
- ☐ Foreclosure
  - ☐ Commercial
  - ☐ Residential
  - ☐ Currency or Vehicle
  - ☐ Deed of Trust
  - ☐ Land Installments
  - ☐ Lien
  - ☐ Mortgage
  - ☐ Right of Redemption
  - ☐ Statement Condo
- ☐ Forfeiture of Property / Personal Item
- ☐ Fraudulent Conveyance
- ☐ Landlord-Tenant
- ☐ Lis Pendens
- ☐ Mechanic's Lien
- ☐ Ownership
- ☐ Partition/Sale in Lieu
- ☐ Quiet Title
- ☐ Rent Escrow
- ☐ Return of Seized Property
- ☐ Right of Redemption
- ☐ Tenant Holding Over

**PUBLIC LAW**
- ☐ Attorney Grievance
- ☐ Bond Forfeiture Remission
- ☐ Civil Rights
- ☐ County/Mncpl Code/Ord
- ☐ Election Law
- ☐ Eminent Domain/Condemn.
- ☐ Environment
- ☐ Error Coram Nobis
- ☐ Habeas Corpus
- ☐ Mandamus
- ☐ Prisoner Rights
- ☐ Public Info. Act Records
- ☐ Quarantine/Isolation
- ☐ Writ of Certiorari

**EMPLOYMENT**
- ☐ ADA
- ☐ Conspiracy
- ☐ EEO/HR
- ☐ FLSA
- ☐ FMLA
- ☐ Workers' Compensation
- ☐ Wrongful Termination

**INDEPENDENT PROCEEDINGS**
- ☐ Assumption of Jurisdiction
- ☐ Authorized Sale
- ☐ Attorney Appointment
- ☐ Body Attachment Issuance
- ☐ Commission Issuance

- ☐ Constructive Trust
- ☐ Contempt
- ☐ Deposition Notice
- ☐ Dist Ct Mtn Appeal
- ☐ Financial
- ☐ Grand Jury/Petit Jury
- ☐ Miscellaneous
- ☐ Perpetuate Testimony/Evidence
- ☐ Prod. of Documents Req.
- ☐ Receivership
- ☐ Sentence Transfer
- ☐ Set Aside Deed
- ☐ Special Adm. - Atty
- ☐ Subpoena Issue/Quash
- ☐ Trust Established
- ☐ Trustee Substitution/Removal
- ☐ Witness Appearance-Compel

**PEACE ORDER**
- ☐ Peace Order

**EQUITY**
- ☐ Declaratory Judgment
- ☐ Equitable Relief
- ☒ Injunctive Relief
- ☐ Mandamus

**OTHER**
- ☐ Accounting
- ☐ Friendly Suit
- ☐ Grantor in Possession
- ☐ Maryland Insurance Administration
- ☐ Miscellaneous
- ☐ Specific Transaction
- ☐ Structured Settlements

CC-DCM-002 (Rev. 04/2017)   Page 1 of 3

## IF NEW OR EXISTING CASE: RELIEF (Check All that Apply)

☐ Abatement
☐ Administrative Action
☐ Appointment of Receiver
☐ Arbitration
☒ Asset Determination
☐ Attachment b/f Judgment
☐ Cease & Desist Order
☐ Condemn Bldg
☐ Contempt
☐ Court Costs/Fees
☐ Damages-Compensatory
☐ Damages-Punitive

☐ Earnings Withholding
☐ Enrollment
☐ Expungement
☐ Findings of Fact
☐ Foreclosure
☒ Injunction
☐ Judgment-Affidavit
☐ Judgment-Attorney Fees
☐ Judgment-Confessed
☐ Judgment-Consent
☒ Judgment-Declaratory
☐ Judgment-Default

☐ Judgment-Interest
☐ Judgment-Summary
☐ Liability
☐ Oral Examination
☐ Order
☐ Ownership of Property
☐ Partition of Property
☐ Peace Order
☐ Possession
☐ Production of Records
☐ Quarantine/Isolation Order
☐ Reinstatement of Employment

☐ Return of Property
☐ Sale of Property
☐ Specific Performance
☐ Writ-Error Coram Nobis
☒ Writ-Execution
☒ Writ-Garnish Property
☒ Writ-Garnish Wages
☒ Writ-Habeas Corpus
☒ Writ-Mandamus
☒ Writ-Possession

*If you indicated **Liability** above, mark one of the following. This information is <u>not</u> an admission and may not be used for any purpose other than Track Assignment.*

☐ Liability is conceded.  ☐ Liability is not conceded, but is not seriously in dispute.  ☐ Liability is seriously in dispute.

## MONETARY DAMAGES (Do not include Attorney's Fees, Interest, or Court Costs)

☒ Under $10,000    ☐ $10,000 - $30,000    ☐ $30,000 - $100,000    ☐ Over $100,000

☐ Medical Bills $_____    ☐ Wage Loss $_____    ☐ Property Damages $_____

## ALTERNATIVE DISPUTE RESOLUTION INFORMATION

Is this case appropriate for referral to an ADR process under Md. Rule 17-101? (Check all that apply)

A. Mediation   ☐ Yes  ☒ No
B. Arbitration   ☐ Yes  ☒ No

C. Settlement Conference   ☐ Yes  ☒ No
D. Neutral Evaluation   ☐ Yes  ☒ No

## SPECIAL REQUIREMENTS

☐ If a Spoken Language Interpreter is needed, **check here and attach form CC-DC-041**

☐ If you require an accommodation for a disability under the Americans with Disabilities Act, **check here and attach form CC-DC-049**

## ESTIMATED LENGTH OF TRIAL

*With the exception of Baltimore County and Baltimore City, please fill in the estimated **LENGTH OF TRIAL.*** **(Case will be tracked accordingly)**

☐ 1/2 day of trial or less
☒ 1 day of trial time
☐ 2 days of trial time

☐ 3 days of trial time
☐ More than 3 days of trial time

## BUSINESS AND TECHNOLOGY CASE MANAGEMENT PROGRAM

*For all jurisdictions, if Business and Technology track designation under Md. Rule 16-308 is requested, attach a duplicate copy of complaint and check one of the tracks below.*

☐ **Expedited**- Trial within 7 months of Defendant's response

☐ **Standard** - Trial within 18 months of Defendant's response

EMERGENCY RELIEF REQUESTED

## COMPLEX SCIENCE AND/OR TECHNOLOGICAL CASE MANAGEMENT PROGRAM (ASTAR)

*FOR PURPOSES OF POSSIBLE SPECIAL ASSIGNMENT TO ASTAR RESOURCES JUDGES under Md. Rule 16-302, attach a duplicate copy of complaint and check whether assignment to an ASTAR is requested.*

☐ **Expedited** - Trial within 7 months of Defendant's response          ☐ **Standard** - Trial within 18 months of Defendant's response

*IF YOU ARE FILING YOUR COMPLAINT IN BALTIMORE CITY, OR BALTIMORE COUNTY, PLEASE FILL OUT THE APPROPRIATE BOX BELOW.*

### CIRCUIT COURT FOR BALTIMORE CITY (CHECK ONLY ONE)

| | | |
|---|---|---|
| ☐ | Expedited | Trial 60 to 120 days from notice. Non-jury matters. |
| ☐ | Civil-Short | Trial 210 days from first answer. |
| ☐ | Civil-Standard | Trial 360 days from first answer. |
| ☐ | Custom | Scheduling order entered by individual judge. |
| ☐ | Asbestos | Special scheduling order. |
| ☐ | Lead Paint | Fill in: Birth Date of youngest plaintiff ............................. . |
| ☐ | Tax Sale Foreclosures | Special scheduling order. |
| ☐ | Mortgage Foreclosures | No scheduling order. |

### CIRCUIT COURT FOR BALTIMORE COUNTY

| | | |
|---|---|---|
| ☐ | Expedited (Trial Date-90 days) | Attachment Before Judgment, Declaratory Judgment (Simple), Administrative Appeals, District Court Appeals and Jury Trial Prayers, Guardianship, Injunction, Mandamus. |
| ☐ | Standard (Trial Date-240 days) | Condemnation, Confessed Judgments (Vacated), Contract, Employment Related Cases, Fraud and Misrepresentation, International Tort, Motor Tort, Other Personal Injury, Workers' Compensation Cases. |
| ☐ | Extended Standard (Trial Date-345 days) | Asbestos, Lender Liability, Professional Malpractice, Serious Motor Tort or Personal Injury Cases (medical expenses and wage loss of $100,000, expert and out-of-state witnesses (parties), and trial of five or more days), State Insolvency. |
| ☐ | Complex (Trial Date-450 days) | Class Actions, Designated Toxic Tort, Major Construction Contracts, Major Product Liabilities, Other Complex Cases. |

| | |
|---|---|
| October 20, 2020 | _(signature)_ |
| **Date** | **Signature of Counsel / Party** |
| 205 Vierling Drive | David A. Bruce |
| **Address** | **Printed Name** |
| Silver Spring          MD          20904 | |
| **City**          **State**          **Zip Code** | |