## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

JOHN and JANE PARENTS 1, JOHN PARENT 2,[1]

    Plaintiffs,

       v.

MONTGOMERY COUNTY BOARD OF
EDUCATION

Serve:  Hon. Brian E. Frosh
        Attorney General of Maryland
        200 St. Paul Place
        Baltimore, Md. 21202

SHEBRA L. EVANS, BRENDA WOLFF,
JEANETTE E. DIXON, JUDITH DOCCA,
PATRICIA B. O'NEILL, KARLA SILVESTRE,
and REBECCA SMONDROWSKI, individually and
in their official capacities as Members of the
Montgomery County Board of Education

Serve all at: 850 Hungerford Drive,
         Rockville, Md. 20850

JACK R. SMITH, individually and
in his official capacities as a
member of the Montgomery County Board of
Education and Montgomery County Superintendent
of Schools

Serve at:   850 Hungerford Drive,
         Rockville, Md. 20850

    Defendants.

No. 483809-V

RECEIVED

OCT 2 0 2020

Clerk of the Circuit Court
Montgomery County, Md.

<u>COMPLAINT</u>

Plaintiffs John and Jane Parents 1 and John Parent 2[1] (collectively, "Plaintiff Parents")
allege as their complaint as follows:

<u>Nature of the Case</u>

1.     Plaintiff Parents have brought this action to enforce their rights to access certain
information generated and retained about their minor children by the defendants and their
agents, to whom the Plaintiff Parents have entrusted their children for their education, and to
enforce their right to provide consent on behalf of their minor children.  These rights are
founded on Maryland statutory and regulatory provisions, as well as the State and Federal
Constitutions and federal laws, which recognize the fundamental right of parents to direct the
upbringing of their children, to be primarily responsible for their children's health and safety,
and to decide what is in their minor children's best interests.

2.     The Montgomery County Board of Education ("MCBE") has violated these
rights by adopting a Policy (defined below) expressly designed to circumvent parental
involvement in a pivotal decision affecting the Plaintiffs Parents' minor children's care, health,
education, and future. The Policy enables MCBE personnel to evaluate minor children about
sexual matters and allows minor children, of any age, to transition socially to a different gender
identity at school without parental notice or consent.  The Policy further requires school
personnel to enable this transition, including by using pronouns other than those consistent with
the child's birth gender.  The Policy then prohibits personnel from communicating with parents

---

[1]     Plaintiff Parents file this case anonymously, using pseudonyms, as other plaintiffs have
done in similar by sensitive cases. Shortly after this Court assigns a case number, Plaintiff
Parents will file a motion to proceed using pseudonyms.

about this potentially life-altering and dangerous choice, unless the minor child consents to parental disclosure. MCBE in its guidelines and corresponding intake form even goes so far as to direct its teachers and staff to deceive parents by reverting to the child's birth name and corresponding pronouns whenever the child's parents are present and to keep information about the child's gender transformation out of the school files to which the parents have access under Maryland regulations and the federal Family Educational Rights and Privacy Act ("FERPA").

Parties

3.      Plaintiffs John and Jane Parents 1 are residents of Montgomery County, Maryland. They are the parents of several minor children, the two eldest of which attend a high school in the Montgomery County Public School ("MCPS") system. Plaintiffs John and Jane Parents 1 intend to enroll their remaining children in MCPS schools at some time during their elementary and secondary education. Plaintiffs John and Jane Parents 1 are adult parents of minors as described in § 1-103 of the General Provisions and § 5-203 of the Family Article of the Code of Maryland; in Chapter 13a.08.02.03 of the Maryland Code of Regulations; in FERPA, 20 U.S.C. § 1232g; and in the Protection of Pupil Rights Act, 20 U.S.C. § 1232h. All their children are unemancipated, minor children as defined in these provisions. Plaintiffs John and Jane Parents 1 are not mental health or child care practitioners.

4.      Plaintiff John Parent 2 is a resident of Montgomery County, Maryland. He is the parent of several minor children, the eldest of which attends a high school in the MCPS system. Plaintiff John Parent 2 intends to enroll his remaining children in MCPS schools at some time during their elementary and secondary education. Plaintiff John Parent 2 is an adult parent of minors as described in § 1-103 of the General Provisions and § 5-203 of the Family Article of the Code of Maryland; in Chapter 13a.08.02.03 of the Maryland Code of Regulations; and in

FERPA, 20 U.S.C. § 1232g; and in the Protection of Pupil Rights Act, 20 U.S.C. § 1232h. All

his children are unemancipated, minor children as defined in these provisions. Plaintiff John

Parent 2 is not a mental health or child care practitioners.

5.      Plaintiff Parents are using pseudonyms to protect their privacy and the privacy

of their minor children and to prevent retaliation against them and their children for raising

this issue. The identities of Plaintiff Parents and their children are not relevant to the legal

issues in this case, so anonymity will not prejudice the defendants in any way.

6.      Defendant MCBE is a public entity that, pursuant to § 4-101 of the Education

Article of the Code of Maryland, controls educational matters that affect Montgomery

County. Pursuant to § 4-108(3) of the Education Article, MCBE is authorized to adopt

educational policies for MCPS, but not if those rules and regulations are inconsistent with

State law. Pursuant to § 4-108(4) of the Education Article, MCBE is authorized to adopt rules

and regulations for the conduct and management of MCPS, but not if those rules and

regulations are inconsistent with State law. MCBE's principal place of business is located at

850 Hungerford Drive, Rockville, Maryland.

7.      MCPS is a "local school system" and "educational institution" as each is

defined in Chapter 13a.08.02.03 of the Code of Maryland Regulations. MCPS is an

"educational agency or institution" as defined in FERPA, 20 U.S.C. § 1232g, and is also

subject to the Protection of Pupil Rights Act ("PPRA"), 20 U.S.C. § 1232h.

8.      MCPS, as directed by MCBE, has adopted and put into effect the MCPS Policy

challenged in this case and is training its personnel to conform to the MCPS Policy. MCPS's

offices and principal place of business are located at 850 Hungerford Drive, Rockville,

Maryland 20850.

9.      Defendants Sherbra L. Evans, Branda Wolff, Jeanette E. Dixon, Judith Docca, Patricia B O'Neill, Karla Silvestre, Rebecca Smondrowski, and Jack R. Smith (collectively, "MCBE Members") are members of the Montgomery County Board of Education.  They are all sued in both their official and individual capacities.  They either approved, adopted, or put into effect the MCPS Policy challenged in this case and directed that MCPS train its personnel to conform to the MCPS Policy or they have retained the challenged MCPS Policy and have continued to direct that MCPS train its personnel to conform to the MCPS Policy.

10.     Defendant Jack R. Smith is the Montgomery County Superintendent of Schools.  He is sued in both his official and individual capacities.  Pursuant to § 4-102 of the Education Article of the Code of Maryland, Defendant Smith is the executive officer, secretary, and treasurer of MCBE.  At all times relevant to this complaint, Defendant Smith was responsible for implementing and enforcing policies, rules, and regulations adopted by MCBE, including the MCPS Policy challenged in this case.

<u>Jurisdiction and Venue</u>

11.     This is an action for monetary, injunctive, and declaratory relief. This Court has jurisdiction pursuant to §§ 1-501, 3-402, 3-403, and 3-409 of the Courts and Judicial Proceedings Article of the Code of Maryland.  Plaintiff Parents seek relief, *inter alia*, under the Maryland Uniform Declaratory Judgments Act and §§ 1983 and 1988 of title 42 of the United States Code.

12.     Venue in this Court is proper pursuant to § 6-201 of the Courts and Judicial Proceedings Article, as the defendants reside and carry on regular business in Montgomery County.

Statement of the Facts

Background on Gender Dysphoria in Minor Children

13.     The American Psychological Association ("APA") defines *transgender* as "an umbrella term for persons whose gender identity, gender expression or behavior does not conform to that typically associated with the sex to which they were assigned at birth. *Gender identity* refers to a person's internal sense of being male, female or something else; gender expression refers to the way a person communicates gender identity to others through behavior, clothing, hairstyles, voice or body characteristics." *See* APA, *Transgender People, Gender Identity and Gender Expression: What Does Transgender Mean?*, available at https://www.apa.org/topics/lgbt/transgender.

14.     The World Professional Association for Transgender Health ("WPATH"), a transgender advocacy organization that has produced a set of guidelines for transgender care, has defined "gender dysphoria" as the psychological distress often associated with the mismatch between a person's biological sex and his or her perceived gender identity. *See* WPATH, *Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People* at 2 (version 7, 2012), available at https://www.wpath.org/media/cms/Documents/ SOC%20v7/Standards%20of%20Care_V7%20Full%20Book_English.pdf (hereinafter, "WPATH Guidelines").

15.     Those "transitioning" to the gender other than their birth sex have demonstrated significantly higher rates of suicide ideation, suicide attempts, and suicide, both with respect to the average population and to those of a homosexual sexual orientation.  A study published in the September 2018 issue of *Pediatrics* presented these findings:  Nearly 14% of all adolescents reported a previous suicide attempt, 50.8% of female to male transgender adolescents did so,

41.8% of adolescents who identified as not exclusively male or female did so, and 29.9% of

male to female transgender adolescents did so. Https://pediatrics.aappublications.org/content/

142/4/e20174218?sso=1&sso_redirect_count=2&nfstatus=401&nftoken=00000000-0000-0000-

0000-000000000000&nfstatusdescription=ERROR%3A%20No%20local%20token.

16.     Multiple studies have found that the vast majority of children (roughly 80-90%)

who experience gender dysphoria ultimately find comfort with their biological sex and cease

experiencing gender dysphoria as they mature (assuming they do not transition).  *See* WPATH

Guidelines at 11 (listing studies).

17.     WPATH notes that there is insufficient evidence at this point "to predict the

long-term outcomes of completing a gender role transition during early childhood."  WPATH

Guidelines at 17.

18.     There is significant consensus that children with gender dysphoria and their

parents can substantially benefit from professional assistance and counseling "as they work

through the options and implications."  *See* WPATH Guidelines at 13-17.


The MCBE Transgender Policy

19.     Prior to the 2020-2021 school year, MCBE through the MCBE Members adopted

for MCPS the "2020-2021 Guidelines for Gender Identity for Montgomery County Public

Schools."  ("MCPS Guidelines," a true and accurate copy of which is attached as Exhibit 1.)

The MCPS Guidelines, together with MCPS Form 560-80 (discussed below) and related

training regarding gender identity transformation by students reflect the official policy of

Defendants ( "Policy" and "MCPS Policy").

20.     The MCPS Guidelines provide the following definitions:

GENDER IDENTITY A person's deeply held internalized sense or psychological knowledge of the person's own gender. One's gender identity may be the same as or different from the sex assigned at birth. Most people have a gender identity that matches their sex assigned at birth. For some, however, their gender identity is different from their sex assigned at birth. All people have gender identity, not just persons who are transgender or gender nonconforming people. For the purposes of this guidance, a student's gender identity is that which is consistently asserted at school.

. . . .

SEX ASSIGNED AT BIRTH The sex designation recorded on an infant's birth certificate, should such a record be provided at birth.

. . . .

TRANSGENDER An adjective describing a person whose gender identity or expression is different from that traditionally associated with the person's sex assigned at birth. Other terms that can have similar meanings are "transsexual" and "trans."

21.    With respect to privacy and disclosure of information and the use of names/pronouns for transgender students, the MCPS Guidelines provide as follows:

PRIVACY AND DISCLOSURE OF INFORMATION

All students have a right to privacy. This includes the right to keep private one's transgender status or gender nonconforming presentation at school.

Information about a student's transgender status, legal name, or sex assigned at birth may constitute confidential medical information. Disclosing this information to other students, their parents/guardians, or third parties may violate privacy laws, such as the federal Family Educational Rights and Privacy Act (FERPA).

Schools will ensure that all medical information, including that relating to transgender students, is kept confidential in accordance with applicable state, local, and federal privacy laws.

Please note that medical diagnosis, treatment, and/or other documentation are not required for a school to accommodate requests regarding gender presentation, identity, and diversity.

Transgender and gender nonconforming students have the right to discuss and demonstrate their gender identity and expression openly and decide when, with whom, and how much to share private information. The fact

that students choose to disclose their status to staff members or other
students does not authorize school staff members to disclose students'
status to others, including parents/guardians and other school staff
members, unless legally required to do so or unless students have
authorized such disclosure. It is inappropriate to ask transgender or gender
nonconforming students more questions than are necessary to support
them at school.

STAFF COMMUNICATION

. . . .

Unless the student or parent/guardian has specified otherwise, when
contacting the parent/guardian of a transgender student, MCPS school
staff members should use the student's legal name and pronoun that
correspond to the student's sex assigned at birth.

22.     The MCPS Guidelines and MCPS Policy apply to all students of all ages in the

MCPS system.  It is not limited to secondary school students.

23.     As quoted above, the MCPS Guidelines contain specific provisions that interfere

with the rights of parents to be fully informed and involved in addressing issues relating to

gender transformation with their minor children and that are designed to hinder parents from

deciding what is in their minor children's best interests.  The MCPS Guidelines contain

provisions that require school officials to withhold information from parents about their minor

child's professed transgender status if the child does not consent to disclosure.

24.     The MCPS Guidelines suggest that providing information "about a student's

transgender status" to "their parents/guardians . . . may violate privacy laws, such as the federal

Family Educational Rights and Privacy Act (FERPA)."  This is incorrect.  Withholding such

information from parents violates both state law and FERPA.

25.     MCPS has generated a MCPS Form 560-80, updated June 2020, entitled "Intake

Form: Supporting Student Gender Identity," to facilitate the MCPS Guidelines.  Form 560-80

contains the following instructions:

> **Instructions:** The school administrator, counselor, or psychologist should complete this form with the student. Parents/guardians may be involved if the student states that they are aware of and supportive of the student's gender identity. This form should be kept in a secure, confidential location. See distribution information on Page 2. **This form is not to be kept in the student's cumulative or confidential folders.** All plans should be evaluated on an ongoing basis and revised as needed.

The distribution stated for the form is as follows:

> Copy 1/School Confidential folder (in principal's office)
> Copy 2/ Student Welfare and Compliance Unit, via scan to COS-StudentWelfare@mcpsmd.org, or via pony to CESC, Room 162, in a [sic] envelope marked confidential

(A true and accurate copy of MCPS Form 560-80 is attached as Exhibit 2.)

  26. Form 560-80 requires an evaluation of minor students by MCPS personnel, and, among other things requests a "yes" or "no" response by the minor students to, "Is parent/guardian aware of your gender identity?" Form 560-80 then requires minor students exhibiting transgender inclinations or actions to identify a "Support Level" they believe would be provided by their parents, to be ranked from "(None) 1" to "10 (High)." It does not specify the score needed for a parent to be considered "supportive" as stated in the instructions. However, it does continue, "If [parental] support level is low, what considerations must be accounted for in implementing this plan?," leaving a space to be filled in. Upon information and belief, such "considerations" would include withholding information from parents about their minor children and using pronouns when speaking to the parents about their children that conform to the children's birth gender, even though other pronouns are used at school.

  27. Upon information and belief, the limited distribution of MCPS Form 560-80 as specified by the form is designed, in part, to withhold review of the form by the parents of the minor child if the child does not consent to its disclosure to the parents. Upon information and

belief, MCBE has instructed MCPS personnel not to make completed MCPS Forms 560-80 available to the parents of minor children concerning whom the forms have been filled out unless the minor child consents to its disclosure to the parents.

28.     The evaluation by MCPS personnel of minor students as required by the MCPS Policy and Form 560-80 is deliberately not performed with prior parental consent.

29.     Upon information and belief, MCPS personnel have been trained in the MCPS Policy and have conformed their behavior and practices with the MCPS Policy, including by withholding information from parents about their child's transgender election at school if the child has not desired that information to be transmitted to the parents and by keeping such information out of the school records to which parents are given access.

30.     Upon information and belief, without the relief requested from this Court, MCPS personnel will continue to conform their behavior and practices with the MCPS Policy, including by withholding information from parents about their child's transgender election at school if the child has not desired that information to be transmitted to the parents and by keeping such information out of the school records to which parents are given access.

31.     Upon information and belief, the large majority of MCPS personnel acting pursuant to the Policy and interacting with students who experience gender dysphoria are not professionally trained, certified, or licensed in the diagnosis or treatment of gender dysphoria.

Irreparable Harm

32.     Plaintiff Parents bring this action as both a facial and as-applied challenge to the MCPS Policy.  There is no set of facts by which the MCPS's Policy of withholding information

from the parents about their minor children's transsexual inclinations or behaviors is lawful.

33.     Pursuant to the MCPS Policy, MCPS will withhold information from the Plaintiff Parents about their children's gender dysphoria, even if the Plaintiff Parents specifically request such information.  Plaintiff Parents cannot wait to challenge the MCPS Policy until they learn that one of their children experiences gender dysphoria.  By the time Plaintiff Parents learn the truth, MCBE personnel, acting pursuant to the MCPS Policy, may have already enabled their child(ren) to go through the process of transitioning socially to a different gender identity without Plaintiff Parents being able to counsel and advise their child(ren) and without allowing the child(ren) to take advantage of professional assistance the Plaintiff Parents may believe it in their child(ren)'s best interest to provide, to their minor child(ren)'s immediate and permanent injury.

34.     Pursuant to the MCPS Policy, MCPS is taking over the rightful position of the Plaintiff Parents and intentionally hindering them from counseling their own minor children concerning an important decision that will have lifelong repercussions and from providing additional professional assistance to their children that the parents may deem appropriate.  This decision directly relates to the Plaintiff Parents' primary responsibilities to determine what is in their minor children's best interests with respect to their support, care, nurture, welfare, safety, and education.

35.     Pursuant to the MCPS Policy, MCPS is determining that minor children have a "right" to withhold information from their parents in all situations relating to transgender relations, even though the minor has informed unrelated third parties of the information, and that MCPS will honor that "right" by withholding information from the minor's parents.

36.     Because of the secretive nature of the MCPS Policy, Plaintiff Parents and their

minor children could be irreparably harmed before Plaintiff Parents are aware of the injuries of which they have right to complain. The explicit purpose of the challenged MCPS Policy is to secrete from parents information related to their minor children, such that parents will have no occasion timely to be informed or complain of such actions and inactions of the Defendants.

37.     By hiding from parents that their children may be dealing with gender dysphoria, the MCPS Policy interferes with Plaintiff Parents' ability to provide acceptance, support, understanding, and professional assistance to their children.

38.     By hiding from parents that their children may be dealing with gender dysphoria, the MCPS Policy interferes with Plaintiff Parents' ability to facilitate their children's coping, social support, and identity exploration and development of their sexual orientation.

39.     By hiding from parents that their children may be dealing with gender dysphoria, the MCPS Policy interferes with Plaintiff Parents' ability to provide neutral interventions to prevent or address unlawful conduct or unsafe sexual practices to which transgender youth show greater susceptibility.

40.     By hiding from parents that their children may be dealing with gender dysphoria, the MCPS Policy interferes with Plaintiff Parents' ability to provide expert professional assistance their children may need.

41.     Issues regarding whether and how children perform a gender transformation are of fundamental importance, and their improper handling could have long-lasting, negative ramifications for a child's physical, mental, and spiritual well-being.

42.     Professionals have concluded that many children with gender dysphoria can benefit by assistance that only their parents can provide. *See* WPATH Guidelines at 16-17.

43.     The public interest supports the grant of relief in this action.


Causes of Action

Count I

Violation of Maryland Family Law

44.     Plaintiff Parents incorporate by reference all other allegations in this Complaint.

45.     Section 5-203 of the Family Article of the Maryland Code provides in relevant part as follows:

> (a) (1)     The parents are the joint natural guardians of their minor child.
>
> . . . .
>
> (b)     The parents of a minor child, as defined in § 1-103 of the General Provisions Article:
>
>> (1)     are jointly and severally responsible for the child's support, care, nurture, welfare, and education; and
>>
>> (2)     have the same powers and duties in relation to the child.

46.     Section 1-103(b) of the General Provisions Article of the Maryland Code provides as follows:

> Except as provided in § 1-401(b) of this title, as it pertains to legal age and capacity, "minor" means an individual under the age of 18 years.

47.     Section 1-401 of the General Provisions Article of the Maryland Code provides in relevant part as follows:

> (b)     An individual who has attained the age of 18 years and who is enrolled in secondary school has the right to receive support and maintenance from both of the individual's parents until the first to occur of the following events:
>
>> (i)     The individual dies;

      (ii)    The individual marries;

      (iii)    The individual is emancipated;

      (iv)    The individual graduates from or is no longer enrolled in secondary school; or

      (v)    The individual attains the age of 19 years.

48.    Plaintiff Parents are "parents" of "minor children" as defined in the Maryland Code. They continue to provide for their children's support, care, nurture, welfare, and education. None of their children are married or emancipated, and none has attained the age of 19 years.

49.    MCBE and the MCBE Members by promulgation of, and putting into effect, the MCPS Policy of withholding information from parents directly related to their minor children's support, care, nurture, welfare, and education have violated § 5-203 of the Family Article and have directly hindered Plaintiff Parents from carrying out their statutory duties under that section.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

Count II

Violation of Maryland Code of Regulations

50.    Plaintiff Parents incorporate by reference all other allegations in this Complaint.

51.    Chapter 13a.08.02 of the Maryland Code of Regulations provides in relevant part as follows:

Sec. 13a.08.02.03. Definitions

A. In this chapter, the following terms have the meanings indicated.

B. Terms Defined.

. . . .

(5) "Eligible student" means a student who is 18 years old or older or is attending an institution of postsecondary education.

. . . .

(10) Parent.

     (a) "Parent" means a parent of a student.

     (b) "Parent" includes:

          (i) A natural parent;

          (ii) A guardian; or

          (iii) An individual acting as a parent in the absence of a parent or guardian.

. . . .

C. Student Records.

(1) "Student records" means those records that are:

     (a) Directly related to a student; and

     (b) Maintained by an educational agency or institution or by a party acting for the agency or institution.

(2) "Student records" includes, but is not limited to:

     (a) Records concerning disciplinary actions taken against students; and

     (b) Records relating to an individual in attendance at the agency or institution who is employed as a result of the individual's status as a student and not excepted under §C(3)(c) of this regulation.

(3) "Student records" does not include:

(a) Records that are kept in the sole possession of the maker, are used only as a personal memory aid, and are not accessible or revealed to any other person except a temporary substitute for the maker of the record;

(b) Records maintained by a law enforcement unit of the educational agency or institution that were created by that law enforcement unit for the purpose of law enforcement;

. . . .

(d) Records on a student who is 18 years old or older, or is attending an institution of postsecondary education, that are:

(i) Made or maintained by a physician, psychiatrist, psychologist, or other recognized professional or paraprofessional acting in the professional's or paraprofessional's professional capacity or assisting in a paraprofessional capacity,

(ii) Made, maintained, or used only in connection with treatment of the student, and

(iii) Disclosed only to individuals providing the treatment; or

(e) Records that only contain information about an individual after the individual is no longer a student at that agency or institution.

Sec. 13a.08.02.04. General Provisions

. . . .

C. Access of Records. Records of a student maintained under the provisions of this title, including confidential records, shall be available to that student's parent or parents . . . or legal guardians in conference with appropriate school personnel. For purposes of this regulation, the term "records" does not include an education department employee's personal notes which are not made available to any other person.

. . . .

Sec. 13a.08.02.13. Right to Review and Inspect Educational Records

A. Except as limited under Regulation .12 of this chapter [relating to waiver], a parent, guardian, or eligible student shall be given the opportunity to inspect and review the student records. This applies to:

    (1) Any local school system or educational institution; and

    (2) A State educational agency and its components.

B. The local school system or educational agency or institution shall comply with a request for access to student records not more than 45 calendar days after the request has been made. For purposes of this section, a State educational agency and its components:

    (1) Constitute an educational agency or institution; and

    (2) Are subject to this section if the State educational agency maintains student records on students who are or have been in attendance at any school of a local school system, an educational agency, or educational institution subject to the Act and this chapter.

C. The local school system or educational institution shall respond to reasonable requests for explanations and interpretations of the student records.

D. If circumstances effectively prevent the parent, guardian, or eligible student from exercising the right to inspect and review the student records, the local school system or educational institution, or State educational agency or its component, shall:

    (1) Provide the parent, guardian, or eligible student with a copy of the student records requested; or

    (2) Make other arrangements for the parent, guardian, or eligible student to inspect and review the requested student records.

Sec. 13a.08.02.29. Rights of Parents to Examine Records

. . . .

B. A local school system or educational institution may presume that either parent or legal guardian of the student has authority to inspect and review the student records unless the local school system or educational institution has been provided with a copy of a court order or legally binding instrument such as a separation agreement, or the relevant parts of

the document, which provides that the noncustodial parent may not have access to the student records.

52.     Plaintiff Parents are "parents" as defined in § 13a.08.02.03, and none of their children is an "eligible student" as defined in that section.

53.     MCPS Form 560-80 and other written information about student gender identity are a "student record" as defined in § 13a.18.02.03.

54.     Chapter 13a.08.02 of the Maryland Code of Regulations has the force and effect of law.

55.     MCBE and the MCBE Members by promulgation of, and by putting into effect, the MCPS Policy of withholding information from parents directly related to their minor children's support, care, nurture, welfare, and education have violated Chapter 13a.08.02 of the Maryland Code of Regulations and have directly hindered Plaintiff Parents from gaining access to their children's student records and from exercising their rights under that chapter.

56.     Upon information and belief, MCBE and the MCBE Members by promulgating and putting into effect MCPS Form 560-80 and by distributing the form have specifically intended to avoid complying with the provisions of Chapter 13a.18.02 of the Maryland Code of Regulation.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

Count III

Violation of the Maryland Constitution–Parental Rights

57.     Plaintiff Parents incorporate by reference all other allegations in this Complaint.

58.     Article 2 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "The Constitution of the United States . . . [is] and shall be the Supreme Law of

the State . . . ."

59.    Article 5(a)(1) of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "That the Inhabitants of Maryland are entitled to the Common Law of England . . . ."

60.    Article 19 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "That every man, for any injury done to him in his person or property, ought to have remedy by the course of the law of the Land . . . ."

61.    Article 24 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "That no man ought to be taken or . . . disseized of his freehold, liberties or privileges, . . . or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land."

62.    Maryland, through the provisions quoted above and otherwise in its Constitution, protects parents' fundamental rights to direct the care, custody, education, welfare, safety, and control of their minor children.  These fundamental rights include, but are not limited to, the rights of parents to counsel their children on important decisions regarding their health and safety and to decide what is in the best interests of their minor children.  These fundamental rights of parents are based both in the Common Law of England and in the United States Constitution's Privileges and Immunities, Due Process, and Equal Protection Clauses.

63.    MCBE and the MCBE Members, by promulgation and putting into effect the MCPS Policy of withholding information from parents directly related to their minor children's support, care, nurture, welfare, safety, and education, have violated and have directly hindered Plaintiff Parents from carrying out their fundamental rights protected under the Maryland Constitution.

64.     The State may not abridge or hinder parents in the exercise of their fundamental rights with respect to their minor children unless there are compelling reasons and the remedy is narrowly tailored to the circumstances.

65.     MCBE and the MCBE Members have no compelling interest in withholding information from Plaintiff Parents with respect to their children's desire to consider becoming transsexual or that their children have taken actions in that regard.

66.     The MCPS Policy in withholding information from Plaintiff Parents with respect to their children's desire to consider becoming transsexual or that their children have taken actions in that regard, even if MCBE and the MCBE Members had a compelling interest to do so, is not narrowly tailored to the circumstances.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

<u>Count IV</u>

<u>Violation of FERPA as Incorporated by Maryland Law</u>

67.     Plaintiff Parents incorporate by reference all other allegations in the Complaint.

68.     Article 2 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "The . . . Laws made, or which shall be made, . . . under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby . . . ."

69.     FERPA, 20 U.S.C. § 1232g, is a law made under the authority of the United States and is incorporated as part of the law of Maryland.  The substantive provisions of FERPA are also codified in Chapter 13a.18.02 of the Maryland Code of Regulations.

70.     FERPA provides, in relevant part, as follows:

(a)   (1) (A) No funds shall be made available under any applicable program to any educational agency or institution which has a policy of denying, or which effectively prevents, the parents of students who are or have been in attendance at a school of such agency or at such institution, as the case may be, the right to inspect and review the education records of their children. . . .

(2) No funds shall be made available under any applicable program to any educational agency or institution unless the parents of students who are or have been in attendance at a school of such agency or at such institution are provided an opportunity for a hearing by such agency or institution, in accordance with regulations of the Secretary, to challenge the content of such student's education records, in order to insure that the records are not inaccurate, misleading, or otherwise in violation of the privacy rights of students, and to provide an opportunity for the correction or deletion of any such inaccurate, misleading or otherwise inappropriate data contained therein and to insert into such records a written explanation of the parents respecting the content of such records.

(3) For the purposes of this section the term "educational agency or institution" means any public or private agency or institution which is the recipient of funds under any applicable program.

(4) (A) For the purposes of this section, the term "education records" means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which—

(i) contain information directly related to a student; and

(ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.

71.    MCBE and MCPS are each an "educational agency or institution" as that term is defined in FERPA.

72.    Records referring to a change or proposed change in gender identity by minor children attending MCPS schools, including but not limited to MCPS Form 560-80, are "education records" as that term is defined in FERPA.

73.    The MCPS Policy in withholding records from Plaintiff Parents with respect to their children's desire to consider becoming transsexual or that their children have taken actions

in that regard is in violation of FERPA and Maryland law that implements FERPA.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

Count V

Violation of PPRA as Incorporated by Maryland Law

74.     Plaintiff Parents incorporate by reference all other allegations in the Complaint.

75.     Article 2 of the Declaration of Rights of the Maryland Constitution provides, in relevant part, "The . . . Laws made, or which shall be made, . . . under the authority of the United States, are, and shall be the Supreme Law of the State; and the Judges of this State, and all the People of this State, are, and shall be bound thereby . . . ."

76.     The Protection of Pupil Rights Act, 20 U.S.C § 1232h, is a law made under the authority of the United States and is incorporated as part of the law of Maryland.  The federal regulations implementing PPRA, found in 34 C.F.R. § 98.4, are also law made under the authority of the United States and incorporated as part of the law of Maryland.

77.     PPRA provides in relevant part as follows:

> (b) Limits on survey, analysis, or evaluations. No student shall be required, as part of any applicable program, to submit to a survey, analysis, or evaluation that reveals information concerning—
>
> . . .
>
> (3) sex behavior or attitudes;
>
> . . .

without the prior consent of the student (if the student is an adult or emancipated minor), or in the case of an unemancipated minor, without the prior written consent of the parent.

. . . .

(6) Definitions.  As used in this subsection:

    . . .

(D) Parent.  The term "parent" includes a legal guardian or other person standing in loco parentis (such as a grandparent or stepparent with whom the child lives, or a person who is legally responsible for the welfare of the child).
. . .

(F) Student.  The term "student" means any elementary school or secondary school student.

(G) Survey.  The term "survey" includes an evaluation.

78.     PPRA is implemented by regulations of the Department of Education, which, as provided in 34 CFR § 98.4, in relevant part provides as follows:

(a) No student shall be required . . . to submit without prior consent to psychiatric examination, testing, or treatment, or psychological examination, testing, or treatment, in which the primary purpose is to reveal information concerning one or more of the following:

    . . .

(3) Sex behavior and attitudes;

    . . . .

(b) As used in paragraph (a) of this section, prior consent means:

    (1) Prior consent of the student, if the student is an adult or emancipated minor; or

    (2) Prior written consent of the parent or guardian, if the student is an unemancipated minor.

(c) As used in paragraph (a) of this section:

(1) Psychiatric or psychological examination or test means a method of obtaining information, including a group activity, that is not directly related to academic instruction and that is designed to elicit information about attitudes, habits, traits, opinions, beliefs or feelings; and

(2) Psychiatric or psychological treatment means an activity involving the planned, systematic use of methods or techniques that are not directly related to academic instruction and that is designed to affect behavioral, emotional, or attitudinal characteristics of an individual or group.

79.     Questioning a student about gender identity and filling out Form 560-80 and other actions taken with a student as part of the MCPS Policy relate to a student's "sex behavior and attitudes" as specified in PPRA and its implementing regulations.

80.     Questioning a student about gender identity and filling out Form 560-80 and other actions taken with a student as part of the MCPS Policy are a "survey" as that term is used in PPRA.

81.     Questioning a student about gender identity and filling out Form 560-80 and other actions taken with a student as part of the MCPS Policy are a "psychiatric or psychological examination or test" as that term is used in the PPRA regulations, 34 C.F.R. § 98.4(c)(1).

82.     Questioning a student about gender identity and filling out Form 560-80 and other actions taken with a student as part of the MCPS Policy are a "psychiatric or psychological treatment" as that term is used in the PPRA regulations, 34 C.F.R. § 98.4(c)(2).

83.     Questioning a student about gender identity and filling out Form 560-80 and other actions taken with a student as part of the MCPS Policy are done without the "consent" of the "parents," as those terms are defined in PPRA and its implementing regulations.

84.     By requiring the questioning of a student about gender identity and the filling out of Form 560-80 and other actions taken with a student as part of the MCPS Policy without consent as provided for by PPRA and its implementing regulations, the MCPS Policy is in contravention of the PPRA and its implementing regulations and Maryland law by its incorporation through Article 2 of the Declaration of Rights.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

Count VI

Violation of the United States Constitution – Parental Rights

85.     Plaintiff Parents incorporate by reference all other allegations in this Complaint.

86.     Section 1 of the Fourteenth Amendment to the United States Constitution provides, in relevant part, as follows: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

87.     The fundamental rights of parents to direct the care, custody, education, and control of their minor children are protected under the Fourteenth Amendment. These fundamental rights include, but are not limited to, the right of parents to counsel their children on important decisions related to their health and safety and to determine what is in the best interests of their minor children.

88.     Maryland may not abridge or hinder parents in the exercise of their fundamental rights with respect to their minor children that are protected under the United States Constitution unless there are compelling reasons and the remedy is narrowly tailored to the

circumstances.

89.     MCBE and the MCBE Members have no compelling interest in withholding

information from Plaintiff Parents with respect to their children's desire to consider becoming

transsexual or that their children have taken actions in that regard.

90.     The MCPS Policy in withholding information from Plaintiff Parents with respect

to their children's desire to consider becoming transsexual or that their children have taken

actions in that regard, even if MCBE and the MCBE Members had a compelling interest to do

so, is not narrowly tailored to the circumstances.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief

requested in their Requests for Relief.

Count VII

Violation of 42 U.S.C. § 1983

91.     Plaintiff Parents incorporate by reference all other allegations of this Complaint.

92.     Section 1983 of Title 42 of the United States Code is incorporated by reference

into the laws of Maryland by Article 2 of the Declaration of Rights of the Maryland

Constitution.

93.     Section 1983 provides in relevant part as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to be
> subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity, or other proper proceeding
> for redress . . . .

94.     MCBE and the MCBE Members have, under color of law, deprived Plaintiff

Parents of their rights, privileges, or immunities secured by the United States and Maryland

- 27 -

Constitutions and federal and state laws and regulations by execution, adoption, enforcement, and application of the MCPS Policy with respect to withholding and secreting from Plaintiff Parents information concerning transgender inclinations and behavior of their minor children.

95. MCBE and the MCBE Members violated clearly established law when depriving Plaintiff Parents of their rights, privileges, or immunities secured by the United States and Maryland Constitutions and federal and state laws and regulations by execution, adoption, enforcement, and application of the MCPS Policy with respect to withholding and secreting from Plaintiff Parents information concerning transgender inclinations and behavior of their minor children.

WHEREFORE, Plaintiff Parents request that this Court provide them with the relief requested in their Requests for Relief.

<u>Requests for Relief</u>

Plaintiff Parents request the following relief:

1. a declaration that the MCPS Policy with respect to withholding from parents knowledge of and information about their minor children's transgender inclinations and behaviors and all records thereof violates § 5-203 of the Family Article of the Maryland Code;

2. a declaration that the MCPS Policy with respect to withholding from parents knowledge of and information about their minor children's transgender inclinations and behaviors and all records thereof violates Chapter 13a.08.02 of the Maryland Code of Regulations;

3. a declaration that the MCPS Policy with respect to withholding from parents knowledge of and information about their minor children's transgender inclinations and

behaviors and all records thereof violates the Maryland Constitution and its incorporation of the fundamental rights of parents to direct the care, custody, education, safety, and control of their minor children;

4.      a declaration that the MCPS Policy with respect to withholding from parents records about their minor children's transgender inclinations and behaviors violates FERPA as incorporated in Maryland law;

5.      a declaration that the MCPS Policy with respect to performing surveys and evaluations, without parental consent, of minor children's transgender inclinations and behaviors violates PPRA as incorporated in Maryland law;

6.      a declaration that the MCPS Policy with respect to withholding from parents knowledge of and information about their minor children's transgender inclinations and behaviors and all records thereof violates the fundamental rights of parents to direct the care, custody, education, safety, and control of their minor children as guaranteed by the United States Constitution;

7.      a declaration that the MCPS Policy with respect to withholding from parents knowledge of and information about their minor children's transgender inclinations and behaviors and all records thereof violates § 1983 of Title 42 of the United States Code;

8.      a declaration that the MCPS Policy violates Maryland law and regulation and both the Maryland and United States Constitutions to the extent that it (a) enables minor children to change gender identity at school by selecting new names and pronouns without parental consent; (b) prohibits MCPS personnel from communicating with parents about their minor children's gender dysphoria, including any desired change in name and pronouns, without

first obtaining the child's consent; (c) instructs MCPS personnel to deceive parents by, among other ways, using different names and pronouns around parents than in school; and (d) instructs MCPS personnel to survey and evaluate minors regarding their sex behavior and attitudes without prior parental consent;

      9.     a declaration that, notwithstanding the MCPS Policy, MCPS personnel (a) may not evaluate or facilitate a child's social transition to a different gender identity at school without prior parental consent; and (b) may not attempt to deceive parents by, among other things, using different names and pronouns when communicating with parents than they use for the parents' child in school;

      10.    an injunction prohibiting MCBE and the individual defendants from evaluating and then enabling children to transition socially to a different gender identity at school by selecting new names and pronouns without prior parental notice and consent;

      11.    an injunction prohibiting MCBE and the individual defendants from preventing its personnel, without first obtaining the child's consent, from communicating with parents that their child may be dealing with gender dysphoria or that their child has or wants to change gender identity and from training its personnel to follow such a policy;

      12.    an injunction prohibiting MCBE and the individual defendants and its personnel from actively deceiving parents by, among other things, using different names for their child(ren) around parents than they do in the school setting;

      13.    an injunction requiring MCBE and the individual defendants to retrain MCPS personnel in accordance with this Court's holding in this case;

      14.    an award of nominal damages in the amount of $1.00;

15.     an award of attorney's fees and the expenses of this litigation; and

16.     such other relief as this Court deems proper.

Respectfully submitted,

David A. Bruce (CPFN: 7905010014)

205 Vierling Dr.
Silver Spring, Md. 20904
301-704-2918
dabruce76@gmail.com

Attorney for Plaintiffs

Of Counsel

Frederick W. Claybrook, Jr. (DC 935593)[2]
Claybrook LLC
700 Sixth St., NW, Ste. 430
Washington, D.C. 20001
(202) 250-3833
Rick@Claybrooklaw.com

Steven W. Fitschen (VA Bar #44063)[3]
James A. Davids (VA Bar # 69997)[4]
National Legal Foundation
524 Johnstown Road
Chesapeake, Va. 23322
(757) 463-6133
sfitschen@nationallegalfoundation.org
jimdavids@gmail.com

October 20, 2020

---

[2] Active member of the D.C. Bar who will be filing a motion for admission *pro hac vice*.
[3] Active member of Virginia Bar who will be filing a motion for admission *pro hac vice*.
[4] Active member of Virginia Bar who will be filing a motion for admission *pro hac vice*.