**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| JOHN and JANE PARENTS 1, et al.,     ) | |
| ) | |
| ) | |
| *Plaintiffs*, ) | Civil Action No. 8:20-cv-3552-PWG |
| ) | |
| ) | |
| v.     ) | |
| ) | |
| MONTGOMERY COUNTY BOARD OF ) | |
| EDUCATION, et al.,     ) | |
| ) | |
| *Defendants*. ) | |
| ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Paul R.Q. Wolfson (*pro hac vice*)
Bruce M. Berman (*pro hac vice*)
Alex Tucker Stewart (D. Md. Bar No. 19633)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000 (phone)
(202) 663-6363 (fax)
paul.wolfson@wilmerhale.com
bruce.berman@wilmerhale.com
alex.stewart@wilmerhale.com

Alan E. Schoenfeld (*pro hac vice*)
Simon B. Kress (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 937-7518 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
simon.kress@wilmerhale.com

*Counsel for Defendants*

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

STANDARD OF REVIEW ......................................................................................................6

ARGUMENT .........................................................................................................................7

I.      Plaintiffs' Claims For Violation Of Their Fundamental Parental Rights Fail As A Matter Of Law (Counts III and VI) ...............................................................................................8

          A.     There Is No Fundamental Constitutional Right To Be Fully Informed And Involved In Addressing Issues Relating To Gender Transformation With One's Minor Children While Those Children Are At School ..........................................10

          B.     The Guidelines Are Narrowly Tailored To Serve The Schools' Compelling Interest In Providing For Students' Educational Needs And Rights .....................17

II.     Plaintiffs Have No Right Of Action To Enforce FERPA Or The PPRA (Counts IV and V) ........................................................................................................................................22

III.    The Guidelines Do Not Violate Maryland Family Law (Count I)......................................25

IV.    The Guidelines Do Not Violate Maryland Regulations (Count II)....................................28

V.     Plaintiffs' Claims Under Section 1983 Also Must Be Dismissed (Count VII) .................31

CONCLUSION.....................................................................................................................32

# TABLE OF AUTHORITIES

Page(s)

## CASES

*ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206 (4th Cir. 2019)....................................

*Alexander v. Sandoval*, 532 U.S. 275 (2001)...............................................................23

*Altman v. Bedford Cent. Sch. Dist.*, 45 F. Supp. 2d 368 (S.D.N.Y. 1999), *aff'd in part, rev'd in part on other grounds*, 245 F.3d 49 (2d Cir. 2001) .....................................25

*Anspach ex rel. Anspach v. City of Philadelphia, Dep't of Pub. Health*, 503 F.3d 256 (3d Cir. 2007)................................................................................15, 16, 21

*Arnold v. Board of Educ. of Escambia Cnty., Ala.*, 880 F.2d 305 (11th Cir. 1989), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) .............................................14, 15

*Ashby v. Isle of Wight Cnty. Sch. Bd.*, 354 F. Supp. 2d 616 (E.D. Va. 2004).........................22, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................6

*Ayers v. Vestberg*, No. PWG-19-581, 2019 WL 6052669 (D. Md. Nov. 15, 2019).......................6

*Bauer v. Elrich*, 468 F. Supp. 3d 704 (D. Md. 2020), *appeal pending*, No. 20-1707 (4th Cir. 2020)...............................................................................22, 23

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................................6

*BJ's Wholesale Club, Inc. v. Rosen*, 80 A.3d 345 (Md. 2013) .............................................28

*Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381 (6th Cir. 2005) ........................................2, 12

*Bornemann v. Bornemann*, 931 A.2d 1154 (Md. Ct. Spec. App. 2007).......................................27

*Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) ..........................................................20

*Boswell v. Boswell*, 721 A.2d 662 (Md. 1998) ...............................................................13

*Brown v. Board of Educ.*, 347 U.S. 483 (1954) ...............................................................18

*Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525 (1st Cir. 1995)....................................11

*C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159 (3d Cir. 2005)...............................................20, 24

*City of Dallas v. Stanglin*, 490 U.S. 19 (1989) ..............................................................10

*Clear Sky Car Wash LLC v. City of Chesapeake, Va.*, 743 F.3d 438 (4th Cir. 2014) ................................................................................................................31

*Cole v. Buchanan Cnty. Sch. Bd.*, 328 F. App'x 204 (4th Cir. 2009) .............................32

*Cole v. Cole*, 2020 WL 1244575 (Md. Ct. Spec. App. Mar. 16, 2020) ..........................27

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009 (2020) ....................................................................................................................23

*Doe by & through Doe v. Boyertown Area Sch. Dist.*, 276 F. Supp. 3d 324 (E.D. Pa. 2017), *aff'd*, 890 F.3d 1124 (3d Cir. 2018) ..................................................20

*Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980) ...............................................................16

*Evancho v. Pine–Richland School District*, 237 F.Supp.3d 267 (W.D. Pa. 2017) .......20

*Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2016 WL 3027525 (D. Md. May 27, 2016) ...............................................................................................6

*Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462 (4th Cir. 1991) ................2, 7

*Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197 (9th Cir. 2005) .......................................12

*Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159 (4th Cir. 2016) ..............................2, 6

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002) ..........................................................22, 31

*Goss v. Lopez*, 419 U.S. 565 (1975) ..............................................................................12

*Grimm v. Gloucester Cnty. Sch. Bd.*, 400 F. Supp. 3d 444 (E.D. Va. 2019) ................20

*Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), *as amended* (Aug. 28, 2020) ...............................................................................................19, 20

*Gruenke v. Seip*, 225 F.3d 290 (3d Cir. 2000) ..............................................................15

*Harris v. McRae*, 448 U.S. 297 (1980) ........................................................................16

*Herbert v. Reinstein*, 976 F. Supp. 331 (E.D. Pa. 1997), *aff'd*, 162 F.3d 1151 (3d Cir. 1998) .......................................................................................................25

*Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174 (4th Cir. 1996) ..................................................................................................16

*Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 899 F. Supp. 1443 (M.D.N.C. 1995), *aff'd*, 89 F.3d 174 (4th Cir. 1996) ..............................12

*Hill v. Ramsey*, No. PWG-13-3084, 2014 WL 7260859 (D. Md. Dec. 17, 2014) ..........6

*Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486 (D. Md. 2015) ......................................22

*Hodge v. Jones*, 31 F.3d 157 (4th Cir. 1994) ...........................................................13, 17

*Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454 (2d Cir. 1996) ...................................17

*In re Adoption/Guardianship No. TPR970011 in Circuit Court For Prince
    George's Cnty.*, 712 A.2d 597 (Md. 1998) ...........................................................13

*In re Adoption/Guardianship Nos. CAA 92-10852, 92-10853 in Circuit Court for
    Prince George's Cnty.*, 651 A.2d 891 (Md. 1994) ...............................................9

*In re Commonwealth's Mot. to Appoint Counsel*, 790 F.3d 457 (3d Cir. 2015)...........24

*In re Gloria H.*, 979 A.2d 710 (Md. 2009) ..............................................................2, 28

*In re Miller*, 124 F. App'x 152 (4th Cir. 2005)............................................................23

*In re Patrick Y.*, 723 A.2d 523 (Md. Ct. Spec. App. 1999), *aff'd*, 746 A.2d 405
    (Md. 2000) .........................................................................................................18, 28

*In re Yve S.*, 819 A.2d 1030 (Md. 2003) ......................................................................9

*Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419 (9th Cir. 2008) ...................................18

*Jake's Fireworks Inc. v. United States Consumer Prod. Safety Comm'n*, No.
    PWG-19-CV-1161, 2020 WL 6383233 (D. Md. Oct. 30, 2020)................................2, 7, 8

*Kirsch v. State*, 2019 WL 2950170 (Md. Ct. Spec. App. July 9, 2019) ......................28

*LaVine v. Blaine Sch. Dist.*, 257 F.3d 981 (9th Cir. 2001) ..........................................18

*Leebaert v. Harrington*, 332 F.3d 134 (2d Cir. 2003) .................................................12

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........22, 23

*McDermott v. Dougherty*, 869 A.2d 751 (Md. 2005) ...................................................26

*Meyer v. Nebraska,* 262 U.S. 390 (1923) ...................................................................10

*Moor v. Alameda Cnty.*, 411 U.S. 693 (1973) .............................................................23

*Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693 (D. Md. 2013)..................................6

*New York v. Ferber*, 458 U.S. 747 (1982) ...................................................................18

*Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008)............................................................11

*Pierce v. Society of Sisters,* 268 U.S. 510 (1925) .................................................10, 11

*Planned Parenthood of Cent. Missouri v. Danforth*, 428 U.S. 52 (1976) ....................................21

*Reardon v. Midland Cmty. Sch.*, 814 F. Supp. 2d 754 (E.D. Mich. 2011) ..............................14, 15

*Renn By & Through Renn v. Garrison*, 100 F.3d 344 (4th Cir. 1996) ..........................................14

*Reno v. Flores*, 507 U.S. 292 (1993) .......................................................................................10

*Roe v. Wade*, 410 U.S. 113 (1973) ...........................................................................................14

*Santosky v. Kramer*, 455 U.S. 745 (1982) ...............................................................................13

*Students v. U.S. Dep't of Educ.*, No. 16-CV-4945, 2016 WL 6134121 (N.D. Ill. Oct. 18, 2016), *report and recommendation adopted sub nom. Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16-CV-4945, 2017 WL 6629520 (N.D. Ill. Dec. 29, 2017) .......................................................................19

*Troxel v. Granville*, 530 U.S. 57 (2000) .................................................................................9, 10

*Village of Belle Terre v. Boraas*, 416 U.S. 1 (1974) .................................................................10

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ....................................................................10

*Whitaker by Whitaker v. Kenosha Unified School Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017) .............................................................................................20

*Williams v. Burnette*, 2020 WL 4732137 (D. Md. Aug. 14, 2020) .............................................27

*Wisconsin v. Yoder*, 406 U.S. 205 (1972) .............................................................................11, 18

*Wolinski v. Browneller*, 693 A.2d 30 (Md. 1997), *overruled on other grounds by Koshko v. Haining*, 921 A.2d 171 (Md. 2007) .............................................................9, 13

*Wood v. Strickland*, 420 U.S. 308 (1975) .................................................................................19

*Wozar v. Wozar*, 2020 WL 4559462 (Md. Ct. Spec. App. Aug. 7, 2020) ....................................27

## STATUTES, RULES, AND REGULATIONS

20 U.S.C. § 1221(c)(1) ...............................................................................................................25

20 U.S.C. § 1232h(b) .................................................................................................................25

42 U.S.C. § 1983 .....................................................................................................................7, 31

Fed. R. Civ. P. 10(c) ................................................................................................................2, 6

Fed. R. Civ. P. 12(b)(6) ..............................................................................................................6

Md. Code, Cts. & Jud. Proc. § 5-518 ............................................................32

Md. Code, Educ. §§ 7-1501-7-1512 ............................................................17

Md. Code, Fam. Law  § 5-203 .................................................................26, 27, 28

Md. Code Regs. (COMAR) 13A.01.04.03 ....................................................17, 30

Md. Code Regs. 13A.08.02 .........................................................................29, 30

Md. Code Regs. 13A.08.02.04......................................................................29, 30

Md. Code Regs. 13A.18.02.............................................................................29

## OTHER AUTHORITIES

U.S. Dep't of Educ., Guidance on Schools' Obligations to Protect Students from
        Student-on-Student Harassment on the Basis of Sex; Race, Color and
        National Origin; and Disability, "Dear Colleague" Letter (Oct. 26, 2010),
        https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf........................18

## INTRODUCTION

This case concerns "Guidelines for Student Gender Identity" issued to Montgomery County Public Schools faculty and staff to address a range of best practices for supporting students in expressing their gender identity while participating in school life, including the use of names and pronouns, preventing bullying and harassment, privacy and information disclosure, dress codes, gender-based activities, clubs, outdoor activities, and more. Recognizing that transgender and gender nonconforming students often face discrimination, stigmatization, bullying, and worse, the Guidelines reflect the schools' compelling interest in ensuring that students have a productive and safe learning environment.

At issue here are the Guidelines' directions regarding communication with parents and guardians about a student's gender identity. The Guidelines note that a student's family should be included when the family is supportive, but they also recognize that some transgender and gender nonconforming students may experience lack of parental support and even safety concerns in expressing their gender identity. In that event, the Guidelines emphasize, "providing support for a student is critical."

Plaintiffs object to these Guidelines and assert seven causes of action, covering a range of federal and state legal claims. All of those claims fail as a matter of law. Plaintiffs' claims proceed from a fundamentally mistaken premise, which is that parents have an unfettered right to direct how their children will be treated *while at school*.

To be sure, the courts have recognized that parents have a right to make important decisions about the upbringing of their children, including such decisions as whether to send their children to public or private school. But once parents decide to send their children to public school—as Plaintiffs in this case have done—then those schools have the responsibility for the educational environment in which the students learn and a compelling interest in ensuring that

environment is safe and supportive.  *See In re Gloria H.*, 979 A.2d 710, 723 (Md. 2009) ("While

parents may have a fundamental right to decide *whether* to send their child to a public school,

they do not have a fundamental right generally to direct *how* a public school teaches their child.

… [I]ssues of public education are generally 'committed to the control of state and local

authorities.'") (quoting *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 395-396 (6th Cir.

2005)).

The Guidelines recognize that many parents will be supportive of transgender and gender

nonconforming children, and when that is so, the Guidelines welcome the involvement of

parents.  But that is unfortunately not always the case, and some students experience parental

rejection—and worse—when their gender identity is revealed to their parents.  The Guidelines

do nothing more than recognize that fact and provide professional educators with guidance for

how to exercise their professional judgment in navigating that complex situation.  Contrary to

Plaintiffs' claims, a public school is not legally or constitutionally required to reveal information

to a parent that could put a student in danger.  The Complaint should therefore be dismissed.

## BACKGROUND

Montgomery County Public Schools ("MCPS") is committed to "a safe, welcoming

school environment."  Compl. Ex. 1 at 1.[1]  To that end, MCPS developed the Guidelines for

---

[1] In ruling on a motion to dismiss, courts may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  Plaintiffs have attached the Guidelines and MCPS Form 560-80 as exhibits to their Complaint.  *See* Compl. Exs. 1 and 2.  The authenticity of the documents is not contested, and they are integral to the Complaint.  *See Jake's Fireworks Inc. v. United States Consumer Prod. Safety Comm'n*, No. PWG-19-CV-1161, 2020 WL 6383233, at *6 (D. Md. Oct. 30, 2020).  Where Plaintiffs' allegations in their Complaint conflict with the attached written instruments, "the exhibit prevails."  *Id.* (citing *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

Student Gender Identity in Montgomery County Public Schools (the "Guidelines") with the following goals in mind:

> Support students so they may participate in school life consistent with their asserted gender identity; respect the right of students to keep their gender identity or transgender status private and confidential; reduce stigmatization and marginalization of transgender and gender nonconforming students; foster social integration and cultural inclusiveness of transgender and gender nonconforming students; and provide support for MCPS staff members to enable them to appropriately and consistently address matters of student gender identity and expression.

*Id.* (capitalization altered).  The Guidelines are deliberately flexible; they note that they "cannot anticipate every situation which might occur," and therefore instruct that "the needs of each student must be assessed on a case-by-case basis." *Id.*

The Guidelines contain several provisions regarding discussions with parents about a student's gender identity.  They recommend development of a "gender support plan" for transgender and gender nonconforming students and note that the plan should be developed "in collaboration with the student and the student's family (if the family is supportive of the student)."  Compl. Ex. 1 at 2.  The Guidelines explicitly contemplate both situations where parents are supportive of the child's gender identity and situations where they are not, and they provide guidance for each.  In particular, the Guidelines include a section on "communication with families," which provides:

> Prior to contacting a student's parent/guardian, the principal or identified staff member should speak with the student to ascertain the level of support the student either receives or anticipates receiving from home.  In some cases, transgender and gender nonconforming students may not openly express their gender identity at home because of safety concerns or lack of acceptance.  Matters of gender identity can be complex and may involve familial conflict.  If this is the case, and support is required, the Office of School Support and Improvement or the Office of Student and Family Support and Engagement (OSFSE) should be contacted.  In such cases, staff will support the development of a student-led plan that works toward inclusion of the family, if possible, taking safety concerns into

consideration, as well as student privacy, and recognizing that providing support for a student is critical, even when the family is nonsupportive.

*Id.*

In accordance with the Guidelines' goals of supporting and respecting students, and preventing stigmatization and marginalization, the Guidelines provide guidance on "privacy and disclosure of information" and "staff communication":

PRIVACY AND DISCLOSURE OF INFORMATION

All students have a right to privacy.  This includes the right to keep private one's transgender status or gender nonconforming presentation at school.

Information about a student's transgender status, legal name, or sex assigned at birth may constitute confidential medical information.  Disclosing this information to other students, their parents/guardians, or third parties may violate privacy laws, such as the federal *Family Educational Rights and Privacy Act* (FERPA).

Schools will ensure that all medical information, including that relating to transgender students, is kept confidential in accordance with applicable state, local, and federal privacy laws.

Please note that medical diagnosis, treatment, and/or other documentation are not required for a school to accommodate requests regarding gender presentation, identity, and diversity.

Transgender and gender nonconforming students have the right to discuss and demonstrate their gender identity and expression openly and decide when, with whom, and how much to share private information.  The fact that students choose to disclose their status to staff members or other students does not authorize school staff members to disclose a student's status to others, including parents/guardians and other school staff members, unless legally required to do so or unless students have authorized such disclosure.  It is inappropriate to ask transgender or gender nonconforming students more questions than are necessary to support them at school.

…
STAFF COMMUNICATION

…

> Unless the student or parent/guardian has specified otherwise, when contacting the parent/guardian of a transgender student, MCPS school staff members should use the student's legal name and pronoun that correspond to the student's sex assigned at birth.

Compl. Ex. 1 at 2-3.

The Guidelines provide that the "principal, designee, or school-based mental health professional … should use MCPS Form 560-80, *Intake Form: Supporting Students, Gender Identity*, to support this process and assist the student in participating in school."  Compl. Ex. 1 at 2.  That form indicates that "[p]arents/guardians may be involved [in completing the form] if the student states that they are aware of and supportive of the student's gender identity."  Compl. Ex. 2 at 1.  On the form, there is a section entitled "Support/Safety for Student," which asks whether a student's parents are aware of the student's gender identity, asks for a "Support Level" rating from one to ten, and asks:  "If support level is low, what considerations must be accounted for in implementing this plan?"  *Id.*  The Guidelines preserve the confidentiality of information provided by the student concerning the student's gender identity, instructing that the "completed form must be maintained in a secure location and may not be placed in the student's cumulative or confidential files," and that "[w]hile the [gender support] plan should be consistently implemented by all school staff, the form itself is not intended to be used or accessed by other school staff members."  Compl. Ex. 1 at 2.

Through these provisions, the Guidelines seek to ensure a "safe, welcoming school environment where students are engaged in learning and are active participants in the school community because they feel accepted and valued."  Compl. Ex. 1 at 1.  The Guidelines acknowledge that "[i]n some cases, transgender and gender nonconforming students may not openly express their gender identity at home because of safety concerns or lack of acceptance."  *Id.* at 2.  Recognizing that unfortunate fact, the Guidelines indicate that student support and

5

safety is an overarching goal. *Id.* at 1-3. However, the Guidelines also recognize that parental involvement is critical and repeatedly suggest that schools should work towards sharing information with parents to the extent it is safe to do so. *Id.* at 2. Ultimately, as quoted above, the Guidelines make clear that the schools should act "in accordance with applicable state, local, and federal privacy laws." *Id.*

## STANDARD OF REVIEW

The Court should dismiss a complaint where it fails to plead any cognizable legal theory—for example where a claimed right does not exist, *see Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 710 (D. Md. 2013), or where the plaintiff lacks a right of action to sue, *see Fangman v. Genuine Title, LLC*, No. RDB-14-0081, 2016 WL 3027525, at *3 (D. Md. May 27, 2016). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "When considering a motion to dismiss under Rule 12(b)(6), the Court must accept the material facts alleged in the complaint as true, though statements of legal conclusions are not afforded the same assumption of truth." *Ayers v. Vestberg*, No. PWG-19-581, 2019 WL 6052669, at *2 (D. Md. Nov. 15, 2019) (citing *Iqbal*, 556 U.S. at 678). "Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). "The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action." *Hill v. Ramsey*, No. PWG-13-3084, 2014 WL 7260859, at *1 (D. Md. Dec. 17, 2014) (cleaned up and quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Court may properly consider documents that are "attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citing Fed. R. Civ. P. 10(c)). Where Plaintiffs' allegations in

their complaint conflict with the attached written instruments, "the exhibit prevails." *Jake's Fireworks Inc.*, 2020 WL 6383233, at *6 (citing *Fayetteville Inv'rs*, 936 F.2d at 1465).

## ARGUMENT

Plaintiffs object to the Guidelines and assert seven causes of action:  (I) violation of Maryland Family Law; (II) violation of the Maryland Code of Regulations; (III) violation of the Maryland Constitution – Parental Rights; (IV) violation of the federal Family Educational Rights and Privacy Act (FERPA), as purportedly incorporated by Maryland law; (V) violation of the federal Protection of Pupil Rights Amendment (PPRA), as purportedly incorporated by Maryland Law; (VI) violation of the United States Constitution – Parental Rights; and (VII) violation of 42 U.S.C. § 1983.  As explained further below, all of Plaintiffs' claims fail as a matter of law; no provision of federal or Maryland law requires public schools under all circumstances to disclose information to parents about a student's gender identity or expression while at school, particularly when the parents are not supportive of the student and when such disclosure might expose the student to harm.

Moreover, Plaintiffs' arguments fundamentally misapprehend the nature of the Guidelines, characterizing them as inflexible directives that exclude parents from important information about their children.  In fact, the Guidelines are just that—Guidelines.  Although Plaintiffs characterize them as a "Policy," Compl. ¶ 2, nothing in them indicates they were adopted as a formal policy of the Montgomery County Board of Education.  The Guidelines repeatedly indicate that they are flexible and that each situation "must be assessed on a case-by-case basis."  *Id.* at 1.  Far from a "[p]olicy of withholding information from parents," Compl. ¶ 49, the Guidelines seek to include parents as much as it is safe to do so.  The Guidelines provide that a student's "gender support plan" should be developed "in collaboration with the student and the student's family (if the family is supportive of the student)," and that "staff will

support the development of a student-led plan that works toward inclusion of the family."

Compl. Ex. 1 at 2.  Plaintiffs' interpretation of the Guidelines is at odds with their plain text.  *See*

*Jake's Fireworks*, 2020 WL 6363233 ("[W]here the allegations in the complaint conflict with an

attached written instrument, 'the exhibit prevails.'").

Properly construed according to their plain terms, the Guidelines do not implicate—much

less violate—any parent's claimed right to direct their children's upbringing.  And the Guidelines

are justified under any applicable standard of review because of the important role they play in

ensuring a safe school environment conducive to students' education.

I.      **PLAINTIFFS' CLAIMS FOR VIOLATION OF THEIR FUNDAMENTAL PARENTAL RIGHTS
        FAIL AS A MATTER OF LAW (COUNTS III AND VI)**

The heart of Plaintiffs' complaint is a pair of claims alleging that the Guidelines infringe

their constitutional rights as parents.  In Count VI, Plaintiffs allege that Defendants have violated

their fundamental right under the U.S. Constitution "to direct the care, custody, education, and

control of their minor children."  Compl. ¶ 87.  And in Count III, Plaintiffs allege that

Defendants have violated their fundamental right under the Maryland Constitution "to direct the

care, custody, education, welfare, safety, and control of their minor children."  *Id*. ¶ 62.  They

allege that under both the federal and state constitutions, they have a right "to counsel their

children on important decisions regarding their health and safety and to decide what is in the best

interests of their minor children."  *Id*. ¶¶ 62, 87.  More specifically, Plaintiffs argue that by

"withholding information from Plaintiff Parents with respect to their children's desire to consider

becoming transsexual or that their children have taken actions in that regard," *id*. ¶ 89,

Defendants interfere with Plaintiffs' supposed constitutional right "to be fully informed and

involved in addressing issues relating to gender transformation with their minor children," *id*.

¶ 23.  Such interference, Plaintiffs argue, must be "narrowly tailored" to advance a "compelling

interest."  *Id*. ¶¶ 64-66, 88-90.[2]

      While parents retain a fundamental right to make decisions concerning the care, custody,

and control of their children, *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion), no

court has expanded the scope of that right so broadly as to include a right of parents "to be fully

informed and involved in addressing issues relating to gender transformation with their minor

children," Compl. ¶ 23, while their children are attending public school or engaging in school

activities under the supervision of the school.  Nor has any court suggested that such a right

would be violated by reasonable school guidelines that further important educational and safety

goals, such as the Guidelines at issue here.  To the contrary, courts—including the Fourth

Circuit—have consistently recognized that public schools have the authority to make many kinds

of judgments regarding how public school students are educated, and that parents do not have a

fundamental constitutional right to override, or claim exemptions from, those considered

judgments.  Although parents have the constitutional right to make certain decisions about their

children's upbringing—including the right to send their children to private school rather than

---

[2] Plaintiffs do not suggest that the federal and state constitutional protections on which they rely differ in any respect.  Nor does the Maryland case law discussed below suggest that Maryland's constitutional protection of fundamental parental rights is broader than the analogous federal constitutional right.  To the contrary, the federal and state constitutions are coextensive in this regard.  *See Wolinski v. Browneller*, 693 A.2d 30, 35 n.6 (Md. 1997) ("The Maryland Declaration of Rights carries the same meaning as the Fourteenth Amendment.  Thus, analysis applicable to the latter applies to the former."), *overruled on other grounds by Koshko v. Haining*, 921 A.2d 171 (Md. 2007); *In re Adoption/Guardianship Nos. CAA 92-10852, 92-10853 in Circuit Court for Prince George's Cnty.*, 651 A.2d 891, 897 (Md. 1994) (fundamental right of a parent to raise his or her child "is in the nature of a liberty interest that has long been recognized and protected under the state and federal constitutions."); *In re Yve S.*, 819 A.2d 1030, 1039 (Md. 2003) ("Maryland has consistently echoed the Supreme Court" in analyzing "a parent's liberty interest in raising a child.").  Accordingly, Defendants address the federal and state constitutions together.

public school should they disagree with the public school curriculum or philosophy—once

parents choose to send their children to public school, they do not have the authority to reach

inside the school and countermand school guidelines designed for the protection of children.

Accordingly, Plaintiffs err in arguing that the Guidelines are subject to strict scrutiny;

indeed, Fourth Circuit precedent makes clear that rational-basis review applies here.  But even if

strict scrutiny were to apply, the Guidelines should be upheld because they are narrowly tailored

to serve Defendants' compelling interest in protecting students' safety and ensuring a "safe,

welcoming school environment where students … feel accepted and valued."  Compl. Ex. 1 at 1.

A.     **There Is No Fundamental Constitutional Right To Be Fully Informed And Involved In Addressing Issues Relating To Gender Transformation With One's Minor Children While Those Children Are At School**

The Due Process Clause of the Fourteenth Amendment protects the right of parents and

guardians to make decisions concerning the care, custody, and control of their children.  *Troxel*,

530 U.S. at 66 (interpreting jurisprudence flowing from *Meyer v. Nebraska,* 262 U.S. 390

(1923), and *Pierce v. Society of Sisters,* 268 U.S. 510 (1925)).  That right, however, is not

unlimited.  The Supreme Court has repeatedly reminded that substantive due process protects

only those fundamental rights and liberties that have been "carefully refined by concrete

examples … found to be deeply rooted in our legal tradition."  *Washington v. Glucksberg*, 521

U.S. 702, 722 (1997); *see also Village of Belle Terre v. Boraas*, 416 U.S. 1, 7-8 (1974); *City of

Dallas v. Stanglin*, 490 U.S. 19, 22-25 (1989).  It follows, the Court has explained, that rights

protected as a matter of substantive due process must be narrowly defined to ensure fidelity to

that tradition.  *See Reno v. Flores*, 507 U.S. 292, 302 (1993) ("Substantive due process analysis

must begin with a careful description of the asserted right, for the doctrine of judicial self-

restraint requires us to exercise the utmost care whenever we are asked to break new ground in

this field.") (citation and quotation marks omitted).

10

As the First Circuit explained in *Parker v. Hurley*, 514 F.3d 87 (1st Cir. 2008), constitutional parental-rights jurisprudence produces two primary strains of case law:  One concerning the custody of children, and another concerning the fundamental control of children's schooling.  *Id*. at 101.  Although mentioning certain concepts relating to the custody cases, *see, e.g.*, Compl. ¶¶ 1, 23, 33-34, 62, 87 (referring to "best interests" of the child), Plaintiffs' Complaint is plainly framed to invoke the schooling cases.[3]  None of those cases requires the Court to recognize the expansive right Plaintiffs seek to assert here—the right to be fully informed and involved in addressing issues relating to their children's gender expression while at school.  Compl. ¶ 23.

The schooling cases "'evince the principle that the state cannot *prevent* parents from choosing a specific educational program.'"  *Parker*, 514 F.3d at 101 (adding emphasis and citing *Brown v. Hot, Sexy & Safer Prods., Inc.*, 68 F.3d 525, 533 (1st Cir. 1995)).  In other words, the state may not "completely foreclos[e] the opportunity of individuals and groups to choose a different path of education."  *Brown*, 68 F.3d at 533.  Such a constraint on Plaintiffs' rights is plainly not at issue here.  Nothing in the Guidelines prohibits Plaintiffs from choosing a different educational path for their children.  Plaintiffs are free to remove their children from Montgomery County Public Schools and select a private institution, *Pierce*, 268 U.S. at 534-535, or educate their children at home, *Wisconsin v. Yoder*, 406 U.S. 205 (1972), to more completely oversee their children's expression of gender identity.  As such, Plaintiffs' parental right to control the schooling of their children is not at issue in this case.

---

[3] None of the schooling cases adopts the "best interests of the child" analysis used in custodial cases to determine the scope of parental rights with respect to school operations, and for good reason.  Parents retain their custodial control while sending their children to school for several hours a day—even if, for those hours, parents necessarily cede some of their control to the discretion of the public school.

What Plaintiffs seek here—to expand the scope of parents' basic control of their children's schooling to include a right to dictate the operations of public schools—has, time and again, been rejected by courts.  For example, courts have rejected parents' challenges to schools' sex education programs, *see Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1207 (9th Cir. 2005); mandatory health curriculums, *see Leebaert v. Harrington*, 332 F.3d 134, 141 (2d Cir. 2003); and mandatory community service programs, *see Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 899 F. Supp. 1443, 1450 (M.D.N.C. 1995), *aff'd*, 89 F.3d 174 (4th Cir. 1996). These cases all turn on the same recognition—that parents' right to direct their children's education does not include the right to overrule reasonable educational judgments of a public school system while their children are at school.

As the Sixth Circuit has explained, courts' reluctance to extend constitutional parental rights into the schoolhouse reflects not only concerns about expanding substantive due process beyond its historical grounding but also their longstanding deference to the reasonable educational judgments of public educational institutions:

> The critical point is this:  While parents may have a fundamental right to decide *whether* to send their child to a public school, they do not have a fundamental right generally to direct *how* a public school teaches their child. Whether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or, as here, a dress code, these issues of public education are generally "committed to the control of state and local authorities."

*Blau*, 401 F.3d at 395-396 (citing *Goss v. Lopez*, 419 U.S. 565, 578 (1975)).  With unwavering consistency, courts have rejected the view that parents' rights to control the education of their children confer on parents a line-item veto over school curricula and policies.

Plaintiffs' claim of parental rights under the Maryland Constitution is even more untethered to case law.  The few instances where Maryland courts have recognized parents'

fundamental rights under the Maryland Constitution have come in the context of custody disputes, where a parent's fundamental right to raise a child—not their right to control a child's schooling—was at stake. *See In re Adoption/Guardianship No. TPR970011 in Circuit Court For Prince George's Cnty.*, 712 A.2d 597, 602 (Md. 1998) (recognizing that "the fundamental right of a parent to raise his or her child is in the nature of a liberty interest that is protected under the state and federal constitutions"); *Boswell v. Boswell*, 721 A.2d 662, 668-669 (Md. 1998) (same). In any event, Maryland looks to federal constitutional law in determining the scope of parental rights under its own constitution. *Wolinski*, 693 A.2d at 35 n.6.  As Plaintiffs fail to state a claim for violation of their parental rights under the federal Constitution, so too do they fail to state an analogous claim under the Maryland Constitution.

Plaintiffs' effort to invoke (at Compl. ¶¶ 62, 87) a family privacy right "to counsel their children on important decisions regarding their health and safety and to decide what is in the best interests of their minor children" is similarly unsupported by the case law.  Certainly, courts recognize a familial privacy right to "independence in making certain kinds of important decisions." *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir. 1994).  But that right is "neither absolute nor unqualified," *id.*, nor is it as sweeping as what Plaintiffs assert here.  The right "may be outweighed by a legitimate governmental interest." *Id.* at 163-164 (citing *Santosky v. Kramer*, 455 U.S. 745, 766 (1982) (state has a "*parens patriae* interest in preserving and promoting the welfare of the child")).  And courts have consistently found that reasoned efforts to protect the welfare of children do not "intrude[] so vigorously into the [] family as to infringe their family privacy right." *Renn By & Through Renn v. Garrison*, 100 F.3d 344, 349 (4th Cir. 1996).

Moreover, the Guidelines impose no limits on how Plaintiffs may counsel their children on gender identity or expression.  The Guidelines do not reach inside the family home and do not

restrict anything that parents may discuss with their children.  They concern only how issues of gender identity should be handled while children are under school supervision in order to protect student safety and to facilitate their education, when parents' familial privacy rights are necessarily more circumscribed.  Plaintiffs argue that the federal and state constitutions impose on schools an affirmative duty to disclose any and all information a student shares with school personnel about the student's gender identity as expressed at school, regardless of the student's wishes or safety concerns.  Such a sweeping right and such an intrusion on school policy and practice has no grounding in case law discussing family privacy rights.

Indeed, courts rarely consider the family privacy right to decisional independence when adjudicating schooling cases, relying instead on the *Meyer-Pierce* line of case law.[4]  In the few instances where courts have found schools to have violated family privacy rights, the decisions turned on the presence of two factors:  (1) coercive pressure on the child to undertake a controversial or intimate act and (2) concealment of that fact from the parents.  *See Reardon v. Midland Cmty. Sch.*, 814 F. Supp. 2d 754, 771 (E.D. Mich. 2011).  For example, in *Arnold v. Board of Educ. of Escambia Cnty., Ala.*, 880 F.2d 305, 311-312 (11th Cir. 1989), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), the Eleventh Circuit concluded that school officials violated the plaintiffs' family privacy rights by coercing a minor into having an abortion and concealing the decision

---

[4] As the Supreme Court noted in *Runyon v. McCrary*, "[t]he *Meyer-Pierce-Yoder* 'parental' right and the [familial] privacy right … may be no more than verbal variations of a single constitutional right."  427 U.S. 160, 179 n.15 (1976) (noting the Court's reliance in *Roe v. Wade*, 410 U.S. 113, 152-153 (1973), on *Meyer* and *Pierce* in recognizing a constitutional right to privacy).

from her parents.[5]  Similarly, in *Gruenke v. Seip*, 225 F.3d 290, 308-309 (3d Cir. 2000), the

Third Circuit recognized the parental rights of a mother whose daughter was forced by her swim

team coach to take a pregnancy test and who then spread rumors of the teen's pregnancy at the

school without informing her parents.  But where, as here, plaintiffs make no allegations of

coercion, courts find no constitutional violation of familial privacy.  *See, e.g.*, *Reardon*, 814 F.

Supp. 2d at 771-772 (finding no violation of familial privacy where school personnel provided

advice, financial assistance, counseling, and an offer to act as foster parents); *Anspach ex rel.*

*Anspach v. City of Philadelphia, Dep't of Pub. Health*, 503 F.3d 256, 264-267 (3d Cir. 2007) (no

violation of familial privacy where city health department provided minor with emergency

contraception without notifying her parents or encouraging her to consult with them).  Far from

coercing students into undertaking gender transition—or any other important decision potentially

touching on familial privacy—the Guidelines direct school personnel to "work[] toward [the]

---

[5] Plaintiffs in *Arnold* alleged that when the minor student discovered she was pregnant and sought guidance from her school's counselors, the counselors procured a pregnancy test, coerced her and the minor father of the unborn child to agree to abort the child, coerced the minors to keep the abortion a secret, and paid them to perform menial tasks at the school to finance the abortion.  880 F.2d at 308-309.

inclusion of the family."[6]  Compl. Ex. 1 at 2.  Plaintiffs therefore fail to state any claim of a constitutional violation of their familial privacy rights.[7]

For all these reasons, Plaintiffs' effort to invoke strict scrutiny fails.  Rather, Plaintiffs must establish that the Guidelines bear no rational relationship to any legitimate state purpose—which they cannot do.  Controlling authority in the Fourth Circuit rejects Plaintiffs' call for strict scrutiny (at Compl. ¶¶ 64-66, 88-90).  In *Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174 (4th Cir. 1996), the court considered what level of scrutiny to apply where a school board's mandatory community service program allegedly violated plaintiffs' parental rights to control the upbringing and education of their children:

> From *Meyer* to *Runyon*, the Supreme Court has stated consistently that parents have a liberty interest, protected by the Fourteenth Amendment, in directing their children's schooling.  Except when the parents' interest includes a religious element, however, the Court has declared with equal consistency that *reasonable*

---

[6] "Prior to contacting a student's parent/guardian, the [school official] should speak with the student to ascertain the level of support the student either receives or anticipates receiving from home.  In some cases, transgender and gender nonconforming students may not openly express their gender identity at home because of safety concerns or lack of acceptance.  Matters of gender identity can be complex and may involve familial conflict.  … In such cases, staff will support the development of a student-led plan that works toward inclusion of the family, if possible, taking safety concerns into consideration, as well as student privacy, and recognizing that providing support for a student is critical, even when the family is nonsupportive."  Compl. Ex. 1 at 2.

[7] Plaintiffs' implication that the Constitution imposes an affirmative duty of disclosure on schools is also plainly wrong.  As the Supreme Court recognized in *Harris v. McRae*, 448 U.S. 297, 317-318 (1980), "[a]lthough the liberty protected by the Due Process Clause affords protection against unwarranted government interference ..., it does not confer an entitlement to such [governmental aid] as may be necessary to realize all the advantages of that freedom."  In the related context of minors seeking reproductive health services, courts have emphatically rejected a right to parental notification.  *See Anspach*, 503 F.3d at 271 ("While parental notification has been permitted in limited circumstances in the context of abortion …, it has never been affirmatively required, nor extended to include other reproductive health services such as access to contraception) (citation omitted); *Doe v. Irwin*, 615 F.2d 1162 (6th Cir. 1980) (finding no constitutional right to notification rooted in parental rights jurisprudence where county health clinic distributed contraceptive devices and medication to unemancipated minors without notice to their parents).

regulation by the state is permissible even if it conflicts with that interest.  That is the language of rational basis scrutiny.

*Id.* at 179; *see also Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 461 (2d Cir. 1996).[8]

The rational-basis test is readily satisfied here.  The Guidelines rationally relate to Defendants' legitimate interest in protecting their students' safety and ensuring a "safe, welcoming school environment where students … feel accepted and valued."  Compl. Ex. 1 at 1. That interest is rooted in state and federal law obligating Defendants to take meaningful steps to make the schools safe environments for learning.  For example, under Maryland law, "[a]ll students in Maryland's public schools, without exception and regardless of race, ethnicity, region, religion, gender, sexual orientation, language, socioeconomic status, age, or disability, have the right to educational environments that are:  A. Safe; B. Appropriate for academic achievement; and C. Free from any form of harassment."  COMAR 13A.01.04.03.  Similarly, the recently enacted Maryland Safe to Learn Act, Md. Code, Educ. §§ 7-1501-7-1512, mandates that schools undergo safety evaluations, employ school safety coordinators, and employ mental health coordinators.  And U.S. Department of Education guidance notes that under Title IX, schools have a legal obligation to eliminate hostile environments and provide support to affected students.  *See* U.S. Dep't of Educ., Guidance on Schools' Obligations to Protect Students from Student-on-Student Harassment on the Basis of Sex; Race, Color and National Origin; and Disability, "Dear Colleague" Letter (Oct. 26, 2010).[9]

**B.     The Guidelines Are Narrowly Tailored To Serve The Schools' Compelling Interest In Providing For Students' Educational Needs And Rights**

---

[8] The Fourth Circuit likewise applies rational-basis review to alleged interference with the familial right to privacy.  *Hodge*, 31 F.3d at 163-164 ("The maxim of familial privacy is neither absolute nor unqualified, and may be outweighed by a legitimate governmental interest.").

[9] Available at https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201010.pdf.

Even if strict scrutiny did apply to Defendants' Guidelines, that standard would be satisfied, as Defendants can assert at least three compelling interests to which the Guidelines are narrowly tailored:  the interest in ensuring student safety, the interest in not discriminating against transgender and gender nonconforming students, and the interest in protecting student privacy.

*First*, Defendants have a compelling interest in protecting their students' safety and ensuring a "safe, welcoming school environment where students … feel accepted and valued." Compl. Ex. 1 at 1.  As the Supreme Court has recognized, the state's interest in educating its citizens is among the core commitments of a free and democratic society.  *See Brown v. Board of Educ.*, 347 U.S. 483, 493 (1954) ("education is perhaps the most important function of state and local governments"); *Yoder*, 406 U.S. at 221 (indicating that the state has a "compelling" interest in educating its youth, to prepare them both "to participate effectively and intelligently in our open political system," and "to be self-reliant and self-sufficient participants in society").  This broad compelling interest necessarily includes an interest in ensuring the safety of students under the public schools' supervision.  *See New York v. Ferber*, 458 U.S. 747, 756-757 (1982) ("It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'"); *LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 992 (9th Cir. 2001) (finding school's interest in safety of its students compelling, and noting that "[w]e review … with deference schools' decisions in connection with the safety of their students"); *see also Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 435-436 (9th Cir. 2008) (finding increasing student achievement and enhancing safety important government interests); *In re Patrick Y.*, 723 A.2d 523, 528-529 (Md. Ct. Spec. App. 1999) (schools have an obligation "to protect the welfare and safety of the students at the school"), *aff'd*, 746 A.2d 405 (Md. 2000).

Courts have traditionally deferred to school officials and school boards in determining how best to fulfill these core commitments, recognizing "the need to preserve the discretion of schools to craft individualized approaches to difficult issues that are appropriate for their respective communities." *Students v. U.S. Dep't of Educ.*, No. 16-CV-4945, 2016 WL 6134121, at *24 (N.D. Ill. Oct. 18, 2016), *report and recommendation adopted sub nom. Students & Parents for Privacy v. U.S. Dep't of Educ.*, No. 16-CV-4945, 2017 WL 6629520 (N.D. Ill. Dec. 29, 2017) (citing *Wood v. Strickland*, 420 U.S. 308, 326 (1975)).

Defendants' compelling interest in the safety of their transgender and gender nonconforming students is urgent. As Plaintiffs' own Complaint powerfully conveys, the challenges facing transgender and gender nonconforming students are real. Transgender and gender nonconforming students experience heightened rates of suicidal ideation and likelihood of attempted suicide. Compl. ¶ 15 ("Nearly 14% of all adolescents reported a previous suicide attempt, 50.8% of female to male transgender adolescents did so, 41.8% of adolescents who identified as not exclusively male or female did so, and 29.9% of male to female transgender adolescents did so."). Transgender and gender nonconforming students are more likely to be bullied and harassed. Compl. Ex. 1 at 5; *see also Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 597 (4th Cir. 2020), *as amended* (Aug. 28, 2020) (noting that 77% of respondents who were known or perceived as transgender in their K-12 schools reported harassment by students, teachers, or staff). Transgender and gender nonconforming students face significant dangers of abuse at home from unsupportive families. Compl. Ex. 1 at 2. Weighing these concerns about student safety against the interest of parents in the upbringing of their children, the Guidelines express a preference for parental involvement while responding to the need to support students even when family support is lacking.

19

*Second*, Defendants have a compelling interest in not discriminating against transgender and gender nonconforming students. *Doe by & through Doe v. Boyertown Area Sch. Dist.*, 276 F. Supp. 3d 324, 390 (E.D. Pa. 2017), *aff'd*, 890 F.3d 1124 (3d Cir. 2018), and *aff'd*, 897 F.3d 518 (3d Cir. 2018) (finding school district had compelling state interest not to discriminate against transgender students). Even before the Supreme Court's decision in *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020), which held that Title VII's prohibition on discrimination "because of … sex" covers discrimination on the basis of gender identity and sexual orientation, multiple courts had determined that school districts' discrimination against transgender students violates the Equal Protection Clause and Title IX. *See, e.g.*, *Grimm v. Gloucester Cnty. Sch. Bd.*, 400 F. Supp. 3d 444 (E.D. Va. 2019) (Title IX and Equal Protection Clause); *Whitaker by Whitaker v. Kenosha Unified School Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017) (Title IX); *Evancho v. Pine–Richland School District*, 237 F.Supp.3d 267 (W.D. Pa. 2017) (Equal Protection Clause). And since *Bostock*, controlling authority in this Circuit now recognizes that discrimination against transgender students violates both the Equal Protection Clause and Title IX. *Grimm*, 972 F.3d at 586. The Guidelines work to ensure that transgender and gender nonconforming students have "equal access and equal opportunity to participate in all programs and activities at school and [are] otherwise protected from gender-based discrimination at school." Compl. Ex. 1 at 2.

*Third*, Defendants have a compelling interest in protecting student privacy. The relief Plaintiffs seek here would force Defendants to violate the privacy rights of any student who confides in school personnel "issues relating to gender transformation." Compl. ¶ 23. As courts have recognized in cases weighing the privacy rights of families, students retain "the right not to have intimate facts concerning one's life disclosed without one's consent." *C.N. v. Ridgewood*

*Bd. of Educ.*, 430 F.3d 159, 179 (3d Cir. 2005); *Anspach*, 503 F.3d at 271 ("[M]inors are individuals who enjoy constitutional rights of privacy under substantive due process.") (citing *Planned Parenthood of Cent. Missouri v. Danforth*, 428 U.S. 52, 74 (1976) ("Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority.")).

The Guidelines are narrowly tailored to advance all three of these compelling state interests. The Guidelines do not broadly exclude parents from decision-making concerning their children; to the contrary, they welcome and encourage parental participation when parents are supportive. At most, they provide children with a zone of protection and privacy in the hopefully rare circumstance when disclosure of their gender expression while at school could lead to serious conflict within the family, and even harm. In addition, (1) they do not coerce students into disclosing "issues relating to gender transformation" or into making decisions relating to gender identity expression; (2) they provide counseling services and other support to protect the safety and well-being of the student; and (3) they evaluate students' needs and the family situation on a case-by-case basis. Compl. Ex. 1 at 1-5.

In short, the Guidelines are the least burdensome means of advancing the Schools' compelling interests. Plaintiffs' preferred alternative—that parents be informed of their children's gender identity or expression while at school under all circumstances, even when to do so could expose the student to harm—would fatally undermine MCPS' interest in ensuring a safe and supportive educational setting. Accordingly, whether the proper standard of review is rational basis or strict scrutiny (or something in between), Plaintiffs' constitutional claims fail as a matter of law.

## II.    PLAINTIFFS HAVE NO RIGHT OF ACTION TO ENFORCE FERPA OR THE PPRA (COUNTS IV AND V)

In Count IV, Plaintiffs allege that the "MCPS Policy in withholding records from Plaintiff Parents with respect to their children's desire to consider becoming transsexual or that their children have taken actions in that regard is in violation of FERPA and Maryland law that implements FERPA." Compl. ¶ 73.  And in Count V, Plaintiffs allege that "[b]y requiring the questioning of a student about gender identity and the filling out of Form 560-80 … the MCPS Policy is in contravention of the PPRA and its implementing regulations and Maryland law by its incorporation through Article 2 of the Declaration of Rights." *Id.* ¶ 84.  Both claims fail as a matter of law because Plaintiffs have no private right of action to enforce either statute under federal or state law.

It is well settled that FERPA confers no private right of action.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 288–290 (2002) (holding that no private right of action exists under FERPA *Hodge v. Coll. of S. Md.*, 121 F. Supp. 3d 486, 496 (D. Md. 2015) ("FERPA [] does not provide a private right of action"); *Ashby v. Isle of Wight Cnty. Sch. Bd.*, 354 F. Supp. 2d 616, 623 n.9 (E.D. Va. 2004) (FERPA and PPRA "do not create private causes of action").  Thus, to the extent Plaintiffs allege a violation of FERPA, their claims must fail as a matter of law because there is no private right of action.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014) (explaining that a plaintiff must have a right of action to enforce federal law); *Bauer v. Elrich*, 468 F. Supp. 3d 704, 710 (D. Md. 2020) ("[T]here must be a private right of action available for Plaintiffs to pursue their claim [under federal law]."), *appeal pending*, No. 20-1707 (4th Cir.).

Plaintiffs attempt to circumvent this problem by arguing that they can proceed directly under Maryland common law, which—they assert, without citing any authority—incorporates

the provisions of FERPA into state law.  Plaintiffs appear to believe that Maryland law supplies causes of action that allow them to bring these claims, *see* Compl. ¶¶ 68-69, 75-76, but that is wrong.  As Judge Messitte of this Court recently explained in an analogous context—rejecting the argument that state law allowed enforcement of a federal provision that lacked a private right of action—"[w]hether a federal statute is privately enforceable is up to Congress."  *Bauer*, 468 F. Supp. 3d at 712.  A plaintiff must demonstrate "a cause of action *under the statute*"—in other words, that the plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue"—which must be analyzed under "traditional principles of statutory interpretation" concerning the existence of a private right of action.  *Lexmark*, 572 U.S. at 128 (emphasis added; citation omitted).  No Maryland decision suggests that incorporation of federal law into Maryland law somehow creates a cause of action to enforce a federal statute that Congress did not intend to be privately enforceable.

Federal statutes are creatures of Congress's making, in the exercise of its enumerated powers.  Thus, "private rights of action to enforce federal law must be created *by Congress*." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020) (adding emphasis and citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)); *see also In re Miller*, 124 F. App'x 152, 154 (4th Cir. 2005) (same).  Just as state courts may not refuse to entertain federal statutory claims that Congress has created, they may not expand the scope of liability under such federal claims beyond what Congress has delineated—including by "borrow[ing] entire causes of action from state law."  *Moor v. Alameda Cnty.*, 411 U.S. 693, 702 (1973).

Allowing a plaintiff to assert state-law causes of action to expand federal statutory remedies would subvert Congress's careful determinations concerning the enforceability of

federal law, significantly upsetting the balance of federal and state power and potentially

flooding courts with private lawsuits to enforce federal statutes that Congress intended to be

enforced only by the federal government.  The existence and scope of a private right of action to

enforce a federal statute are matters for Congress, no less than the substantive scope of that

statute.  And where Congress has elected not to authorize private suits to enforce a federal

statute, a plaintiff is not free to turn to state law to displace that choice.  The cause of action

Plaintiffs purport to assert under Maryland law—even if Maryland authority supported it—

would alter the federal statute by creating a right to a judicial remedy that does not exist under

FERPA or PPRA, in violation of the Supremacy Clause.  *See In re Commonwealth's Mot. to

Appoint Counsel*, 790 F.3d 457, 475-477 (3d Cir. 2015) (purported state-law cause of action to

enforce federal statute was preempted where Congress did not provide for private enforcement,

as such enforcement would "interfere with" Congress's chosen regulatory scheme).

Plaintiffs' claim to enforce their supposed rights under the PPRA similarly fails as a

matter of law.  Again, in Count V, Plaintiffs allege that "[b]y requiring the questioning of a

student about gender identity and the filling out of Form 560-80 … the MCPS Policy is in

contravention of the PPRA and its implementing regulations and Maryland law by its

incorporation through Article 2 of the Declaration of Rights."  *Compl.* ¶ 84.  By relying on the

Maryland Declaration of Rights rather than the PPRA directly, Plaintiffs appear to acknowledge

that, as with FERPA, the PPRA contains no private right of action and is therefore not directly

enforceable under federal law.  *See Ashby*, 354 F. Supp. 2d at 623 n.9 (PPRA contains no private

right of action); *see also C.N.*, 430 F.3d at 170 n.13 ("While *Gonzaga* addressed only the

FERPA, the parties have obviously interpreted it to dictate the fate of the private PPRA claim

asserted here.").  And for the reasons given above with respect to FERPA, Plaintiffs cannot

circumvent that limitation by arguing that Maryland law incorporates the PPRA into state law.

Plaintiffs' PPRA claim fails as a matter of law for another reason as well:  The PPRA's

restrictions on students being required to participate in certain inquiries apply only to programs

administered by the U.S. Department of Education.  Plaintiffs point to 20 U.S.C. § 1232h(b),

which provides that "[n]o student shall be required, *as part of any applicable program*, to submit

to a survey, analysis, or evaluation that reveals information concerning" various matters.

(Emphasis added.)  Plaintiffs gloss over a key clause—"as part of any applicable program"—

which significantly limits the reach of the PPRA.  The term "applicable program" is defined in a

nearby provision to "mean[] any program for which the Secretary or the Department [of

Education] has administrative responsibility as provided by law or by delegation of authority

pursuant to law."  20 U.S.C. § 1221(c)(1).  "The text of this statute and the regulations

implementing it indicate that Section 1232h was meant to apply only to programs administered

by the Secretary of Education."  *Herbert v. Reinstein*, 976 F. Supp. 331, 340 (E.D. Pa. 1997),

*aff'd*, 162 F.3d 1151 (3d Cir. 1998); *see Altman v. Bedford Cent. Sch. Dist.*, 45 F. Supp. 2d 368,

390-391 (S.D.N.Y. 1999), *aff'd in part, rev'd in part on other grounds*, 245 F.3d 49 (2d Cir.

2001).   Plaintiffs do not suggest that the Guidelines or Form 560-80 are part of any program for

which the Department of Education has administrative responsibility.  Accordingly, even if

Plaintiffs could privately enforce the PPRA—which they cannot—their claim would fail on the

merits.

Thus, Counts IV and V should be dismissed for failure to state a claim.

## III.    THE GUIDELINES DO NOT VIOLATE MARYLAND FAMILY LAW (COUNT I)

In Count I, Plaintiffs allege that "the MCPS Policy of withholding information from

parents directly related to their minor children's support, care, nurture, welfare, and education

have violated § 5-203 of the Family Article and have directly hindered Plaintiff Parents from carrying out their statutory duties under that section." Compl. ¶ 49. Plaintiffs' reliance on § 5-203 of the Family Law Article of the Maryland Code fails as a matter of law. Although § 5-203 recognizes the rights of parents to have *custody* of their children and to make fundamental decisions concerning their children's upbringing, nothing in Maryland family law vests in parents the right to override decisions by public schools concerning the educational environment *at school* that are intended to ensure children's safety.

Section 5-203 largely concerns establishing parental rights and responsibilities in custody disputes. *See McDermott v. Dougherty*, 869 A.2d 751, 770 (Md. 2005) (citing Md. Code, Fam. Law § 5-203).[10] Indeed, virtually the entire focus of § 5-203 is on establishing a parent's rights

---

[10] Section 5-203 provides:

**Natural guardianship**
(a)(1) The parents are the joint natural guardians of their minor child.
    (2) A parent is the sole natural guardian of the minor child if the other parent:
        (i) dies;
        (ii) abandons the family; or
        (iii) is incapable of acting as a parent.

**Powers and duties of parents**
(b) The parents of a minor child, as defined in § 1-103 of the General Provisions Article:
    (1) are jointly and severally responsible for the child's support, care, nurture, welfare, and education; and
    (2) have the same powers and duties in relation to the child.

**Duties of parents of minor parents**
(c) If one or both parents of a minor child is an unemancipated minor, the parents of that minor parent are jointly and severally responsible for any child support for a grandchild that is a recipient of temporary cash assistance to the extent that the minor parent has insufficient financial resources to fulfill the child support responsibility of the minor parent.

**Award of custody to parent**
(d)(1) If the parents live apart, a court may award custody of a minor child to either parent or joint custody to both parents.

26

and duties vis-à-vis the other parent.  Section 5-203 provides that parents "*are jointly and severally responsible* for the child's support, care, nurture, welfare, and education."  Md. Code, Fam. Law  § 5-203 (emphasis added).  It further provides that parents "*have the same powers and duties* in relation to the child."  Md. Code, Fam. Law  § 5-203 (emphasis added).  The entire framing of this provision is to establish that parents are both responsible for supporting their children.  But the statute does not suggest that parents have the right to overrule public schools' decisions affecting the safety of children who are the schools' responsibility as well.

Nor does the case law suggest any such application.  Maryland courts have relied on § 5-203 to stress parents' joint responsibility to raise their children.  For example, in *Cole v. Cole*, 2020 WL 1244575, at *3 (Md. Ct. Spec. App. Mar. 16, 2020), the court, in reviewing a custody determination, explained that § 5-203 "establishes the presumption that parents share legal decision-making authority of their child."  In *Wozar v. Wozar*, 2020 WL 4559462, at *6 (Md. Ct. Spec. App. Aug. 7, 2020), the court cited § 5-203 in reviewing a father's child visitation rights.  And in *Bornemann v. Bornemann*, 931 A.2d 1154, 1163-1164 (Md. Ct. Spec. App. 2007), the court interpreted § 5-203 in resolving a dispute over child support payments.  *See also Williams v. Burnette*, 2020 WL 4732137, at *6 (D. Md. Aug. 14, 2020) (Section 5-203 provides that in situations where parents share legal custody of children, "each parent ha[s] an equal and independent right to make decisions for the [c]hildren") (citing Md. Code, Fam. Law  § 5-203).

Although courts have cited § 5-203 in suggesting that an action that "affects the parental relationship" may be "sufficient to establish a violation of a[n] identified liberty interest," *id.* at *5-6, they have done so only in situations where the parent's right to have *custody* or to care for

---

(2) Neither parent is presumed to have any right to custody that is superior to the right of the other parent.

Md. Code, Fam. Law § 5-203.

a child was at issue.  The furthest the application of § 5-203 has been stretched beyond "custody, visitation, and adoption disputes" between the parents, *see BJ's Wholesale Club, Inc. v. Rosen*, 80 A.3d 345, 353 (Md. 2013), is to hold parents responsible for failing to obtain necessary medical treatment for their children, *see Kirsch v. State*, 2019 WL 2950170, at *6 (Md. Ct. Spec. App. July 9, 2019).  For example, in *Kirsch*, the court upheld a finding of gross negligence on the part of a mother for her son's malnourishment, explaining that pursuant to § 5-203(b), the mother "had a legal duty to obtain necessary medical treatment for her son."  *Id.*

Plaintiffs' custody of their children is not at issue in this case.  Nor is their right (or obligation) to care for their children, or to direct their children's upbringing while their children are at home.  And public schools also have the authority and obligation to ensure students' safety and well-being.  *See In re Gloria H.*, 979 A.2d at 723 ("a child who 'attends school' is 'committed to the control of state and local authorities'"); *In re Patrick Y.*, 723 A.2d at 528-529 (schools have an obligation "to protect the welfare and safety of the students at the school").  No court has suggested that § 5-203 would be violated by reasonable school guidelines, which further important educational and safety goals, such as the ones at issue here.  The Guidelines, as explained above, are a reasonable exercise of MCPS' authority and obligation.  Section § 5-203 does not provide a basis for parents to oust public schools of that authority merely because they disagree with a judgment the schools have made about how best to ensure a safe and supportive learning environment.  Count I therefore fails as a matter of law.

## IV.   THE GUIDELINES DO NOT VIOLATE MARYLAND REGULATIONS (COUNT II)

In Count II, Plaintiffs assert that Defendants "by promulgation of, and by putting into effect, the MCPS Policy of withholding information from parents directly related to their minor children's support, care, nurture, welfare, and education have violated Chapter 13a.08.02 of the Maryland Code of Regulations."  Compl. ¶ 55.  Plaintiffs contend that "MCPS Form 560-80 and

other written information about student gender identity are a 'student record' as defined in

§ 13a.18.02.03." *Id.* ¶ 53.[11]  Plaintiffs assert that Defendants "have directly hindered Plaintiff

Parents from gaining access to their children's student records and from exercising their rights

under the chapter," and that Defendants "by promulgating and putting into effect MCPS Form

560-80 and by distributing the form have specifically intended to avoid complying with the

provisions of Chapter 13a.18.02." *Id.* ¶¶ 55-56.

Plaintiffs' claims of a violation of COMAR 13A.08.02 are without merit.  That section of

the Code of Maryland Regulations generally governs the treatment of student records, including

such matters as confidentiality, access by students and parents, and rights to correct erroneous

entries.  Even if any forms at issue here might constitute a "student record" under the Code, the

provisions cited by Plaintiffs do not give parents unfettered access to the school documents they

seek.  Rather, parental access to student records is to be "in conference with appropriate school

personnel." COMAR 13A.08.02.04.  That regulation allows for the reasonable exercise of school

personnel judgment that, on rare occasions, parent access to particular information about a

student may jeopardize the student's health or safety.

The Guidelines and Form 560-80 satisfy the COMAR provision for parental access "in

conference with appropriate school personnel."  They evince no intent to broadly exclude parents

from discussion about their children.  To the contrary, they note that a student's "gender support

plan" should be developed "in collaboration with the student and the student's family (if the

family is supportive of the student)," and that in situations where a student's family is not

supportive, staff should "support the development of a student-led plan that works toward

---

[11] Plaintiffs presumably mean to refer to COMAR 13A.08.02, as COMAR 13A.18.02 concerns large family child-care homes.

inclusion of the family."  Compl. Ex. 1 at 2.  The Guidelines' directions that the "completed

form must be maintained in a secure location and may not be placed in the student's cumulative

or confidential files," and that "the form itself is not intended to be used or accessed by other

school staff members," Compl. Ex. 1 at 2, do not demonstrate an intent to conceal information

from parents.  Rather, the directions reflect a sensible precaution to ensure that highly sensitive

information about a student's most personal matters is limited to those who truly have a need to

know it and diminish the risk of inadvertently disclosing a student as transgender.

Form 560-80 itself indicates that "[p]arents/guardians may be involved [in completing the

form] if the student states that they are aware of and supportive of the student's gender identity."

Compl. Ex. 2 at 1.  Like the Guidelines, Form 560-80 on its face balances parental involvement

with student support and safety.  As discussed above, the form asks whether a student's parents

are aware of their gender identity, asks for a "Support Level" rating from one to ten, and asks:

"If support level is low, what considerations must be accounted for in implementing this plan?"

*Id.*

The Guidelines and Form 560-80 reflect no "[p]olicy of withholding information from

parents" that would violate COMAR 13A.08.02.  *See* Compl. ¶ 55.  Rather, there are multiple

provisions that provide for parental access to information "in conference with appropriate school

personnel," COMAR 13A.08.02.04, with exceptions only as necessary to ensure student safety

and privacy.  No case suggests that such a narrowly tailored exception would violate the general

principle of parental access to student records.  Nor does any case suggest that parents should

have free rein of school documents even in situations where access may place the student at risk.

*See* COMAR 13A.08.02.  As discussed above, MCPS is required to maintain a safe school

environment.  COMAR 13A.01.04.03 provides:  "All students in Maryland's public schools,

without exception and regardless of race, ethnicity, region, religion, gender, sexual orientation, language, socioeconomic status, age, or disability, have the right to educational environments that are:  A. Safe; B. Appropriate for academic achievement; and C. Free from any form of harassment."  The Guidelines and Form 560-80 plainly provide for parental access unless it would be unsafe.

Thus, no COMAR provisions have been violated, and Count II therefore fails as a matter of law.

**V.     PLAINTIFFS' CLAIMS UNDER SECTION 1983 ALSO MUST BE DISMISSED (COUNT VII)**

Given that all of Plaintiffs' preceding claims fail as a matter of law, Plaintiffs have no basis to assert their claim under 42 U.S.C. § 1983.  In Count VII, Plaintiffs allege that Defendants "have, under color of law, deprived Plaintiff Parents of their rights, privileges, or immunities secured by the United States and Maryland Constitutions and federal and state laws and regulations[.]"  Compl. ¶ 94.  But as detailed above, Defendants have not, as a matter of law, violated any of the constitutional or statutory provisions identified by Plaintiffs.  Plaintiffs' Section 1983 claim therefore has no grounding in any substantive law, and should be dismissed. *See Clear Sky Car Wash LLC v. City of Chesapeake, Va.*, 743 F.3d 438, 444 (4th Cir. 2014) ("Section 1983 … does not confer any substantive rights; rather, it supplies a remedy for rights conferred by other federal statutes or by the Constitution."); *Gonzaga Univ.*, 536 U.S. at 285 ("§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States.  One cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything.") (citation omitted; cleaned up).

Moreover, even if Plaintiffs could establish an infringement of an actual statutory or constitutional right—and they cannot—the individual Defendants would be entitled to qualified

31

immunity to Plaintiffs' request for damages against them in their individual capacities.  *See* Compl. ¶ 14.  It is undeniable that no statutory or constitutional right was "clearly established" at the time of alleged violation.  *Cole v. Buchanan Cnty. Sch. Bd.*, 328 F. App'x 204, 208 (4th Cir. 2009) ("The right that an official is alleged to have violated must be 'clearly established' not merely as a general proposition … but 'in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'") (citation omitted).  Plaintiffs' generalized claim of a right to direct the upbringing of their children is insufficient; they point to no case law previously establishing the specific constitutional right they invoke—the right to be informed about their children's gender identity while at school—or even suggesting that the Guidelines would violate such a right.  To the contrary, uniform case law, including in the Fourth Circuit, rejects such propositions.  *See supra*, pp. 10-17.   Moreover, Md. Code, Cts. & Jud. Proc. § 5-518 provides that "a county board member is immune as an individual from civil liability for any act or omission if the member is acting:  (i) Within the scope of the member's authority; (ii) Without malice; and (iii) In a discretionary capacity."  Plaintiffs have not alleged that the individual Defendants acted outside the scope of their authority, acted with malice, or were not acting in a discretionary capacity.

Thus, since Defendants have not violated any of the constitutional or statutory provisions identified by Plaintiffs, Plaintiffs' claim under Section 1983 fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted, and the Complaint should be dismissed with prejudice for failure to state a claim upon which relief may be granted.

Dated:  February 5, 2021

Respectfully submitted,

MONTGOMERY COUNTY BOARD OF
EDUCATION; SHEBRA L. EVANS, BRENDA
WOLFF, JEANETTE E. DIXON, JUDITH
DOCCA, PATRICIA B. O'NEILL, KARLA
SILVESTRE, and REBECCA SMONDROWSKI,
*individually and in their official capacities as
Members of the Montgomery County Board of
Education*; and JACK R. SMITH, *individually and
in his official capacities as a Member of the
Montgomery County Board of Education and
Montgomery County Superintendent of Schools*

By Counsel

/s/ Alex Tucker Stewart
Paul R.Q. Wolfson (*Pro Hac Vice*)
Bruce M. Berman (*Pro Hac Vice*)
Alex Tucker Stewart (D. Md. Bar No. 19633)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000 (phone)
(202) 663-6363 (fax)
paul.wolfson@wilmerhale.com
bruce.berman@wilmerhale.com
alex.stewart@wilmerhale.com

Alan E. Schoenfeld (*Pro Hac Vice*)
Simon B. Kress (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 937-7518 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
simon.kress@wilmerhale.com

*Counsel for Defendants*