**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| JOHN and JANE PARENTS 1, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | Civil Action No. 8:20-cv-3552-PWG |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MONTGOMERY COUNTY BOARD OF | ) | |
| EDUCATION, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## <u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>

Defendants Montgomery County Board of Education, Shebra L. Evans, Brenda Wolff, Jeanette E. Dixon, Judith Docca, Patricia B. O'Neill, Karla Silvestre, Rebecca Smondrowski, and Jack R. Smith ("Defendants") respectfully provide this notice of supplemental authority. On August 10, 2021, the United States Court of Appeals for the Fourth Circuit issued the attached opinion affirming Judge Messitte's decision in *Bauer v. Elrich*, 468 F. Supp. 3d 704 (D. Md. 2020). *Bauer v. Elrich*, No. 20-1707, 2021 WL 3502643 (4th Cir. Aug. 10, 2021). The Fourth Circuit held that state law cannot supply a cause of action to enforce a federal statute that Congress has not made privately enforceable, as Defendants argued at pages 22-23 of their motion to dismiss and pages 13-14 of their reply, citing Judge Messitte's opinion.

Dated:  August 11, 2021

Respectfully submitted,

MONTGOMERY COUNTY BOARD OF
EDUCATION; SHEBRA L. EVANS, BRENDA
WOLFF, JEANETTE E. DIXON, JUDITH
DOCCA, PATRICIA B. O'NEILL, KARLA
SILVESTRE, and REBECCA SMONDROWSKI,
*individually and in their official capacities as*
*Members of the Montgomery County Board of*
*Education*; and JACK R. SMITH, *individually and*
*in his official capacities as a Member of the*
*Montgomery County Board of Education and*
*Montgomery County Superintendent of Schools*

By Counsel

/s/ Alex Tucker Stewart
Bruce M. Berman (*Pro Hac Vice*)
Alex Tucker Stewart (D. Md. Bar No. 19633)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6000 (phone)
(202) 663-6363 (fax)
bruce.berman@wilmerhale.com
alex.stewart@wilmerhale.com

Alan E. Schoenfeld (*Pro Hac Vice*)
Simon B. Kress (*Pro Hac Vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 937-7518 (phone)
(212) 230-8888 (fax)
alan.schoenfeld@wilmerhale.com
simon.kress@wilmerhale.com

*Counsel for Defendants*

**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1707

SHARON BAUER; RICHARD JURGENA,

Plaintiffs - Appellants,

v.

MARC ELRICH, in his official capacity as Montgomery County Executive; RAYMOND L. CROWEL, in his official capacity as Director of Montgomery County Department of Health and Human Services,

Defendants - Appellees,

UNITED STATES OF AMERICA,

Intervenor,

-------------------------------

STATE OF MARYLAND; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF MASSACHUSETTS; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; STATE OF VIRGINIA; STATE OF WASHINGTON; DISTRICT OF COLUMBIA; CITIES, COUNTIES, THE INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION, AND THE U.S. CONFERENCE OF MAYORS; CITY OF LOS ANGELES, CA; CITY OF OAKLAND, CA; CITY OF CHICAGO, IL; CITY OF SEATTLE, WA; COUNTY OF KING, WA; INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION; U.S. CONFERENCE OF MAYORS,

Amici Supporting Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Peter J. Messitte, Senior District Judge. (8:20−cv−01212−PJM)

Argued:  May 5, 2021                    Decided:  August 10, 2021

Before GREGORY, Chief Judge, and KEENAN and QUATTLEBAUM, Circuit Judges.

Affirmed by published opinion.  Judge Keenan wrote the majority opinion, in which Chief Judge Gregory concurred.  Judge Quattlebaum wrote a dissenting opinion.

**ARGUED:**    Michael Bekesha, JUDICIAL WATCH, INC., Washington, D.C., for Appellants.  Catherine Carroll, WILMERHALE LLP, Washington, D.C., for Appellees. Lindsey Powell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.    **ON BRIEF:**    Paul R.Q. Wolfson, Leon T. Kenworthy, Alex Hemmer, Alexandra Stewart, WILMERHALE LLP, Washington, D.C.; Marc P. Hansen, County Attorney, John P. Markovs, Deputy County Attorney, OFFICE OF THE COUNTY ATTORNEY, Rockville, Maryland, for Appellees.  Jeffrey Bossert Clark, Acting Assistant Attorney General, Daniel Tenny, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor.  Brian E. Frosh, Attorney General, Steven M. Sullivan, Solicitor General, Jeffrey P. Dunlap, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Amicus State of Maryland.    William Tong, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF CONNECTICUT, Hartford, Connecticut, for Amicus State of Connecticut. Kathleen Jennings, Attorney General, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware, for Amicus State of Delaware.  Karl A. Racine, Attorney General, OFFICE OF THE ATTORNEY GENERAL FOR THE DISTRICT OF COLUMBIA, Washington, D.C., for Amicus District of Columbia.  Maura Healey, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MASSACHUSETTS, Boston, Massachusetts, for Amicus Commonwealth of Massachusetts.  Keith Ellison, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MINNESOTA, St. Paul, Minnesota, for Amicus State of Minnesota.  Gurbir S. Grewal, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NEW JERSEY, Trenton, New Jersey, for Amicus State of New Jersey.  Hector Balderas, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NEW MEXICO, Santa Fe, New Mexico, for Amicus State of New Mexico. Letitia James, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF NEW YORK, New York, New York, for Amicus State of New York.  Ellen F. Rosenblum, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF OREGON, Salem, Oregon, for Amicus State of Oregon.  Mark R. Herring, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Amicus Commonwealth of Virginia.  Robert W. Ferguson, Attorney General, OFFICE OF THE ATTORNEY GENERAL OF WASHINGTON, Olympia, Washington, for Amicus State of Washington.  Michael N. Feuer, City Attorney, Kathleen A. Kenealy, Chief Assistant

City Attorney, Danielle L. Goldstein, Deputy City Attorney, Michael J. Dundas, Deputy City Attorney, OFFICE OF THE LOS ANGELES CITY ATTORNEY, Los Angeles, California, for Amicus City of Los Angeles. Charles W. Thompson, Jr., Executive Director and General Counsel, Amanda Kellar, Deputy General Counsel, INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION, Rockville, Maryland, for Amicus International Municipal Lawyers Association. John Daniel Reaves, General Counsel, THE UNITED STATES CONFERENCE OF MAYORS, Washington, D.C., for Amicus United States Conference of Mayors. Peter S. Holmes, City Attorney, OFFICE OF THE CITY ATTORNEY OF SEATTLE, Seattle, Washington, for Amicus City of Seattle, Washington. Daniel T. Satterberg, Prosecuting Attorney, David J. Hackett, Senior Deputy Prosecutor, KING COUNTY PROSECUTOR'S OFFICE, Seattle, Washington, for Amicus King County, Washington. Barbara J. Parker, City Attorney, OAKLAND CITY ATTORNEY'S OFFICE, Oakland, California, for Amicus City of Oakland, California. Mark A. Flessner, Corporation Counsel, Benna Ruth Solomon, Deputy Corporation Counsel, Justin A. Houppert, Senior Assistant Corporation Counsel, CITY OF CHICAGO DEPARTMENT OF LAW, Chicago, Illinois, for Amicus City of Chicago, Illinois.

———————

BARBARA MILANO KEENAN, Circuit Judge:

The plaintiffs in this case, two taxpayers in Montgomery County, Maryland (the County), filed suit in Maryland state court against two County officials, challenging a program established by the Montgomery County Council to combat the economic hardships suffered by County residents during the Covid-19 pandemic. The program at issue, the Emergency Assistance Relief Payment Program (the EARP), provides cash assistance to residents, including foreign nationals present in the country without documentation, who meet certain income requirements and do not qualify for state or federal pandemic-related aid.

The plaintiffs asserted that the EARP violates a federal statute, 8 U.S.C. § 1621(a), which, subject to a few exceptions, generally prohibits undocumented persons from receiving state and local benefits. Recognizing that Section 1621 does not authorize private enforcement, the plaintiffs styled their claim as arising under the Maryland common law doctrine of taxpayer standing (the Maryland taxpayer standing doctrine, or the standing doctrine), which "permits taxpayers to seek the aid of courts, exercising equity powers, to enjoin illegal and *ultra vires* acts of [Maryland] public officials where those acts are reasonably likely to result in pecuniary loss to the taxpayer." *Floyd v. Mayor & City Council of Balt.*, 205 A.3d 928, 937 (Md. 2019) (citation omitted).

The County officials removed the case to federal court. After determining that it had federal question jurisdiction under 28 U.S.C. § 1331, the court granted summary judgment to the County officials, concluding that the plaintiffs could not maintain their claim because Section 1621 does not provide a private right of action.

4

Upon our review, we agree with the district court.  The plaintiffs' claim depends entirely on our interpretation of a federal statute, a substantial federal question for purposes of subject matter jurisdiction.  However, Congress has declined to authorize private parties to enforce Section 1621, a legislative decision that cannot be circumvented by invocation of a state's law of taxpayer standing.  We therefore affirm the district court's grant of summary judgment to the County officials.

## I.

The Montgomery County Council established the EARP in March 2020 to provide emergency cash assistance to County residents with incomes equal to or less than 50% of the federal poverty benchmark who were not eligible for federal or state pandemic relief.  In setting the eligibility requirements for the EARP, the County explicitly sought to "fill the gaps" in assistance for persons who were not eligible for pandemic-related aid offered by the federal government or the state of Maryland.  Although eligibility for EARP aid is not dependent on a person's status as an undocumented immigrant, such individuals are eligible to receive EARP payments if they otherwise satisfy the income qualifications.  To fund the EARP, the County Council appropriated $10,000,000 from the County's reserve funds to the operating budget of the County's Department of Health and Human Services.

Shortly after the EARP was established, the plaintiffs, two taxpayers in Montgomery County, filed the present suit in Maryland state court against Marc Elrich, the Montgomery County Executive, and Raymond Crowel, the Director of the County Department of Health and Human Services (the County defendants), both in their official

capacities.  The plaintiffs alleged that, as Maryland taxpayers, they "have the right to initiate a suit in equity to enjoin illegal acts of public officials where those acts are reasonably likely to result in pecuniary loss to the taxpayers."  In the sole count of the complaint, the plaintiffs alleged that, by "disburs[ing] direct cash payments to unlawfully present aliens," the EARP "violates 8 U.S.C. § 1621(a)," a federal statute that generally prohibits undocumented persons from receiving public benefits from state and local governments.  According to the plaintiffs, this unlawful distribution of County funds has caused County taxpayers to "suffer pecuniary injury."  The plaintiffs sought (1) a declaratory judgment that providing EARP benefits to undocumented persons violates Section 1621, and (2) an injunction prohibiting the County from continuing to distribute EARP funds to undocumented immigrants residing in the County.

The defendants removed the case to federal district court in Maryland.  They asserted federal question jurisdiction under 28 U.S.C. § 1331 based on the plaintiffs' allegation that the EARP violates Section 1621.  The district court concluded that it had jurisdiction under Section 1331, because the plaintiffs' claim "cannot be resolved without determining the substance of 8 U.S.C. § 1621 and whether [the defendants] have violated its terms."  The court nevertheless dismissed the plaintiffs' complaint, concluding that they could not use the Maryland taxpayer standing doctrine to challenge the County's actions based on Section 1621 when the federal statute itself did not include a private right of action.  The plaintiffs appealed.[1]

---

[1] We later granted the United States government's motion to intervene in the appeal.

II.

The plaintiffs first argue that the district court lacked subject matter jurisdiction and, therefore, should have remanded the case to state court.[2]  According to the plaintiffs, their action does not raise a substantial federal question because their claim is based on the Maryland taxpayer standing doctrine, and the defendants' violation of federal law is merely an element of their state law claim.  The plaintiffs also contend that exercising federal jurisdiction would infringe on the proper balance between state and federal courts.  We disagree with the plaintiffs' arguments.[3]

A defendant may remove a case to federal court only if the plaintiff's claims "could have been brought in federal court originally, based on some independent source of federal jurisdiction." *Burrell v. Bayer Corp.*, 918 F.3d 372, 378 (4th Cir. 2019).  In the present case, the defendants asserted federal question jurisdiction under 28 U.S.C. § 1331, which grants jurisdiction to federal district courts over "all civil actions arising under the Constitution, laws, or treaties of the United States."  A case "arises under" federal law when, based on the allegations in the complaint, "federal law creates the cause of action" or "a state-law cause of action implicat[es] a 'significant' federal issue." *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 181 (4th Cir. 2014) (citation omitted).  When, as here, a plaintiff asserts a state law cause of action, the claim nevertheless "arises under"

---

[2] Although the plaintiffs did not raise this argument in the district court, we must assure ourselves of federal jurisdiction. *Trump v. Hawaii*, 138 S. Ct. 2392, 2415-16 (2018).

[3] We agree with the parties that the plaintiffs have Article III standing as municipal taxpayers to challenge the EARP.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 349 (2006); *Koenick v. Felton*, 190 F.3d 259, 263-64 (4th Cir. 1999).

federal law if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). Under this test, the "mere presence of a federal issue in a state cause of action" is insufficient to confer federal jurisdiction but, instead, the federal issue must "be important to the federal system as a whole." *Burrell*, 918 F.3d at 380 (citations and alterations omitted).

We conclude that the plaintiffs' claim raises a substantial federal issue because, at its core, the claim seeks to enforce a federal statute.[4] Although the plaintiffs attempt to use the Maryland taxpayer standing doctrine as the procedural vehicle for their claim, they do not seek to advance any state law right or enforce any duty established under state law. Instead, their complaint contains a single theory of liability, namely, that the County defendants' implementation of the EARP violates a federal law. Accordingly, resolution of the plaintiffs' claim necessarily requires a court to interpret various terms in Section 1621 to determine whether the EARP is consistent with the statutory scheme enacted by Congress. Such a claim is not a "garden variety" state law claim that merely implicates a federal standard. *Id.* at 387. Rather, the central question of statutory construction

---

[4] The plaintiffs' claim necessarily raises a substantial issue of federal law that actually is disputed. *Grable*, 545 U.S. at 314. Because the plaintiffs alleged that the EARP violates a federal statute, they cannot "establish all the necessary elements entirely independently of federal law." *Burrell*, 918 F.3d at 382. The parties also strongly dispute whether the EARP complies with the requirements of Section 1621(d), which establishes procedures by which states may authorize undocumented persons to receive state and local benefits.

8

constitutes a paradigmatic "substantial" federal issue. *See Grable*, 545 U.S. at 315 ("The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court.").

For the same reasons, exercising federal jurisdiction would not disrupt the "congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. Suits seeking to interpret and enforce a federal law like Section 1621 are properly brought in federal court and do not undermine state courts' ability to resolve questions of state law. *See id.* at 310 (noting that "the national interest in providing a federal forum for federal tax litigation is sufficiently substantial" for federal question jurisdiction). Moreover, Section 1621 effectuates the federal government's interest in prescribing the circumstances under which undocumented immigrants can receive public benefits, a Congressional act that forms the basis of the plaintiffs' complaint. Given the fundamentally federal nature of the claim, exercising jurisdiction in this case will not result in a flood of state law claims into federal court. *See Burrell*, 918 F.3d at 380.

Ultimately, the plaintiffs' attempted use of state law as the procedural vehicle for their cause of action does not alter the substance of their allegation, namely, that the County defendants' implementation of the EARP violates a federal statute, Section 1621. We therefore conclude that the district court properly exercised jurisdiction in this case.

III.

We turn to consider the plaintiffs' contention that the district court erred in dismissing the complaint due to the absence of a private right of action. While the plaintiffs

do not dispute that Section 1621 lacks any provision authorizing a private right of action, they contend that they may seek enforcement of this federal statute under the Maryland taxpayer standing doctrine. Thus, in the plaintiffs' view, a violation of federal law merely is an element of their cause of action authorized under Maryland law. We disagree with the plaintiffs' argument.

Under Maryland common law, taxpayers may "seek the aid of courts, exercising equity powers, to enjoin illegal and *ultra vires* acts of [Maryland] public officials where those acts are reasonably likely to result in pecuniary loss to the taxpayer." *Floyd*, 205 A.3d at 937 (citation omitted). The Maryland taxpayer standing doctrine combines "the traditionally distinct concepts of standing and cause of action into a single analytical construct, labeled as standing, to determine whether the plaintiff has shown that he or she is entitled to invoke the judicial process in a particular instance." *State Ctr., LLC v. Lexington Charles Ltd. P'ship*, 92 A.3d 400, 430 (Md. 2014) (citation, internal quotation marks, and alterations omitted). A taxpayer asserting a cause of action under the standing doctrine must show that: (1) she is a taxpayer, (2) the suit is brought on behalf of all taxpayers, (3) "an action by a municipal corporation or public official is illegal or *ultra vires*," and (4) the illegal action "reasonably may result in a pecuniary loss to the taxpayer or an increase in taxes." *Floyd*, 205 A.3d at 938 (citation omitted).

The Maryland taxpayer standing doctrine does not grant any substantive rights to Maryland taxpayers, but merely confers standing in state court for taxpayers to enforce a right or obligation imposed by some other provision of law. *See id.* at 937-38 (describing elements of taxpayer standing); *id.* at 945 (explaining that taxpayers' action sought to

10

vindicate due process rights); *Anne Arundel Cnty. v. Bell*, 113 A.3d 639, 664 (Md. 2015) (listing examples of taxpayer challenges to executive and legislative actions).  Thus, the plaintiffs in the present case do not assert any substantive duty or right provided under the standing doctrine, or even a right defined under Maryland law.  Instead, the sole theory of liability advanced in the complaint is the County defendants' alleged violation of Section 1621, which provides in relevant part:

> A [s]tate may provide that an alien who is not lawfully present in the United States is eligible for any [s]tate or local public benefit for which such alien would otherwise be ineligible under subsection (a) [generally prohibiting undocumented persons from receiving state and local benefits] only through the enactment of a [s]tate law after August 22, 1996, which affirmatively provides for such eligibility.

8 U.S.C. § 1621(d).

As an initial matter, we agree with the parties that Section 1621 does not contain a private right of enforcement.  In addition to lacking any explicit reference to a private right of action, "[b]y its terms," Section 1621 "grants no private rights to any identifiable class" and does not purport to protect or benefit state taxpayers like the plaintiffs.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-84 (2002) (citation omitted).

The lack of a private right of action in Section 1621 is fatal to the plaintiffs' claim.  Because federal law creates the substantive requirement that the plaintiffs seek to enforce, we look to federal law to determine whether a private remedy is authorized.  *See Moor v. Cnty. of Alameda*, 411 U.S. 693, 698-710 (1973).  The existence of a private right of action in a federal statute is a pure question of Congressional intent.  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Statutory intent [regarding the existence of a private remedy] is

11

determinative."). Given this exclusively legislative role, "courts may not create" a private remedy without evidence of Congress' intent to do so. *Id.* at 286-87; *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (noting that it is typically a legislative, rather than judicial, function to determine whether a particular remedy is authorized). And, as discussed above, it is undisputed that Congress did not authorize private enforcement of Section 1621.

The plaintiffs cannot evade this fundamental principle by invoking Maryland's taxpayer standing doctrine to excuse the lack of a Congressionally authorized right of action. As the Supreme Court recently emphasized, "like substantive federal law itself, private rights of action to enforce federal law must be *created by Congress*." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020) (quoting *Alexander*, 532 U.S. at 286-87) (alteration omitted) (emphasis added); *see also Moor*, 411 U.S. at 703-04 (concluding that 42 U.S.C. § 1988 had not "authorize[d] the wholesale importation into federal law of state causes of action"). State courts are not free to ignore the Congressional decision whether to couple a substantive federal requirement with a private right of enforcement; the Supremacy Clause binds state courts to follow Congressional directives embodied in federal statutes. U.S. Const. art. VI, cl. 2. Were we to agree with the plaintiffs' view, state common law would govern whether and how a

federal statute may be enforced, irrespective of Congressional intent. Such a rule not only would run afoul of common sense, but also would violate basic constitutional principles.[5]

The Supreme Court's decision in *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), further illustrates the deficiency of the plaintiffs' position. Although the case arose in a different regulatory context, the Court in *Astra USA* rejected a plaintiff's attempt to circumvent Congress' omission of a private right of action in a federal statute by seeking to enforce a federal right under a state law theory. *Id.* at 113-14. The plaintiff public hospital system sued various pharmaceutical companies, claiming that the companies had violated a federal law that established price ceilings for pharmaceutical products. *Id.* at 113, 116. There, as here, the parties agreed that the federal statute did not contain a private right of action permitting a challenge to pharmaceutical pricing. *Id.* at 113. The plaintiff nevertheless rested its claim on principles of state contract law, alleging that the pharmaceutical companies had breached their contracts with the federal government, to which the plaintiff claimed to be a third-party beneficiary. *Id.* at 113-14.

The Supreme Court declined the plaintiff's attempt to bring a breach of contract claim that was "in substance one and the same" as a suit to enforce the governing statute directly. *Id.* at 114. The Court emphasized the settled principle that "[r]ecognition of any private right of action for violating a federal statute . . . must ultimately rest on

---

[5] Moreover, it is not clear that Maryland courts would recognize a taxpayer standing cause of action to enforce a federal statute, particularly when the federal law does not include a private right of action. The plaintiffs do not identify any Maryland precedent authorizing such a suit.

congressional intent to provide a private remedy." *Id.* at 117 (citation omitted). With respect to the plaintiff's contract claim, the Court explained:

> A third-party suit to enforce [the contract] . . . is in essence a suit to enforce the statute itself. The absence of a private right to enforce the statutory ceiling-price obligations would be rendered meaningless if [drug purchasers] could overcome that obstacle by suing to enforce the contract's ceiling-price obligations instead. The statutory and contractual obligations, in short, are one and the same.

*Id.* at 118. Under such circumstances, permitting a breach of contract suit "would allow third parties to circumvent Congress's decision not to permit private enforcement of the statute." *Id.* at 119 n.4 (internal quotation marks and alteration omitted); *see also Grochowski v. Phoenix Constr.*, 318 F.3d 80, 85-86 (2d Cir. 2003) (state law contract claims could not be used as "end-run" around federal statute that did not authorize private right of action).

The same reasoning applies to the plaintiffs' reliance on the Maryland taxpayer standing doctrine. The essence of the plaintiffs' claim, and their sole theory of wrongdoing, is that the County defendants' implementation of the EARP violated Section 1621, which does not authorize private enforcement. The plaintiffs cannot use the procedural mechanism of Maryland taxpayer standing to bring a claim that is "one and the same"[6] as a purported enforcement action brought directly under Section 1621. *Id.* at 114, 118; *cf.*

---

[6] Notably, the Supreme Court in *Astra USA* characterized the plaintiff's contract claim as "one and the same" as a suit brought directly under the price-ceiling statute, despite the fact that a contract claim involved different elements. 563 U.S. at 114, 118. Similarly, although a Maryland taxpayer claim requires proof of certain elements specific to that cause of action, such as pecuniary loss to the taxpayer, the ultimate goal of the plaintiffs' claim here is to enforce the federal statute.

14

*Howlett v. Rose*, 496 U.S. 356, 376 (1990) ("A State may not, by statute or common law, create a cause of action under § 1983 against an entity whom Congress has not subjected to liability." (citing *Moor*, 411 U.S. at 698-710)).

Our conclusion is not altered by the plaintiffs' reliance on *Clark v. Velsicol Chemical Corporation*, 944 F.2d 196 (4th Cir. 1991), and *Mulcahey v. Columbia Organic Chemicals Company*, 29 F.3d 148 (4th Cir. 1994), in which we held that we lacked federal jurisdiction over state law claims of negligence *per se* that were based on a failure to comply with federal requirements. In those state law claims, the plaintiffs sought to use a federal standard to prove an element of their negligence actions. Following Supreme Court precedent, we concluded that the state law claims did not raise a substantial federal question, but we did not comment on the viability of the asserted state law causes of action. *See Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 809-14 (1986)*; Clark*, 944 F.2d at 198-99; *Mulcahey*, 29 F.3d at 151-54; *see also Burrell*, 918 F.3d at 377, 385-86 (state law negligence claims relying on violation of federal Food, Drug, and Cosmetic Act did not raise substantial federal question).

This precedent is readily distinguishable from the plaintiffs' reliance on a claim based on the Maryland taxpayer standing doctrine.[7] In *Clark* and *Mulcahey*, the state had

---

[7] We similarly reject the plaintiffs' reliance on *Dixon v. Coburg Dairy, Incorporated*, 369 F.3d 811, 814 (4th Cir. 2004) (en banc), in which we held that we lacked jurisdiction over a plaintiff's South Carolina claim that his employer had unlawfully terminated him for expressing his political opinion. We concluded that the claim did not necessarily raise a federal issue, because the plaintiff alleged that his employer had separately violated both state and federal law. *Id.* at 816-18. In contrast, here, there is no dispute that the plaintiffs' claim necessarily raises the question whether a federal statute was violated, and the plaintiffs do not alternatively claim that the EARP violates state law.

15

imposed a common law duty on the defendants to exercise reasonable care in conducting their chemical manufacturing and distribution businesses and had provided a right of action for individuals who were harmed by a violation of that duty. *Clark*, 944 F.2d at 197-98; *Mulcahey*, 29 F.3d at 149-50, 154. In those cases, the federal standards merely served as evidence that the state law duty had been violated. In contrast, here, the Maryland taxpayer standing doctrine does not confer any substantive rights on taxpayers, nor does the doctrine impose any duties on County public officials.[8] Therefore, we reject the plaintiffs' attempt to use a Maryland cause of action to enforce Section 1621, when Congress has declined to authorize private enforcement of the statute.

We of course agree with our dissenting colleague's conclusion that, under the Supreme Court's decision in *Grable*, 545 U.S. 308, a federal cause of action is not required for federal jurisdiction. We disagree, however, with the dissent's assertion that the plaintiffs' Maryland taxpayer standing action is akin to a negligence *per se* claim that relies on a federal standard of care. Were we to accept that proposition, the plaintiffs' claim would be limited to state court under *Merrell Dow*, 478 U.S. 804, and *Burrell*, 918 F.3d 372, which held that such state law claims do not raise substantial federal questions. The counterintuitive consequences of such a rule illustrate its infirmity. Under this view, the plaintiffs' claim, exclusively alleging a violation of federal law, could *only* be brought in state court. Therefore, we reject such a conclusion and hold that the plaintiffs' claim raises

---

[8] We observe that our opinions in *Clark*, *Mulcahey*, and *Dixon* were issued before the Supreme Court's decision in *Grable*, 545 U.S. 308, which clarified the circumstances under which state claims raise sufficiently substantial federal issues to support federal jurisdiction.

a substantial federal question, but that the plaintiffs have no right to enforce the federal statute in question.  These conclusions are not only compelled by Supreme Court and Circuit precedent, but also promote the required allocation of responsibility between state and federal courts, and between the judicial and legislative branches of government.

IV.

In sum, we conclude that removal was proper in this case, because the district court had subject matter jurisdiction under Section 1331.  We also hold that the district court properly granted summary judgment to the defendants based on the lack of a private right of action under Section 1621.  We therefore affirm the district court's judgment.

*AFFIRMED*

QUATTLEBAUM, Circuit Judge, dissenting:

I agree with my colleagues in the majority that the district court had subject-matter jurisdiction. I write separately, however, on the issue of Article III standing, which is an issue that I believe should preclude the Taxpayers' claim. While Supreme Court precedent compels the result that municipal taxpayer claims can satisfy Article III standing, that precedent, which is one hundred years old, seems logically inconsistent with the Supreme Court's recent precedent. Therefore, I respectfully submit that the doctrine of municipal taxpayer standing should be reconsidered by the Supreme Court.

I also have a different view on the merits of the Taxpayers' claim. I see no reason, as a general rule, why Maryland—either through its legislative process or by common law—could not provide taxpayers with a private right of action to enjoin an expenditure of money by state or local officials that violates federal law regardless of whether any private right of action exists in the underlying federal law. The limitation of this principle, however, lies with the Supremacy Clause of the Constitution and the preemption doctrine. Since the district court did not address the issue of whether Maryland recognizes a state law cause of action or whether that cause of action is preempted in this case, I would reverse the judgment of the district court and remand for further proceedings.

## I.

I begin with Article III standing. The parties did not brief this issue and below they appear to agree that the Taxpayers have Article III standing; therefore, the majority opinion did not address the issue. Even so, we must independently satisfy ourselves of that fact.

*See Juidice v. Vail*, 430 U.S. 327, 331 (1977) ("Although raised by neither of the parties, we are first obliged to examine the standing of appellees, as a matter of the case-or-controversy requirement associated with Art. III, to seek injunctive relief in the District Court.").

Article III's standing requirements are jurisdictional, and "[t]he burden of establishing standing to sue lies squarely on the party claiming subject-matter jurisdiction." *Frank Krasner Enterprises, Ltd. v. Montgomery Cnty., Md.*, 401 F.3d 230, 234 (4th Cir. 2005). Indeed, we have held that "[t]he standing doctrine is an indispensable expression of the Constitution's limitation on Article III courts' power to adjudicate 'cases and controversies.'" *Id.* "Our cases have established that the irreducible constitutional minimum of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

The Article III question here involves municipal taxpayer standing. It is well-settled that, for Article III purposes, federal and state taxpayer status does not confer standing to bring a challenge in federal court. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342–46 (2006) (generally rejecting state and federal taxpayer standing). However, the Taxpayers rely on the fact that they pay county taxes, not federal or state taxes, and they assert that Supreme Court precedent permits municipal taxpayers to have Article III standing. *See Massachusetts v. Mellon*, 262 U.S. 447, 486 (1923) ("The interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the

remedy by injunction to prevent their misuse is not inappropriate."). And we also have precedent that broadly interprets municipal taxpayer standing. *See Koenick v. Felton*, 190 F.3d 259, 263 (4th Cir. 1999) (finding taxpayer standing when a Montgomery County plaintiff was "injured by the expenditures of her tax revenues" to pay for school holidays on certain religious days because the plaintiff "is a taxpayer who indirectly bears the burden of funding a paid public school holiday"). Both parties acknowledge that, under *Koenick*, the Taxpayers have Article III standing.[1]

I think they are right. Although almost one hundred years old, the Supreme Court's precedent in *Mellon* is clear. And our Court has followed suit in *Koenick*. We are, therefore, constrained to follow that precedent and find that the Taxpayers have Article III standing.

But with respect to the Supreme Court and our Court, I think that precedent should be revisited. Municipal taxpayer standing is not materially different from state or federal taxpayer standing. To illustrate, I focus on the Supreme Court's *DaimlerChrysler* decision, which involved a claim by taxpayers that a state franchise tax and local property tax waiver for a jeep manufacturer violated the Commerce Clause. 547 U.S. at 337–38. The taxpayers filed suit in state court, and the defendants removed the case to federal court. *Id.* at 339. The district court concluded that neither tax benefit violated the Commerce Clause. *Id.* at 340. The Sixth Circuit "agreed with the District Court as to the municipal property tax

---

[1] In the district court, the County noted that the dicta in *DaimlerChrysler* and our decision in *Koenick* are "in considerable tension with other precedent addressing Article III standing" and "reserve[d] the right to argue that the Supreme Court should reject or cabin this theory of municipal taxpayer standing." *Bauer v. Elrich*, No. 8:20-cv-01212-PJM (D. Md., PACER No. 28-2 at 9 n.5).

exemption, but held that the state franchise tax credit violated the Commerce Clause." *Id.* The Supreme Court "granted certiorari to consider whether the franchise tax credit violates the Commerce Clause" and directed the parties to address the issue of Article III standing. *Id.*

Addressing the issue of taxpayer standing, the Court noted, "[w]e have been asked to decide an important question of constitutional law concerning the Commerce Clause. But before we do so, we must find that the question is presented in a 'case' or 'controversy' that is, in James Madison's words, 'of a Judiciary Nature.'" *Id.* at 342 (quoting 2 Records of the Federal Convention of 1787, p. 430 (M. Farrand ed. 1966)). The Court emphasized that federal courts frequently find no standing in federal or state taxpayer lawsuits "because the alleged injury is not concrete and particularized, but instead a grievance the taxpayer suffers in some indefinite way in common with people generally." *Id.* at 344 (internal citations and quotation marks omitted). Additionally, the Court stated that such injuries are typically "conjectural or hypothetical." *Id.* (internal quotation marks omitted). Applying that analysis to the taxpayers' challenge, the Court held that "[p]laintiffs' alleged injury is also 'conjectural or hypothetical' in that it depends on how legislators respond to a reduction in revenue, if that is the consequence of the [tax] credit." *Id.* Put differently, the Court found that "[e]stablishing injury requires speculating that elected officials will increase a taxpayer-plaintiff's tax bill to make up a deficit . . . ." *Id.* Given the broad discretion that state officials have in raising and spending money, the Court concluded that the taxpayers had no standing under Article III simply by virtue of their status as taxpayers. *Id.* at 346.

Interestingly, however, the specific issue we face today, municipal taxpayer standing, was not before the Court. *See id.* at 349 ("Plaintiffs here challenged the municipal property tax exemption as municipal taxpayers. That challenge was rejected by the Court of Appeals on the merits, and no issue regarding plaintiffs' standing to bring it has been raised."). Therefore, while *DaimlerChrysler* very narrowly interpreted state taxpayer standing, it left undisturbed prior cases that permit municipal taxpayers to sue. *See id.*

In my view, the same logic that led the Supreme Court to conclude state taxpayer standing did not satisfy Article III applies with equal force to municipal taxpayers. The decision of a municipality, like a state, to spend money on a certain matter does not sufficiently allege that a specific taxpayer will suffer a concrete monetary loss. As with a state, a city or county's overall revenue might increase from other sources so that no tax increase is needed. Or, municipal officials, just like state officials, could decide to offset the challenged expenditures with cuts to other programs. Of course, most municipalities have far fewer taxpayers than any single state. But the populations of some municipalities are enormous. It is illogical to treat the taxpayers of those large municipalities differently than those of smaller states. And even for smaller municipalities, the same principles apply. It is speculation and conjecture to allege that because a government approves certain spending, a taxpayer will incur losses in the way of increased taxes.

Worse still, prolonging municipal taxpayer standing opens federal courts, if there is a valid underlying cause of action, to resolving inherently political disputes. We are, in effect, sanctioning individuals who have any grievance with the fiscal policy of their local governments and a state law claim under which they can assert that grievance, to bring

those concerns to federal court. Essentially, we are deputizing thousands of private attorneys general to bring to federal courts matters that, to me, involve political disputes, not Article III cases or controversies. That does not mean the gripes are not legitimate. Nor does it mean that a state cannot create a mechanism for those disputes to be litigated in state courts. It just means federal courts are not the place to resolve them.

Despite my concerns, however, I concede that under current Supreme Court and Fourth Circuit precedent, the Taxpayers satisfy Article III's standing requirements. But I hope the doctrine of municipal taxpayer standing will be revisited—sooner rather than later—by the Supreme Court.

II.

Because we have subject-matter jurisdiction, we must next determine whether the district court properly granted summary judgment for the County on the merits. As noted above, the district court found that the Taxpayers' claim is barred because 8 U.S.C. § 1621 does not have a private right of action. On appeal, the Taxpayers claim that they have stated a valid state law claim "that rel[ies] on violations of federal law, even if the federal law does not provide a private right of action." Appellants' Br. at 13. The majority agrees with the district court. With respect to my colleagues, I disagree. Subject to limitations not yet raised here, a state may create a private right of action that relies on a violation of federal law. So I would remand for the district court to consider whether the Taxpayers have pled a valid state law claim.

Before explaining my disagreement, some background on the Maryland taxpayer standing cause of action is in order. In Maryland, "[t]he common law taxpayer standing doctrine permits taxpayers to seek the aid of courts, exercising equity powers, to enjoin illegal and *ultra vires* acts of public officials where those acts are reasonably likely to result in pecuniary loss to the taxpayer." *State Center, LLC v. Lexington Charles Ltd. P'ship*, 92 A.3d 400, 451 (Md. 2014). As far back as 1869, Maryland's highest court has recognized the importance of this doctrine in ensuring governments do not engage in unlawful acts:

> In this state the Courts have always maintained with jealous vigilance the restraints and limitations imposed by law upon the exercise of power by municipal and other corporations; and have not hesitated to exercise their rightful jurisdiction for the purpose of restraining them within the limits of their lawful authority, and of protecting the citizen from the consequence of their unauthorized or illegal acts.

> If the right to maintain such a bill as this be denied, citizens and property-holders residing or holding property within the limits of a municipal corporation, would be without adequate remedy to prevent the injury and damage which might result to them from the unauthorized or illegal acts of the municipal government, and its officers and agents.

*Mayor & City Council of Baltimore v. Gill*, 31 Md. 375, 395 (1869).

Importantly, Maryland's taxpayer standing doctrine "'provide[s] both the cause of action (or claim) and the right of the individual to assert the claim in the judicial forum.'" *Anne Arundel Cnty. v. Bell*, 113 A.3d 639, 649 (Md. 2015) (quoting *State Center*, 92 A.3d at 439). Consistent with that, Maryland courts have determined the elements of the claim. A plaintiff must prove "both a governmental action that is illegal or *ultra vires* and that the action may affect injuriously the taxpayer's property (meaning that it reasonably may result in a pecuniary loss to the taxpayer or an increase in taxes)." *Bell*, 113 A.3d at 662. In sum,

although Maryland courts at times refer to this doctrine in the context of standing, their decisions make clear that it both confers standing *and* creates a substantive, state law cause of action. *Id.* at 649.

With this understanding of the Maryland taxpayer cause of action in hand, I turn back to my disagreement with the district court and my good friends in the majority. I see nothing wrong, in general, with a state like Maryland creating a cause of action that uses a federal law as its standard for wrongful conduct. The majority is right that the wrongdoing here is based solely on an alleged violation of federal law. And, as they rightly note, § 1621 does not contain a private cause of action. But I part ways with the majority in its conclusion that this is necessarily fatal to the Taxpayers' claim.

States are separate sovereigns that should have the freedom, at least generally, to create causes of actions as they see fit. It is not the role of federal courts, or even necessarily Congress, to say what conduct a state may and may not declare wrongful. For example, had the Maryland legislature passed a law creating a statutory cause of action for any citizen that suffers a loss as a result of a local government in Maryland spending taxpayer funds in violation of a federal standard, I think Maryland should be able to do that. And if such a claim can be established by a state legislature, why not also by the common law?[2]

---

[2] And let's be clear. That is already done in other contexts. For example, states frequently allow plaintiffs to bring negligence *per se* claims based on the violation of federal law. I see no material difference between a negligence *per se* claim that uses only the violation of a federal law or regulation as one of its elements and a Maryland taxpayer claim that relies on the standards in § 1621. By treating these claims differently, we seem to have relegated Maryland taxpayer standing claims to some inferior category of claims without justification.

In my view, the Maryland courts have done just that—created a state common law cause of action that confers substantive rights on taxpayers and duties on Maryland public officials. And I do not agree with the majority that the Supreme Court's decision in *Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110 (2011), compels a different result. In *Astra*, the operator of several healthcare facilities sued nine pharmaceutical manufacturers, alleging they were overcharging the facilities for prescription drugs in violation of the manufacturers' contracts with the federal government and a federal statute that set price ceilings. *Id.* at 116. The plaintiff claimed that, "[w]hen the Government uses a contract to secure a benefit, . . . the intended recipient acquires a right to the benefit enforceable under *federal common law*." *Id.* at 118 (emphasis added). Importantly, the claim was based "on allegations that the manufacturers charged more than the [statutory] ceiling price, not that they violated any independent substantive obligation arising only from the [contracts]." *Id.* at 118–19 (internal citation omitted). The Supreme Court noted the absence of a private right of action in the underlying federal statute; however, it ultimately rejected the claim because allowing such lawsuits would undermine the government's efforts to administer the statutory requirement "harmoniously and on a uniform, nationwide basis." *Id.* at 120. Essentially, the Court's holding evoked the legal concepts underlying federal preemption—an issue I address below. In any event, *Astra* makes clear that the validity of the Taxpayers' claim does not turn entirely on the absence of a statutory private right of action.

What's more, the majority's discussion of federal question jurisdiction is in tension, if not inconsistent, with its conclusion on the validity of the Taxpayer's claim. In analyzing

the jurisdictional issue, the majority correctly applied the Supreme Court's standard from *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). There, the Supreme Court instructed courts to determine whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314. The state law quiet title action at issue in *Grable* alleged that the Internal Revenue Service did not provide notice of a seizure of property, due to a federal tax delinquency, "in the exact manner required by [26 U.S.C.] § 6335(a) . . . ." *Id.* at 310–11. That federal statute, however, did not contain a private right of action. *Id.* at 317. Nonetheless, the Court emphasized that "the absence of a federal private right of action" was "relevant to, but not dispositive of" the determination of whether there was federal question jurisdiction. *Id.* at 318.

*Grable* thus provides a standard for determining when federal courts have jurisdiction to resolve state law claims that include a violation of a federal statute or standard as an element even when Congress has determined that there is no independent federal private right of action. *See id.* at 314, 317–18. While I agree with the majority's determination that federal question jurisdiction is present here, *Grable*'s standard is nevertheless important. It recognizes a state law cause of action can, in fact, include a violation of a federal standard as an element whether or not federal law provides a private cause of action, which undermines the majority's determination that "[t]he lack of a private right of action in Section 1621 is fatal to the [Taxpayers'] claim." Maj. Op. at 11.

Therefore, the validity of the Taxpayers' claim does not turn on whether there is a private cause of action under § 1621. Instead, it turns on whether the "illegal or *ultra vires*" governmental actions contemplated by the Maryland taxpayer standing doctrine include governmental spending that violates federal, rather than state or local, law and, as discussed below, federal preemption.

First, there is an open question as to whether the "illegal or *ultra vires*" governmental actions contemplated by the Maryland taxpayer standing doctrine include governmental spending that violates federal law. There are no reported decisions where Maryland courts have said one way or the other whether the cause of action covers actions that violate federal law. But the language of the cause of action refers to "illegal or *ultra vires*" conduct, without limitation. *See Bell*, 113 A.3d at 662 ("Once a complainant establishes eligibility to bring a suit, he, she, or it must allege . . . both a governmental action that is illegal or *ultra vires* and that the action may affect injuriously the taxpayer's property (meaning that it reasonably may result in a pecuniary loss to the taxpayer or an increase in taxes)."). And "[t]he 'illegal or *ultra vires*' requirement 'has been applied leniently and seems rather easy to meet' . . . ." *Id.* (quoting *State Center*, 92 A.3d at 462). The district court did not address the issue. Accordingly, I would remand the case for the district court to address this issue in the first instance.

In addition, assuming the Maryland cause of action covers government spending that violates federal law, the question of preemption remains. The preemption doctrine arises from the Supremacy Clause of the Constitution, which provides that the "Constitution, and the Laws of the United States which shall be made in Pursuance thereof

. . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617–18 (2011) (discussing how the Supremacy Clause is the basis for federal preemption).

Federal courts recognize three types of preemption: (1) "express preemption, in which Congress expressly states its intent to preempt state law"; (2) "field preemption, in which Congress occupies a certain field by regulating so pervasively that there is no room left for the states to supplement federal law or where there is a federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject"; and (3) "conflict preemption, arising when state law is preempted to the extent it actually conflicts with federal law." *United States v. South Carolina*, 720 F.3d 518, 528–29 (4th Cir. 2013) (internal citations and quotation marks omitted). Here, the County and the United States imply that any purported state law cause of action is preempted by federal law. However, they simply cite or analyze cases that employ federal implied conflict preemption without expressly arguing preemption.[3] The district court, moreover, did not address this issue, and it may be a proper issue to address on remand.

In sum, I believe that the district court and the majority employ the incorrect legal analysis in determining whether the Taxpayers have brought a viable claim. The absence

---

[3] Most notably, the United States Brief in Intervention discusses *Arizona v. United States*, 567 U.S. 387 (2012), in which the Supreme Court addressed whether Arizona's attempts to incorporate federal immigration standards into its state law were preempted. Br. for United States at 16, 17, 32. I agree that *Arizona* is important to the preemption analysis in this case; however, because I would remand to the district court, I offer no comment on whether *Arizona* should control the outcome here.

of a private right of action in a federal statute, standing alone, does not necessarily preclude a state from creating a state law cause of action that adopts the standard of that federal statute. Accordingly, I would remand to the district court to consider, in the first instance, whether the Taxpayers have pled a viable state law claim that is not preempted by federal law.