UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

|  |  |
|---|---|
| JOHN and JANE PARENTS 1, *et al.*, | ) |
| Plaintiffs, | ) |
| v. | ) No. 8-20-cv-3552-PWG |
| MONTGOMERY COUNTY BOARD OF EDUCATION, *et al.*, | ) |
| Defendants. | ) |

PLAINTIFF PARENTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiff Parents bring to the Court's attention the following supplemental authority related to the Defendants' pending Motion to Dismiss and the Plaintiffs' Opposition to the same: *Ricard v. USD 475 Geary County, KS, School Board*, 2022 WL 1471372 (D. Kan., May 9, 2022). A copy is attached.

*Ricard* is relevant to issues presented in the pending motion as follows:

a. *Ricard* (at *8) discusses that fundamental rights of parents are implicated when schools hide from parents that their minor children are exhibiting transgender behavior at school. (See Opposition at 3-11.)

b. *Ricard* (at *8) discusses that the procedural due process rights of parents are implicated when schools withhold gender transition information from them about their minor children. (See Opposition at 11-19.)

c. *Ricard* (at *6-*7) discusses parental rights under FERPA to information generated by public schools, including information about schools treating the parents' minor children as transgender. (See Opposition at 28-32.)

        Respectfully submitted,

        /s/ Frederick W. Claybrook, Jr.

        Frederick W. Claybrook, Jr. (21604)
        Claybrook LLC
        700 Sixth St., NW, Ste. 430
        Washington, D.C. 20001
        (202) 250-3833
        Rick@Claybrooklaw.com

        Steven W. Fitschen (p.h.v.)
        James A. Davids (p.h.v.)
        National Legal Foundation
        524 Johnstown Road
        Chesapeake, Va. 23322
        (757) 463-6133
        sfitschen@nationallegalfoundation.org
        jimdavids@gmail.com

        Attorneys for Plaintiffs

May 23, 2022

Davids, James 5/18/2022
For Educational Use Only

PAMELA RICARD, Plaintiff, v. USD 475 GEARY COUNTY, KS..., Slip Copy (2022)

2022 WL 1471372
Only the Westlaw citation is currently available.
United States District Court, D. Kansas.

PAMELA RICARD, Plaintiff,
v.
USD 475 GEARY COUNTY, KS SCHOOL BOARD,
et al., Defendants.

Case No. 5:22-cv-04015-HLT-GEB
|
05/09/2022

HOLLY L. TEETER, UNITED STATES DISTRICT JUDGE

### MEMORANDUM AND ORDER

*1 Plaintiff Pamela Ricard brings constitutional claims against Defendants USD 475 Geary County, KS School Board; school board members Ron Johnson, Kristy Haden, Anwar Khoury, Jim Schmidt, Beth Hudson, Mark Hatcher, Jason Butler; Geary County Superintendent Reginald Eggleston; and Fort Riley Middle School Principal Kathleen Brennan ("the District").[1] Doc. 1. These claims stem from Plaintiff's opposition to the District's policies that (1) require her to refer to students by preferred first name and pronouns ("Preferred Names and Pronouns Policy") and (2) prohibit her from referring to a student by the student's preferred names and pronouns in her communications with the student's parents unless the student requests the administration or counselor to do so ("Communication with Parents Policy").

Plaintiff moves for a preliminary injunction on her free speech, free exercise, and due process claims. Doc. 5. The Court received evidence and heard arguments at the May 6, 2022 hearing. Because the District affirmatively stated that Plaintiff's current practice would not be deemed a violation of the Preferred Names and Pronouns Policy, the Court finds that Plaintiff is unlikely to experience irreparable harm from enforcement of that policy before the Court rules on the merits in this case and denies a preliminary injunction on the Preferred Names and Pronouns Policy on that basis. But the Court finds that Plaintiff has made a sufficient showing that her free exercise claim merits a preliminary injunction of the Communication with Parents Policy, so the Court enjoins Defendants in the manner set forth below.

### I. BACKGROUND

The Court makes the following factual findings based on the record. The Court includes additional facts throughout the order as needed. Plaintiff has taught in the District since 2005. Doc. 1 ¶ 1. Plaintiff is a Christian who believes that God immutably creates each person as male or female; these two distinct, complementary sexes reflect the image of God; and rejection of one's biological sex is a rejection of the image of God within that person. Id. ¶¶ 84, 86. Additionally, she believes that there are only two anatomical sexes except in very rare scientifically demonstrable medical circumstances. Id. ¶ 79. Plaintiff also believes that the Bible prohibits dishonesty and lying. See id. ¶ 88. Plaintiff further believes that referring to children with pronouns inconsistent with biological sex is harmful because it is untrue. Id. ¶ 89. And Plaintiff believes that parents have a fundamental right to control the upbringing and education of their children. Id. ¶ 74.

Plaintiff taught Math Strategies for sixth, seventh, and eighth grade students at Fort Riley Middle School during the 2020-21 school year. Id. ¶ 95. There were two students in her class that school year who were biological females and enrolled in the District's record system (e.g., Skyward) under their legal first and last names and their biological sexes. Id. ¶¶ 96-97. Both students requested to go by names that were different than their legal names and by pronouns inconsistent with their biological sex.

*2 Plaintiff was suspended and disciplined for not using one student's preferred name and because both students felt discriminated against based on Plaintiff not using the preferred name. Plaintiff returned from her suspension on April 15, 2021. Id. ¶ 134. Then-Principal Shannon Molt gave Plaintiff a formal written reprimand for violating three board policies. Id. These policies did not have any specific guidance for handling a social transition for transgender students. See Doc. 1-4. But Plaintiff was nevertheless found to have violated those policies because her behavior was "against the guidance provided by

building leadership via email on March 31, 2021 and the building's weekly newsletter on April 4, 2021." *Id.* at 4.

Six days later, Molt emailed Fort Riley Middle School staff diversity training on gender identity, gender expression, and guidance on "Use of Preferred Names and Pronouns." *See* Doc. 1 ¶ 139; *see also* Doc. 1-6; Doc. 1-7. Several months later, in September 2021, the board formally amended its policies such that "[s]tudents will be called by their preferred name and pronouns" (i.e., the Preferred Names and Pronouns Policy). Doc. 1-18 at 5. On October 8, 2021, Defendant Brennan informed teachers that Defendant Eggleston had emailed parents and guardians the previous day to tell them that students would be referred to by their preferred name and pronouns, but the District would "not communicate this information to parents unless the student requests the administration or counselor to do so, per Federal FERPA Guidance" (i.e., the Communication with Parents Policy). Doc. 1-16 at 2.[2,3]

Plaintiff currently has two new transgender students in her class. One student told Plaintiff of a preferred name and preferred pronouns in fall 2021 and the other informed Plaintiff in March 2022. Plaintiff refers to both students by their preferred first names, but she avoids using their preferred pronouns to be consistent with her religious beliefs. Plaintiff does not generally use pronouns in class for any student and avoids the use of pronouns. But she does occasionally use pronouns when referring to students in class. Plaintiff has had to email one of the transgender student's parents regarding that student's performance in school. Because the student has not authorized the district to disclose the student's transgender status to the student's parents, Plaintiff used the student's legal name and biological pronouns in the email. Plaintiff believes that addressing students one way at school and a different way when speaking to their parents is dishonest. Being dishonest violates her sincere religious beliefs.

## II. STANDARD

To obtain a preliminary injunction, the movant must show that she is (1) substantially likely to succeed on the merits, (2) will suffer irreparable injury if the injunction is denied, (3) her threatened injury outweighs the injury the opposing party will suffer under the injunction, and (4) the injunction would not be adverse to the public interest. *State v. U.S. Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021) (citations omitted). If a movant is seeking a disfavored injunction, she faces a higher standard. *Id.* Preliminary injunctions are disfavored when the injunction alters the status quo, constitutes a mandatory injunction, or gives the movant all the relief that she would recover at trial. *Id.* at 883-84. Disfavored injunctions require a strong showing on the likelihood of success and balance of harms elements. *Id.* at 884.

## III. ANALYSIS

***3** Plaintiff contends the Preferred Names and Pronouns Policy and the Communication with Parents Policy violate her free speech, free exercise of religion, and due process rights. The Court analyzes each below.

### A. Preferred Names and Pronouns Policy

As noted above, the District's Preferred Names and Pronouns Policy states: "Students will be called by their preferred name and pronouns." Doc. 1-18 at 5. Plaintiff argues this directive violates both her freedom of speech and free exercise rights under the First Amendment and her due process rights under the Fourteenth Amendment.

While the directive appears mandatory and without exception, the District represented at the hearing that: (1) an employee is not required to use preferred pronouns and may refer to students only by their preferred first name, provided the employee elects not to use pronouns for any student; and (2) inadvertent or unintentional use of pronouns to refer to some students, where an employee's standard practice is to refer to all students only by preferred first name, will not transform the employee's standard practice into a policy violation.[4]

Plaintiff testified at the hearing that she has been and is willing to continue referring to all students by their preferred first names (albeit, not their preferred pronouns). The District's counsel indicated that this practice would not violate the District's policy provided any occasional use of pronouns by Plaintiff, despite her default practice of referring to students by their preferred first name, was inadvertent or unintentional. Given the

WESTLAW © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Davids, James 5/18/2022
For Educational Use Only

PAMELA RICARD, Plaintiff, v. USD 475 GEARY COUNTY, KS..., Slip Copy (2022)

parties' apparent agreement that Plaintiff's present practice is acceptable to both, the Court finds Plaintiff is unlikely to experience any irreparable harm from this policy before the Court rules on the merits in the ordinary course of this case. See *State*, 989 F.3d at 884. Therefore, the Court will deny injunctive relief at this time and without prejudice to Plaintiff's ability to seek preliminary injunctive relief should circumstances change.

In denying preliminary injunctive relief regarding the Preferred Names and Pronouns Policy, the Court specifically relies on statements made by the District that Plaintiff's current practice is not subject to discipline. The Court is not making any ruling on the merits of Plaintiff's free speech, free exercise, and due process claims as it pertains to the Preferred Names and Pronouns Policy. These claims remain live given Plaintiff's requests for a permanent injunction, declaratory judgment, damages, and attorney fees. The Court will resolve these merits questions in the ordinary course of the litigation.

**B. Communication with Parents Policy**
**\*4** While the parties may have reached détente regarding the Preferred Names and Pronouns Policy, the parties remain very much at odds over the Communication with Parents Policy and the potential for disciplinary action should Plaintiff violate it. This policy prohibits employees from revealing to parents that a student has requested use of a preferred name or different set of pronouns at school "unless the student requests the administration or a counselor to do so, per Federal FERPA guidance." Doc. 1-16 at 2. In application, the policy prohibits teachers not only from initiating communication with parents for the express purpose of disclosing preferred names and pronouns, but it also prohibits teachers from revealing preferred names and pronouns as part of a communication with parents about an unrelated matter, such as grades or attendance. It is this latter application of the policy from which Plaintiff seeks relief.[5]

Like her challenge to the Preferred Names and Pronouns Policy, Plaintiff contends the Communication with Parents Policy violates her free speech and free exercise rights under the First Amendment, and her due process rights under the Fourteenth Amendment. The Court finds that Plaintiff is entitled to a preliminary injunction based on her free exercise rights. Therefore, the Court declines to address Plaintiff's free speech and due process arguments at this time; it will instead address those matters in the ordinary course of the litigation.

**1. Likelihood of Success**
The free exercise clause of the First Amendment states, in pertinent part, that "Congress shall make no law...prohibiting the free exercise [of religion]." U.S. Const. amend. I. While the First Amendment by its terms applies only to Congress, it was incorporated by the Fourteenth Amendment and now applies to state and local governments, including public school districts. See *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

The fundamental principle of the free exercise clause is that "government commit 'itself to religious tolerance.' " *Meriwether v. Hartop*, 992 F.3d 494, 512 (6th Cir. 2021) (citing *Masterpiece Cakeshop Ltd. v. Colo. Civ. Rts. Comm'n*, 138 S. Ct. 1719, 1731 (2018)). Under this principle, government laws and rules that burden religious exercise are "presumptively unconstitutional unless they are both neutral and generally applicable." *Id.* (citing *Emp't Div., Dept' of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 877-78 (1990)). A law "is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.' " *Fulton v. City of Phila., Penn.*, 141 S. Ct. 1868, 1877 (2021) (alteration in original) (citations omitted). "A law also lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.* (citation omitted).

In considering whether a law is neutral and generally applicable, this Court must "look beyond the text and scrutinize the history, context, and application of a challenged law." See *Hartop*, 992 F.3d at 512 (citing *Masterpiece*, 138 S. Ct. at 1731; *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 534 (1993) (discussing the neutrality prong)). If a rule that burdens religious exercise is <u>not</u> neutral and generally applicable, it will survive constitutional challenge only if the government can demonstrate "interests of the highest order" and that the rule in question is "narrowly tailored" to achieve those interests. *Fulton*, 141 S. Ct. at 1881

(citation omitted).

Here, Plaintiff demonstrates that the Communication with Parents Policy burdens her exercise of religion. Plaintiff has testified that she is a Christian and believes the Bible prohibits dishonesty and lying. She believes it is a form of dishonesty to converse with parents of a child using one name and set of pronouns when the child is using and being referred to at school by a different name and pronouns, unbeknownst to the parents. The Court finds Plaintiff's testimony concerning her religious beliefs to be credible and subjectively sincere. *See* City of Hialeah, 508 U.S. at 531 ("[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment Protection." (internal quotations and citation omitted)).

**\*5** Plaintiff has also demonstrated that, as part of her job, she regularly communicates with parents, whether by email or in person. In fact, she has had to communicate in writing with the parents of a transgender student earlier this year, and it is highly likely she will further communicate with transgender students' parents before the end of the academic year. Neither of Plaintiff's transgender students have authorized the District to disclose their preferred names and pronouns to their parents. Plaintiff would face the Hobbesian choice of complying with the District's policy and violating her religious beliefs, or abiding by her religious beliefs and facing discipline.

The District counters that its policy does not require Plaintiff to use any student's name or pronouns in conversations with parents—it merely prohibits Plaintiff from revealing to a student's parents a preferred name or pronouns the student is using at school if the student has not authorized the parents to know. Thus, argues the District, Plaintiff can simply refer to students in conversation with parents as "your child" or "your student," never referring to the child by name or pronoun. But Plaintiff has testified to her belief that having a conversation with parents about a child, and not disclosing the name and pronouns used at school, is itself a form of "conceal[ment]"[6] —a material omission if you will—given Plaintiff's belief that parents have a fundamental right to control the upbringing of their children. Moreover, it is simply unrealistic to suppose that a teacher can communicate with parents about their child and never refer to the child by name or pronoun. Such a system would be "impossible to comply with," and when Plaintiff "slipped up," she could face discipline. *See* Hartop, 992 F.3d at 517. This Court agrees that Plaintiff's religious rights "do not hinge on such a precarious balance." *Id.* Therefore, the Court finds Plaintiff has demonstrated continued application of the Communication with Parents Policy to her burdens her religious exercise.

Because the Communication with Parents Policy burdens Plaintiff's religious rights, the Court must determine whether the Communication with Parents Policy is neutral and generally applicable. The Court concludes the policy is <u>not</u> generally applicable because the District has created multiple exceptions that either necessitate consideration of the putative violator's intent or the District has exempted conduct for secular reasons but is unwilling to exempt Plaintiff for religious reasons. *See* Fulton, 141 S. Ct. at 1877.

First, testimony at the hearing established that at least a "couple" of other District employees had inadvertently disclosed to parents the preferred name or pronouns of children who had not authorized the District to disclose this information to parents. The District stated that such persons were not disciplined for violating the policy despite the policy's language drawing no distinction between unintentional or purposeful violations. Thus, in the District's practice, to determine whether the policy has been violated by a particular disclosure, the District must determine whether the putative violator intended to violate the policy or not.

**\*6** Second, while the policy by its terms would prohibit any disclosure of a child's preferred name and pronouns to parents absent a child's permission, the District admitted at the hearing that if parents requested copies of education records that included information concerning preferred names and preferred pronouns, the District would disclose the information to parents without a child's permission because the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g; 34 C.F.R. Part 99, requires it. Thus, the District is willing to make an exception for the secular purpose of complying with federal law, but not religious reasons.

Third, at the hearing, the Court asked what the District would expect a teacher to do if, during a conversation with parents, parents specifically asked the teacher if their child was being addressed at school by a preferred name or pronouns. The District's counsel indicated that such a

Davids, James 5/18/2022
For Educational Use Only

PAMELA RICARD, Plaintiff, v. USD 475 GEARY COUNTY, KS..., Slip Copy (2022)

teacher should refer the parents to an administrator and the administrator would then answer the question and disclose the requested information in a subsequent conversation or meeting.[7] But the policy does not facially carve out administrators from its scope. Thus, the District has created another exemption in practice for administrators to disclose information when necessary for the secular purpose of responding to a parent's direct[8] question, but again is unwilling to grant an exemption for religious purposes.

Because the Communication with Parents Policy is not generally applicable, the District has the burden to demonstrate the policy is justified by "interests of the highest order"—a so-called, "compelling" interest—and that the policy in question is "narrowly tailored" to achieve those interests. *Fulton*, 141 S. Ct. at 1881; *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429-30 (2006) (government bears the burden to satisfy strict scrutiny even at the preliminary injunction phase).

When operating under a strict scrutiny standard, the Court must consider the genuine interest that the District believed supported the policy when it adopted the policy. *See Yellowbear v. Lampert*, 741 F.3d 48, 58-59 (10th Cir. 2014); *see also Fox v. Washington*, 949 F.3d 270, 283 (6th Cir. 2020) ("[B]ecause the government's asserted interest must be genuine, not hypothesized or invented *post hoc* in response to litigation, [the government] will be limited to raising justifications it cited at the time it made the decision" (internal citations and quotations omitted)).

*7 To that point, the policy was announced by the District's Superintendent, Dr. Reginald Eggleston in an email dated October 7, 2021, and sent to all parents and guardians. That email stated, in pertinent part, "USD 475 will not communicate [preferred names and pronouns] to parents unless the student requests the administration or counselor to do so, per FERPA guidelines." (emphasis added). Thus, the District told parents that the reason for its policy was to comply with FERPA. There is no reason to believe the District told parents one thing, while having a hidden, subjective motivation it did not disclose. Therefore, the Court accepts the October 7, 2021 email as an accurate explanation of the District's contemporaneous justification for adopting the policy.

The problem for the District is that FERPA does not prohibit the District from communicating with parents about their minor child's preferred name and pronouns. To the contrary, FERPA is a law that specifically empowers parents to receive information about their minor students; it mandates the District to make education records[9] available to parents upon request—whether the child wants their parents to have the records or not. *See* 34 C.F.R. § 99.10(a) ("Except as limited under § 99.12, a parent or eligible student must be given the opportunity to inspect and review the student's education records" (emphasis added)).[10] And FERPA does not exempt from its disclosure obligation education records that deal with preferred names and pronouns. Thus, the District's contemporaneous justification for adopting the policy is predicated on an erroneous understanding of the law. And the District's statement to parents that "FERPA guidelines" prevented the District from disclosing preferred name and pronoun information without a child's permission, was misleading. The District could not have a legitimate, compelling interest in withholding information based on FERPA when FERPA in fact required the District to disclose the very information at issue—at least to the extent the information was contained in an education record.

Even if the Court were to consider the post hoc explanation the District has given in the context of this litigation, the Court still concludes that the District has failed to establish the Communication with Parents Policy is supported by a compelling interest. Specifically, at the hearing, the District's administrator took the position it was not the District's place to "out" a student to their "parents." And the District's counsel argued that "if the home life is such that the —the student doesn't want to be out to their parents, it's not our job to do it."

But as noted above, federal policy as evidenced by FERPA is that parents do have a right of access to information held by the school about their minor children. Moreover, even if FERPA did not mandate that schools make education records available to parents who ask for them, the fact that it is not the school's duty to disclose information to parents does not mean the school has a compelling interest in directing teachers to withhold or conceal such information and punishing teachers if they violate the policy.

*8 Moreover, as the District conceded at the hearing, parents in the United States have a constitutional right to control the upbringing of their children. *See, e.g.*,

*Stanley v. Illinois*, 405 U.S. 645, 651 (1972). This is not a trivial right—it is a fundamental one that is "perhaps the oldest of the fundamental liberty interests" recognized by the Supreme Court. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). It rests on a fundamental premise that a child is "<u>not</u> the mere creature of the State," *id.* (emphasis added) (citation omitted), and that parents—"those who nurture him and direct his destiny"— "have the right, coupled with the high duty, to recognize and prepare him for additional obligations," *id.* (citation omitted). It is difficult to envision why a school would even claim—much less how a school could establish—a generalized interest in withholding or concealing from the parents of minor children, information fundamental to a child's identity, personhood, and mental and emotional well-being such as their preferred name and pronouns.[11]

Presumably, the District may be concerned that some parents are unsupportive of their child's desire to be referred to by a name other than their legal name. Or the District may be concerned that some parents will be unsupportive, if not contest, the use of pronouns for their child that the parent views as discordant with a child's biological sex. But this merely proves the point that the District's claimed interest is an impermissible one because it is intended to interfere with the parents' exercise of a constitutional right to raise their children as they see fit.[12] And whether the District likes it or not, that constitutional right includes the right of a parent to have an opinion and to have a say in what a minor child is called and by what pronouns they are referred.

The Court can envision that a school would have a compelling interest in refusing to disclose information about preferred names or pronouns where there is a particularized and substantiated concern that disclosure to a parent could lead to child abuse, neglect, or some other <u>illegal</u> conduct. Indeed, at least in Kansas, were such a case to arise, a school would likely have to report the matter to the Department for Children and Families. *See generally* K.S.A. § 38-2223. But the District has not articulated such an interest here—either abstractly or in the case of the specific students in Plaintiff's class.[13]

Even if the District had articulated an interest in preventing abuse by a parent (that is, abuse as the law defines it, and not simply as an administrator might subjectively perceive it), the Communication with Parents Policy would not be narrowly tailored to achieve such an interest. The policy is <u>overinclusive</u> because it prohibits the disclosure of preferred name and pronoun information to parents without any assessment of whether disclosure would actually pose a risk. Moreover, the policy would also be <u>underinclusive</u> insofar as it permits administrators to disclose preferred name and pronoun information to parents simply if parents ask, and without any determination whether such disclosure poses a risk to the child. *See City of Hialeah*, 508 U.S. at 546 (finding laws not narrowly tailored where they were "overbroad or underinclusive in substantial respects"). An appropriately tailored policy would, instead, make an individualized assessment whether there is a particularized and substantiated concern of real harm—as opposed to generalized concern of parental disagreement—and prohibit disclosure only in those limited instances.

**\*9** Because the Communication with Parents Policy substantially burden's Plaintiff's exercise of religious rights, is not generally applicable, and fails both prongs of the strict scrutiny analysis, the Court finds that Plaintiff has demonstrated a substantial likelihood of success on her free exercise claim as it concerns this policy.


**2. Irreparable Harm**
The District argues that Plaintiff is not at serious risk for future irreparable injury. Any employment discipline she could receive would be compensable with money damages and her chances of being disciplined are low because she has not been disciplined this school year and Plaintiff is not returning to work at Fort Riley Middle School next year. Plaintiff counters by arguing that the District's past practice shows that she can be disciplined within a few days.[14] Additionally, Plaintiff has already not been able to follow her conscience with regards to parental communications.

Any deprivation of any constitutional right is an irreparable injury. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 806 (10th Cir. 2019). Here, the Court has already determined that Plaintiff is likely to succeed on her free exercise claim on the Communication with Parents Policy. And the Court also finds it reasonable that she would communicate with the parent of one of the transgender students before the end of the academic year. Although the short timeline and change in work next year does not obviate irreparable harm, it is a reason for limiting the timeframe of the preliminary injunction. Thus, Plaintiff has established

irreparable injury.

### 3. Balance of Harms

The District argues that a preliminary injunction would significantly hinder the District's "obligations to protect young persons entrusted to its care." Doc. 11 at 36. But "[w]hen a constitutional right hangs in the balance, though, 'even a temporary loss' usually trumps any harm to the defendant." *Free the Nipple*, 916 F.3d at 806 (citation omitted). The Court recognizes that the District is trying to create a stable learning environment for children. But the District fails to articulate any specific, concrete harms sufficient to outweigh Plaintiff's weighty interest in preliminary relief. Therefore, the balance of harms favors Plaintiff.

### 4. Public Interest

It is "always in the public interest to prevent the violation of a party's constitutional rights." *Id.* at 807. Because the Court finds that Plaintiff is likely to succeed on her free exercise claim for the Communication with Parent Policy, this factor also favors Plaintiff. Thus, Plaintiff has made a sufficient showing as to all four elements for a preliminary injunction against enforcement of this policy.[15] Because the Court holds for Plaintiff on her free exercise basis for a preliminary injunction, it does not address Plaintiff's other arguments for her other claims on this policy.

### IV. CONCLUSION

**\*10** The Court has carefully analyzed the record and the law in the limited time afforded by this case. And the Court realizes that this is a difficult and complex area of the law that continues to develop. But based on the record before the Court, the Court denies a preliminary injunction as it relates to the Preferred Names and Pronouns Policy but grants a limited preliminary injunction on the Communication with Parents Policy because Plaintiff has shown the four necessary factors for her free exercise rights.

THE COURT THEREFORE ORDERS that Plaintiff's motion for a preliminary injunction (Doc. 4) is GRANTED IN PART and DENIED IN PART. The Court denies a preliminary injunction on the Preferred Names and Pronouns Policy based on statements made by the District that Plaintiff's current practice would not be deemed a policy violation.

THE COURT FURTHER ORDERS that Defendants are ENJOINED from disciplining Plaintiff for referring to a student by the student's preferred name and pronouns in her communications with the student's parents within the regular course of her duties. The Court relies on Plaintiff's statements that she does not intend to communicate with a parent for the sole purpose of disclosing a student's preferred name and pronouns. This injunction terminates on May 18, 2022, or at the conclusion of Plaintiff's contractual responsibilities to the District, whichever is later.

IT IS SO ORDERED.

Dated: May 9, 2022   /s/ *Holly L. Teeter*

HOLLY L. TEETER

UNITED STATES DISTRICT JUDGE

**All Citations**

Slip Copy, 2022 WL 1471372

### Footnotes

| 1 | The Court recognizes that Plaintiff has sued some defendants in a personal and official capacity. The parties make no effort to analyze this nuance in briefing and in arguing the preliminary-injunction motion. And given the very |

Davids, James 5/18/2022
For Educational Use Only

PAMELA RICARD, Plaintiff, v. USD 475 GEARY COUNTY, KS..., Slip Copy (2022)

<ol start="2">
<li>Plaintiff unsuccessfully appealed the disciplinary action to the superintendent and the Board. *See* Doc. 1 ¶¶ 138-149, 154-174, 183-87. The Board also rejected Plaintiff's religious accommodation request. *Id.* ¶¶ 150, 184.</li>

<li>The parties have heavily litigated whether certain district directives are a "policy," "guidance," or "implementation" material. Form does not matter. *See Ashaheed v. Currington*, 7 F.4th 1236, 1243 (10th Cir. 2021) ("[T]he First Amendment applies to exercises of executive authority no less than it does to the passage of legislation." (citation omitted)). What matters is what the governmental rule is, and whether Plaintiff is entitled to preliminarily enjoin that rule pending judgment on the merits.</li>

<li>There appear to be numerous other exceptions and caveats to this policy. For example, the District itself refers to a student by the student's legal name, even when the student has requested to be referred to by a preferred name, in official records; as a login credential for Skyward; for the student's email address; and in yearbooks. Further, coaches and gym teachers are apparently allowed to use last names to refer to students in lieu of preferred names and pronouns because the use of last names is more convenient in a sports setting. And District employees are not required to use preferred names and pronouns when employees are speaking about a student outside the student's presence.</li>

<li>In other words, Plaintiff disclaims any plan to affirmatively reach out to parents for the purpose of telling them that their child is using preferred names or pronouns.</li>

<li>Plaintiff's subjective perception that this is "conceal[ment]" is not fanciful. The District grants parents access to its Skyward system. When a parent logs in, Skyward displays certain information about their child, including the child's legal name as reflected on District records and any preferred name <u>the parent</u> has disclosed to the District. The Skyward database also contains preferred names and pronouns that students are using at school but that parents may be unaware of. Although the District's administrators and teachers can see these preferred names and pronouns when they login into Skyward, this data is <u>not</u> populated and visible in the version of Skyward that parents are granted access to.</li>

<li>As explained by *Fulton*, the Court must consider whether the secular exemption undermines the District's asserted interests in a similar way. As discussed below, the District told parents the policy was adopted for the purpose of complying with FERPA. But, as also discussed below, FERPA does not restrict parental access to student records; to</li>
</ol>

Davids, James 5/18/2022
For Educational Use Only

PAMELA RICARD, Plaintiff, v. USD 475 GEARY COUNTY, KS..., Slip Copy (2022)

the contrary, it <u>requires</u> a school district to provide education records to parents whether a child wants the records disclosed or not. Thus, allowing an administrator to disclose to parents because they asked is no less a violation of the District's flawed understanding of FERPA than if the District allowed a teacher to disclose for religious reasons. The District later articulated it did not want preferred name and pronoun information disclosed because it is not the District's "place" to "out" students to parents who might disagree with the child's desire to go by a preferred name or pronoun. This stated interest is undermined just as much by an administrator disclosing the information to parents who ask, as it is by a teacher doing so when necessary to avoid a religious conflict.

8   Of course, some parents may be totally ignorant of the fact that their minor child is being called by a different

name and pronouns at school, in which case they would never know to ask for education records. Under the District's practice, it is only those parents who affirmatively ask the right question who would receive this information. This seems rather inconsistent with the District's stated position that parents are "full partners in their child's education."

9   Under FERPA, an education record is a record that is "directly related" to a student and that is "maintained" by a

school or party "acting for" the school. 34 C.F.R. § 99.3. Evidence at the hearing established that the District maintains information about a student's preferred name and pronouns in Skyward and, for some students, in a binder stored in the registrar's office. It also maintains such information in emails sent and retained by the counselor and completed forms that the District previously required students to fill out. All these documents seem to be education records under FERPA.

10  *See generally* U.S. Dep't of Educ. Student Priv. Pol'y Off., *A Parent's Guide to the Family Educational Rights*

*and Privacy Act* (2021), https://studentprivacy.ed.gov/resources/ferpa-general-guidance-parents.

11  Of course, Plaintiff does not have standing to assert constitutional claims on behalf of parents, nor does she

attempt to. But the fundamental rights that parents have are a valid consideration in determining whether the District has established a legitimate, compelling interest in prohibiting Plaintiff from disclosing to parents the preferred name and pronouns the child is using, while threatening Plaintiff with disciplinary sanctions if she violates the policy.

12  Because it is illegitimate to conceal information from parents for the purpose of frustrating their ability to exercise

a fundamental right, there are real questions whether the District's claimed interests in the Communication with Parents Policy—broadly written as it is—would satisfy even the rational basis standard that would govern if the rule were neutral and generally applicable.

Davids, James 5/18/2022
For Educational Use Only

**PAMELA RICARD, Plaintiff, v. USD 475 GEARY COUNTY, KS..., Slip Copy (2022)**

13      To be clear, there is no evidence in the record that the transgender students in Plaintiff's class are at risk of harm from their parents.

14      Plaintiff was issued a notice of suspension one day after the April 2021 incidents.

15      The District argues that Plaintiff seeks a disfavored injunction. Plaintiff is not seeking a disfavored injunction.

Plaintiff is seeking a prohibitory injunction rather than a disfavored mandatory injunction because she seeks to prohibit the District from taking adverse action against her for a violation of her constitutional rights. Plaintiff is not seeking a disfavored injunction that grants her all the relief she'd receive after a trial on the merits either because she could receive other relief (such as damages and attorneys' fees). Finally, this injunction simply seeks to preserve "the last peaceable uncontested status existing between the parties before the dispute developed." *Free the Nipple*, 916 F.3d at 798 n.3 (citation omitted). That peaceable status with regards to the Communication with Parents Policy was prior to the policy's implementation. So Plaintiff does not seek a disfavored preliminary injunction that alters the status quo.

---

**End of Document**                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.